Per Curiam.
The judgment should be affirmed, with costs.
*971 INDEX. ABATEMENT AND REVIVOR. A delay of eleven years in making application for revival of a proceeding is sufficient to render it the duty of the court to refuse to permit the revival as a mere matter of discretion. Matter of Palmer (Sup. Ct.), 538. See Pasties, 7; Sale, 2 ABDUCTION. Upon the trial of an indictment for taking, harboring and receiving for the purpose of sexual intercourse a female not the wife of the defendant and under the age of sixteen, it was shown that the female was brought by the defendant from another state. The prosecution showed that the defendant had been intimate with the female in said state. Held, that such evidence was competent as characterizing the relations existing between them and as bearing upon the purpose for which defendant brought the female into this state. People v. Wah Lee Mon (Sup. Ct.), 283. ACCORD AND SATISFACTION. See Services, 1. ACCOUNTING. Where it appeared that the parties were not partners, but had a joint interest in the matter, Held, than an action for an accounting could be maintained. Niebuhr v. Sahreyer (N. T. C. P.), 495. ACCOUNT STATED See Sale, 12. ADJOINING OWNERS. Defendants piled a quantity of sand against plaintiff’s brick wall, which afterwards fell, and no other adequate cause was assigned for such .fall except the presence of the sand. Held, that the use of his premises by defendant in such manner as to injure plaintiff’s property was wrongful and rendered him liable for the resultant damage. Dams et al. v. Evans (Sup. Ct.), 714. ADVERSE POSSESSION. See Railroad. 24 ANIMALS. 1.1 When a person having control of a dog which is in the habit of jumping at horses’ noses while they are traveling, with full knowledge takes kiin with him while traveling on a public street, the risk of injuries resulting from the dog’s habits falls upon the owner. Putnam v. Wigg (Sup. Ct.), 804. Plaintiff called at defendant’s house to collect a bill and was attacked and severely lacerated by four mastiff dogs who were unmuzzled and unsecured. A servant of defendant testified that he would not dare to go in the place though the dogs knew him, and it appeared that one of them had bitten another person in defendant’s presence. Held, that their ferocity and defendant’s knowledge thereof were sufficiently shown to render him liable for not securing or controlling them. Jacoby v. OckerTumsen (Sup. Ct.), 710.
*972 972 APARTMENT HOUSES—APPEAL. APARTMENT HOUSES. According to the original plan of the defendant corporation subscribers to a specified number of shares were entitled to a substantially perpetual lease of an apartment. A certificate for that number of shares was issued to one V., who afterward sold the same to plaintiff. Thereafter the plan was changed and the expense increased, and the stock was also increased, the increased amount being divided among the subscribers without payment. Before the distribution the stockholders passed a resolutiotn providing that the leases should provide for the payment of an annual rent of ten per cent on the stock held by the lessee. Plaintiff obtained possession of the apartment designated by his stock, and rented the same, but although he surrendered his certificate and received a new one for the original shares, and also for his share of the increased stock, he refused to accept any lease. His tenant having vacated, defendant took possession of the apartment. In an action of ejectment, Held; that the plans having been altered and plaintiff having assented to the new arrangement by his acceptance of the stock, could not be heard to say that-he was not bound by the action of the stockholders, and that he could not claim the apartments without contributing to the increased cost of the building. Compton v. The Chelsea (Sup. Ct.), 53. APPEAL. 1. On motion to dismiss an appeal, the court cannot go outside of the record further than to ascertain whether there has been a waiver of the appeal. O'Brien v. Smith (Sup. Ct.), 43. 3. The mere fact that the appellant has brought another action to recover upon the cause of action set up as a counterclaim after the counterclaim had been stricken out for failure to furnish a bill of particulars, does not constitute a waiver of his right to appeal, and his appeal should not be dismissed because of the bringing of such action. Id. 3. A motion for reargument must be founded on papers showing that some question decisive of the case and duly submitted by counsel has been overlooked by the-court, or that the decision is in conflict with the statute or with a controlling decision, to which the attention of the court was not drawn through the neglect or inadvertence of counsel. Fosdick et al. v. Town of Hempstead (Ct. App.), 130. 4. Where an order of the general term granting a new trial, in an action tried before a jury and presenting a conflict of evidence, may have been made upon the facts, although the record does not show that it was, it cannot be reviewed upon appeal to this court. Williams v. H.,L. & W. B. B. Co. (Ct. App.), 143. 5. In such a case, even if it conclusively appears that the decision of the general term was based on questions of law only, the order is not appeal-able to this court, unless it also appears that the court passed upon the facts favorably to the appellant. Id. 6. The statement in appellant’s notice of appeal that “ The board of claims erred in receiving evidence against the objection and exception of .the claimant,” sufficiently pointed out the error on which they intended to rely, as the record did not show that any other evidence than this pointed out was admitted against their objection, and the counsel for the state was clearly apprised bv this specification that these rulings would be challenged on appeal. McDonald v. State (Ct. App.), 348. 7. Where in an action against a single defendant the plaintiff succeeded at the trial term upon one branch of a case and the judgment in that respect is affirmed here and said plaintiff failed at the trial upon another branch, the judgment in which respect is reversed here, the plaintiff must stipulate that the whole judgment he affirmed; if he do not, the whole judgment must be reversed. Elwell v. Fdbre (N. Y. C. P.), 354. 8. Where a case on appeal has no certificate that it contains all the evidence the court is confined to determining whether the facts found support the judgment. Hinds et al. v. Kellogg (N. Y. C. P.), 356.
*973 APPEAL—ASSIGNMENT FOB CBEDITOBS. 973 9. Where this court reverses the judgment oí the court below and grants a new trial, in either an equitable or legal action, “with costs to abide the event,” all the costs of the action up to that time are intended. Franey v. Smith et al. (Ct. App.), 480. 10. Where an appeal from the city court of New York to the common pleas involves no new question of law, and the decision of the latter court is only an application of well settled principles, leave to appeal to the court of appeals should not be granted. Glaflin et al. v. Flack (N. Y. C. P.), 506. 11. Where a motion to compel plaintiff to enter final judgment and to stay the collection of costs of appeal until such entry, is granted as to the stay, but denied as to the judgment, the plaintiff, by allowing the portion of the order in her favor to stand, does not waive her right to appeal from the portion directing a stay. McIntyre v. German Savings Bk. (Sup. Ct.), 645. 12. In an action on a promissory note, brought by the payees against the endorser, where the evidence was conflicting as to whether defendant endorsed to enable the maker to obtain credit with plaintiffs, the court charged that if plaintiffs took the note in reliance on his endorsement he was liable, and that if the jury believed plaintiff’s testimony plaintiffs were entitled to a verdict. Held, that the case, for this error, required a reversal, and that leave to appeal to the court of appeals should, theref ore-be denied. Wyakoff et al. v. Wilson (N. Y. C. P.), 751. 13. An appeal will not lie to the general term of the supreme court from an order granted ex parte. Such order can be reviewed in the first instance only by a motion, on notice, to vacate or modify it, and the order granting or denying such motion is appealable. Matter of Bunn (Sup. Ct.), 802. 14. In an action upon certain promissory notes defendant interposed two counterclaims, one for $82.42 for per centages on manufacture of parts of machines, the other for $1,471.17 for violation by plaintiffs of their agreement not to manufacture certain machines from defendant’s patterns, except for him. Held, that even if plaintiffs made another machine, not ordered by him, what he lost thereby was merely the profit, about $323.33, and there being no interest to add to unliquidated damages, his claim would not amount to $500, and he could not upon this appeal claim that his demand was larger than that stated in the pleading. Blake & Johnson v. Krom (Ct. App ), 873. 15. A judgment will not be disturbed by the appellate court where the evidence was conflicting, and no errors appear to have been made in the admission or exclusion of evidence. Hart v. Wilder et al. (N. Y. Supr. Ct.), 895. See Attachment, 5; Case; Costs, 1, 2; Default, 1; Foreclosure, 2; Municipal Corporations, 4; Pkeading, 15. ARREST. An order of arrest may be vacated where the facts on which it depends are disproved by affidavit, although the cause of action and the cause of arrest are identical. Hayes v. Beard (Sup. Ct.), 535. See Undertaking. ASSESSMENTS. See Municipal Corporations, 2-4, 8,10, 12-14,16,18-20, 27. ASSIGNMENT. See Contract, 8; Evidence, 2. ASSIGNMENT FOR CREDITORS. 1. Payment by the assignee to a creditor of the assignor of the amount of the debt due him pursuant, to the directions in the assignment before any lien is obtained upon the fund, is effectual to vest title in such creditor to the money so paid, allhough the assignment is in an action subsequently
*974 974 ASSIGNMENT FOR CREDITORS—ATTACHMENT. commenced adjudged fraudulent and void as against the creditors of the assignor. Knower et al. v. Central Nat. Bk. (Ot. App.), 89. 2. The fact that defendant and other preferred creditors obtained confession, of judgment by assignor, and directed the sheriff to seize and hold the assigned property upon the executions, does not necessarily raise an inference that defendant acted with any purpose other than to secure the payment of its debt. Id. 8. The mere fact of knowledge on the part of a creditor of the intent of his debtor to defraud his creditors by the disposition of his property to pay or in payment of the debt due from him to the former, does not prejudice the right of the creditor to seek and obtain payment. Id. 4. In view of the conflict of decisions on the question and the fact that none are cited from the court of appeals, this court will not go so far as to hold that mortgages or transfers made immediately prior to an assignment for creditors are necessarily illegal without regard to the intent of the assignor. Otis v. Bertholf et al. (Sup. Ot.), 172. 5. In an action brought by an assignee for creditors, a judgment in a former action brought by the defendants to set aside the assignment, sustaining it, is admissible in - favor of the plaintiff. Byett v. Hyman et al. (N. Y. C. P.), 251. 6. The court at special term has power to make an order directing an assignee for creditors to take up and file the referee’s report upon his accounting. JEJtna Nat. Bk. v. Shotwell (N. Y. O. P.), 258. 7. If the assignee makes payment of the claims of creditors without first having ascertained the precise amount of the estate to which creditors would be entitled, such payments are wholly voluntary and at his risk, and lack of funds will not discharge him from the performance of the duty to pay the necessary expenses of his accounting. Id. 8. An insolvent firm had an assignment for benefit of creditors prepared and at the same time confessed judgment in favor of certain creditors. After it had been ascertained that levies had been made under the judgments the assignment was delivered, upon their part, to the assignee. Held, that the judgments and assignment must be taken to be a part of a-single scheme, the effect of which was to prefer the creditors with confessed judgments, and that as such preferences amounted to more than the one-third of the assets which, by chap. 503, Laws of 1887, may be devoted to that purpose, the judgments, in common with the assignment, must be declared void. First Nat. Bk. of Jersey City v. Bard et al. (Sup. Ct.), 275. 9. The fact that an assignment for the benefit of creditors contains preferences of just debts secured by chattel mortgages which are referred to therein does not render such assignment fraudulent, although such chattel mortgages were void as to other creditors by reason of non-filing within the statutory time. Kitchen v. Lowery et al. (Ct. App.), 327. See Attachment, 8 ASSOCIATIONS. 1. A member of an association, such as a trade union, cannot maintain an action in equity to set aside fines imposed upon him until he has exhausted his remedy in the society. Burns v. Bricklayers’ Ben. & Prot. Union (City Ct. B’klyn), 615. 2. The by-laws of the society provided that any member in arrears for fines or dues over six months was prohibited from working. Plaintiff-was-fined and such fines were not paid during that period of time. Held, that if the fines were valid, his working card was properly taken away from him. Id. See Taxes, 2 ATTACHMENT. 1. Indemnitors upon a bond given to the attaching officer, to hold him. harmless against the consequences of a wrongful seizure and removal, are
*975 ATTACHMENT—BAIL. 975 liable as trespassers for the full value of the property taken, jointly and severally, and cannot claim that because of a subsequent levy on the same property by others who shared in the proceeds, each should be held liable only to the extent of his profit in the wrong committed. Dyett v. Hyman , et al. (N. Y. C. P.), 351. 3. An affidavit for an attachment stated an indebtedness on contract over and above all counterclaims known to the plaintiffs; that defendant was a resident of the state, and stated positively that he had left the county suddenly and clandestinely; that he employed help to assist him in the removal' of his household goods to a railroad station to be shipped to Boston, and the help were then actively employed in packing the goods. Held, in the absence of counter affidavits, sufficient to uphold an attachment. Patterson et al. v. Delaney (Sup. Ct.), 585. 3. Unless there is a clear preponderance of evidence against it, the conclusion of the special term on the question of residence will not be disturbed by the general term, although as an original question it might have come to a different conclusion on the affidavits. Prentiss v. Butler (Sup. Ct.), 605. 4. Facts insufficient to show non-residence. Id. 5. The fact that the Code provides that on an application for an attachment the plaintiff “must show by affidavit to the satisfaction of the judge” that the jurisdictional facts exist does not make the granting of the attachment discretionary and thus not reviewable on appeal, Bteele et al. v. Raphael et al. (Sup. Ct.), 633. 6. Where the non-residence of the defendants is positively stated in the affidavit, it is immaterial that their actual places of residence are stated on information and belief and that the grounds of belief and sources of information are not given. Id. 7. On a motion to vacate an attachment granted in an action for goods sold on credit, there can be no presumption indulged that such credit has not expired, but such fact, if it exists, must be affirmatively shown. Id. ■8. An assignment for the benefit of creditors which makes excessive preferences under Laws 1887, chap. 503, is valid and gives no ground for an attachment against the assigning debtor’s propertv. Rose v. Renton (City Ct. N. Y.), 683. . See Evidence, 1; Pastees, 1, 3; Shebiffs, 1, 3. ATTORNEY-GENERAL. See Will, 11. ATTORNEYS. While the court has power to allow a non-resident to sue as a poor person, such leave should not be granted except in a reasonably clear case, and the attorney making the application should not be assigned as counsel except in exceptional cases, and then only where it appears that the person seeking the leave knows that the counsel assigned is bound to act without compensation, and the counsel certifies that he will so act. Ha/rris v. Mutual Ins. Oo. (Sup. Ct.), 599. BAIL. 1. An undertaking given upon an arrest is sufficient which recites the arrest of the principal and his imprisonment for a crime named and is conditioned that he will appear at the court of sessions and answer said charge. People v. Brown (Sup. Ct.), 178. 3. In an action upon such undertaking the legality of the proceedings preliminary to the arrest is not relevant or material if the arrest was under color of process. Id. 3. It is no defense to such action that the district attorney told the principal’s counsel that he could go away and that he would send for him when he wanted him. Id.
*976 976 BANKRUPTCY—BANKS. BANKRUPTCY. 1. A stipulation made while bankruptcy proceedings were pending, relieving the defendants from liability to arrest, is to be construed according to the import of its language in view of the circumstances under which it was made, and evidence to prove the understanding or intention of the stipulation is not admissible. Schroeder et al. v. Urey et al. (Sup. Ct.), 945. 8. In an action for goods sold, brought subsequent to the discharge of the vendees in bankruptcy, on the ground of fraud in procuring the sale, an oral statement by their counsel in the bankruptcy proceedings as to their financial condition may be proved by a person who was present by repeating from his notes what was said at the time, no objection being made to proof of such statement by the defendant, who was not present at such time. Id. 3. In an action for the price of goods on the ground of fraudulent representations, brought after a discharge in bankruptcy of the defendants, notes given for the purchase price, which were presented to the register in bankruptcy in proving the debt, and which are'barred by the statute of limitations, need not be surrendered. Id. 4. Where a purchase of goods by means of fraudulent representations, by a member of a firm, is made for the benefit of the firm, and the goods are received and disposed of by it, all 1he members of the firm are civilly liable for the fraud, although they did not know of it or participate therein, and therefore a discharge in bankruptcy of the firm does not operate to relieve either of its members from liability for the debt so contracted. Id. BANKS. 1. A clerk of the plaintiffs, a law firm, in charge of their loan department, by fraudulent representations induced them to give him checks drawn on the defendant bank, payable to names given by him, and which proved to be mostly fictitious, and then forged endorsements on such checks and procured payment thereof from defendant, either directly or through another bank, without inquiry by defendant as to the genuineness of the endorsements. This went on for four years, during which time plaintiffs’ bank book was written up thirteen times, some of these forged checks being returned each time and examined by their cashier. Held, that there was nothing done or omitted by the plaintiffs in the general conduct and management of their business, or in the employment and confidence reposed in said clerk, that estopped them, in an action upon defendant’s implied promise to pay the money deposited by them, from alleging that the checks were paid without their authority, and such payment by defendant was no defense to said action. Shipman et al. v. Bank of the State of New Yot'k (Ot. App.), 376. 2. The provision of the statute that checks payable to the order of persons, having no existence are in legal effect payable to bearer, applies only to paper put into circulation by the maker with knowledge that the name of the payee does not represent a real person. Id. 3. Ten of the eleven checks made payable to real persons were made good by the clerk to the payees. Held, that this could not be set up by defendant as a partial equitable defense, and the refusal by the referee to find that plaintiffs are not entitled to any sum on account of or by reason of the payment by defendant of the same, was not error. Id. 4. A bank receiving commercial paper for collection, in the absence of a special agreement, is liable for a loss occasioned by the default of its correspondents or other agents selected by it to effect the collection. St. Nicholas Bk. v. State Nat. Bk. (Ct. App.), 829. 5. Plaintiff, in New York, sent to defendant, in Tennessee, a draft on a bank in Texas for collection. Defendant forwarded the same to its agents in Texas, by whom it was collected and the proceeds remitted by a sight draft on "New York, the usual mode of remittance. Before the sight draft could be presented both drawer and drawee had failed. Held, that defendant was liable for the loss. Id.
*977 BANKS—BILLS, NOTES AND CHECKS. 977 6. The contract could not he treated as a Tennessee contract, or subject in any way to the law of that state. Id. 7. Respondents sent their bookkeeper to the bank with a letter inquiring as to its solvency, with directions to deposit a certain sum on receiving a favorable answer. The money was deposited, and the bank failed two hours thereafter. Held, that a summary order directing the receiver of the bank to repay that sum was improperly granted, as there was no proof that it ever reached his hands; that as it went into the general fund, it may have been paid out during the time the bank continued business. Hatter of North River Bh. (Sup. Ct.), 931. 8. Preferences of this kind should not be established by a summary proceeding, but the party should be remitted to his action. Id. See Bills, etc., 1. BAR. Where a plaintiff has by separate assignments, made at different times, acquired title to claims for instalments due under a contract, he is not bound to include all the claims in one action. It is only where the class of proof is the same as to all the causes Of action existing that the rule that a recovery for one instalment under a contract is a bar to all that were due at the time of the commencement of the action applies. Miller v. Union Switch & Signal (Jo. (Sup. Ct.), 110. See Lease, 5. BILLS, NOTES AND CHECKS. 1. In order to absolve an agent, who is simply an agent for collection, he must actually part with the money; he must pay over the proceeds to his principal. It is not sufficient to credit the same in account. United States Nat. Bh. v. National Parh Bh. (Sup. Ct.), 35. 2. The drawee of a check or bill is held to a knowledge of the signature of his correspondent, but not for a want of knowledge of the genuineness of the body of the instrument, as between himself and other persons having equal means of discovering the fact of an alteration. Id. 3. The fact that a genuine signature of the drawer had been touched up a little with a brush or quill, butnotessentialy altered, does not constitute a forgery. Id. 4. In an action to recover on defendant’s check it appeared that he gave it to one B. solely for the latter’s accommodation; that on May 28 at Washington, D. C., B. endorsed the check to S. E. M. doing business as M. & Co., and was to receive in return a draft; S. E. M. at once endorsed the check to M., D. & Co. of New York, for account of M. & Co., and subsequently forwarded it to M., D. & Co. It was credited to M. & Co., but, upon payment being refused as hereafter stated, it was charged back. The firm of M., D. & Co. had ceased to exist, but plaintiff had taken an assignment of the interest of S. E. M. and another partner in said firm and had continued to honor drafts upon M., D. & Co. On May 29 S. E. M. delivered to B. a draft on M., D. & Co., which was good then but was worthless on June 2d when presented, M. & Co. having failed May 31st, and payment of the check having thereupon been stopped. Held, that it did not appear that the draft, although upon a non-existent firm, would not have been paid if presented in time, and that a verdict for defendant was erroneous. JDichman et al. v. Robeson (Sup. Ct.), 215. 6. A firm having applied to one S. for a loan, he agreed to procure the money if it would procure the endorsements of this plaintiff and defendant. Defendant endorsed first and plaintiff afterwards, and S. procured the discount of the note by a bank and turned over to the firm the identical bills received from the bank. The firm then gave its note to S. for twenty-five dollars, as compensation for his services. Held, that the ■ note endorsed by these parties was not tainted with usury. Van Patten v. Ulrich (Sup. Ct.), 348. K Y. State Rep., Yol. XXXVII. 123
*978 978 BILLS, NOTES AND CHECKS. 6. Said firm had given S. collateral security to indemnify him against liability, and when plaintiff was compelled to pay the note, S. turned over to him such security. Held, that plaintiff was subrogated to the rights of S., and, being sufficiently secured, could not maintain an action for contribution against defendant. Id. 7. Plaintiff deposited moneys with defendant and received certificates therefor. Subsequently he demanded payment but could not produce the certificates. Upon the trial of an action for the deposit it appeared that said certificates were in possession of the administrator of another person; that they were payable to plaintiff’s order, were not endorsed by him, but that the third person in her lifetime had claimed title to them. Held, that as the certificates were negotiable by delivery and without endorsement, plaintiff must have possession in order to recover; and this, because the defendant is entitled to be insured against liability to pay the certificates a second time. Read v. Marine Bank of Buffalo (Sup. Ct.), 424. 8. The action was brought upon a note claimed to have been given to the mother of the parties to induce her not to claim dower, but to take the provision made for her by her husband’s will, and plaintiff testified that ' defendant so informed her after she had taken a transfer of it. Defendant gave evidence to show that it was given to the mother in lieu of support, in contemplation of her leaving his house, and that she changed her mind and remained. The court charged that plaintiff was entitled to recover if defei dant produced no defense, and that if the jury found that the note was given under the circumstances sworn to by defendant he would be entitled to a verdict; and refused to charge that if it was given to induce the mother not to claim her thirds that was a good consideration and the note was valid and defendant liable, and also that if defendant told plaintiff the note was so given it was valid and plaintiff was entitled to a verdict. Held, no error. Fairfield v. Feagles (Sup. Ct.), 554. 9. In actions upon promissory notes given by defendant to one B., the answer alleged that the notes were given for goods to be manufactured by B. to correspond to sample; that the goods delivered did not do so, and counterclaimed damages for breach of the warranty. Evidence was introduced to show that the notes were transferred to plaintiffs after maturity for past due indebtedness, and evidence offered to sustain the defense was excluded. The court refused to allow defendant to go to the jury on the question whether plaintiffs were Iona fide holders, as to the consideration for the notes and the damages set up in the answer, and directed judgments for plaintiffs. Held, no error. Prince v. Never Rip Jersey Co. (City Ct. Ñ. Y.), 677. 10. A creditor in receiving from a debtor a check of a stranger endorsed by such debtor is under an obligation to present the same not later than the next day, and where he holds it for nine days the debtor is discharged from liability as endorser of the check irrespective of any question of loss or injury. Carroll v. Sweet (Ct. App.), 868. 11. In an action upon the original indebtedness it was shown that plaintiff at the request of the maker of the check held it for nine days, during which time the maker had the means of payment at command and would have provided for or paid the check if payment had been insisted upon, and that plaintiff presented it for payment after the maker had become insolvent. Held, that it was for the jury to find whether plaintiff’s conduct had imposed a pecuniary injury upon defendant, and that to the extent of that injury the debt to plaintiff had been paid. Id. 12. In an action upon a promissory note, brought by an endorsee thereof, where the defense is that it was procured from the maker by fraudulent representations, it is not error to exclude a question put to the payee as a witness whether he had any of the notes against defendant except the one in suit, as such question is immaterial and does not tend to show that the note in suit was procured by false representations. Mendelson v. Sheffield (ÍT. Y. Supr. Ct.), 879. 13. Where the only evidence that the note was procured hy fraud is the testimony of the defendant himself, the plaintiff is not bound to prove that he had no notice or knowledge of the fraud, but it is a question for
*979 BILLS, NOTES Al I) CHECKS—BUSINESS NAMES. 979 the jury as to how much or what credence should be given to the defendant’s testimony. Id. See Appeal, 12; Banks, 1-6; Judgment, 2; Principal and Agent. BILL OF PARTICULARS. The complaint alleged that defendants, who had certain property of plaintiffs for sale, by false representations and concealments induced plaintiffs to make a contract of sale to the wife of one of the defendants for a price much less than could be obtained for it; that defendants circulated rumors intended to keep away purchasers and failed to bring plaintiffs in contact with persons to buy it, and that they had received offers which they concealed from plaintiffs. Held, that defendants were entitled to a bill of particulars of the names of the persons from whom it was expected to prove the receipt of such offers and among whom the rumors were circulated. Williams et al. v. Folsom et al. (Sup. Ct.), 635. See Veterans, 3. BILL OF SALE. See Trust, 3. BOARD OF CLAIMS. See Appeal, 6. BROKERS. 1. Evidence that a real estate broker, employed by defendant to sell certain premises, brought them to the attention of the purchasers and brought them and defendant together, makes a prima facie case for the jury in an action for commissions, lurner v. Putnam (City Ct. B’klyn), 395. 2. Where a broker has presented a purchaser satisfactory to defendant and a contract of sale is entered into, his commissions are earned and he cannot be deprived of them by the fact that the contract afterwards failed because of the attempted imposition of other terms. Hattenbach v. Gtundersheimer (N. T. C. P.), 509. 3. Plaintiff was employed by defendant to sell a house and negotiated with one D., who was not willing to pay the price. Defendant refused to take less but did not terminate the contract with plaintiff, and subsequently himself sold to D. at a less price. Thereafter he requested plaintiff to accept a certain sum for his services, which plaintiff agreed to do. Held, that the parties stood in the same position as if defendant had told plaintiff to sell to D. at the price he took himself, and that plaintiff was entitled to recover the amount named. Hailey v. Young. (Sup. (Ct.), 903. BROOKLYN. See Municiral Corporations, 11, 15; Statutes, 1. BUFFALO. See Municipal Corporations, 16. BURGLARY. 1. _ A fruit stand, erected on a street against a building was about five feet in height and in length, and had a window and door. Upon the trial of an indictment for breaking and entering this structure, Held, that it was a “ booth ” within the meaning of § 504, Penal Code. People v. Hagan (Sup. Ct.), 660. 2. Where an indictment charged the property taken as of one Musso, and this person stak'd upon the trial that his name was Musachio, Held, that the variance might under Code Grim. Pro., § 293, be amended and could be disregarded under §§ 684, 542 of the same Code. Id. BUSINESS NAMES. See Partnership, 5.
*980 980 CARRIERS—CHATTEL MORTGAGE. CARRIERS. 1. If goods, belonging to another person, be placed in the trunk of a passenger on a railroad, although such company accepts the trunk for transportation as baggage in the usual-manner, if its servants or agents have no notice of the presence of such merchandise, no liability will arise on the part of the carrier to the owner of the merchandise in case of its loss or destruction. Gurney v. Grand Trunk B. Go. (Sup. Ct.), 155. 3. A carrier of passengers contracts not only for his own skill and care in the conduct of the business, but for the skill and care of all those who have made or furnished any of the instrumentalities or appliances by means of which the business is conducted. Birmingham v. Bochester Gity & B. B. B. Go. (Sup. Ct.), 317. 3. Plaintiff, while a passenger on one of defendant’s cars, was injured by the fall of a quantity of pig-iron from an iron trough used to balance a lift bridge constructed and owned by the state, and forming part of the highway traversed by defendant’s road. Held, that by its use of the bridge defendant made it a part of the superstructure of its road, and was as much responsible for its safe condition as for that of any portion of its track. Id. 4. Where a common carrier agreed with plaintiff, lessee of a pier, to pay rent per diem while the pier was occupied by freight and the carrier turned the freight over to the consignee who accepted it, and the freight thereafter remained upon the pier, in an action by the lessee against the carrier for rent, Held, that the fact that the consignee had taken possession of the freight did not excuse the carrier from payment of the stipulated rent. Elwett v. Tabre (N. Y. C. P.), 354. 5. Cotton was shipped from Texas to New York over several connecting railroads, which, with the defendant, entered into a common bill of lading. This provided that the carriers should not be liable for loss by fire upon any property while in deposit or places of transshipment or at depots or landings at all points of delivery. While the cotton was on defendant’s wharf in New York it burned. Held, that plaintiff, one of the connecting lines, could not recover its charges and the charges of other connecting lines advanced by plaintiff. That if the cotton had been loaded on the defendant's steamship when the fire occurred, defendant might have been under an implied liability to pay the charges. N. T., L. E. & W. B. B. Go. v. National Steamship Go. (Sup. Ct.), 731. See Municipal Cobpobations, 34. CASE. Where the appeal is taken on the ground that the rights of the appellant were infringed by the reading by the opposing counsel of authorities to the jury in his summing up, the case need not contain all the authorities so read. The insertion of one or two is sufficient to raise the question of law involved, and more would be surplusage and should of necessity be excluded. Kingsland v. Mayor (Sup. Ct.), 943. CERTIORARI. See Municipal Cobpobations, 19; National Guabd, 1, 5. CHATTEL MORTGAGE. 1. Although chattel mortgages may be void as to creditors for the reason that they were not filed at the time their credits were given, yet if creditors neglect to avail themselves of the means provided by the statute to secure the payment of their claims until the mortgagor has transferred his interest to an assignee for creditors, they thereby lose the advantage which they otherwise might have gained. Kitchen v. Lowery et al. (Ct. App.), 337. 3. A chattel mortgage given to secure payment of a note and as continuing security for notes thereafter due to or endorsed by the mortgagee covers a note subsequently given to or endorsed by him, and the fact that other
*981 CHATTEL MORTGAGE—CODE CIVIL PROCEDURE. 981 security was also taken for the note does not, of itself, exclude it from the benefit of the security first given. Burritt v. Shefftr (Sup. Ct.), 591. 8. The mortgagors in a chattel mortgage covenanted that if required to do so they would execute a similar mortgage upon all merchandise purchased to replenish the stock. Held, that such a covenant did not make the mortgage void upon its face. Hineks et al. v. Field et al. (Sup. Ct.), 724 4. Where persons gave their debtor a chattel mortgage, but thereafter continued to deal with the property as their own, paying the debtor nothing, and it appeared that a sale of the business was contemplated by all parties, and that there was no understanding, contemporaneous with the giving of the mortgage, that the mortgagors should continue to deal with the property as before, Held, that the mortgage was not void. Id. 5. Where a tenant has given a mortgage on his household furniture to secure the rent, and afterwards removes from the premises, abandoning 'the furniture, which the landlord takes possession of and stores, Held, that in the absence of proof of a conversion, this does not operate as a satisfaction of the mortgage debt. Lathers v. Hunt (N. Y. O. P.), 748. CHILDREN. See Habeas Corpus, 2. CIVIL DAMAGE ACT. 1. An owner of a building who entrusts its renting to another without restriction is chargeable with the knowledge of his agent, and where the premises are used for the sale of liquor will be held to have permitted such use and to be liable under the civil damage act. Hall v. Germain (Sup. Ct.), 320. 2. Evidence to the effect that at the time of the execution of the lease it was understood that the lessee was not to sell liquor on the premises is immaterial in an action under the civil damage act, where it is undisputed that the agent had knowledge that the lessee and his successor did in fact carry on such business on the premises for years while paying him the rent therefor. Id. 3. In such action the jury has a right to consult the annuity tables in determining the probable duration of the joint lives of plaintiff and her husband. Id. CIVIL SERVICE. 1. An employe of the Croton Aqueduct commissioners alleged that he was an honorably discharged soldier, that the commissioners were about to abolish the grade of employes to which he belonged and to establish another grade, that in the selection of candidates for the new grade the civil service law had been violated and that he had not been allowed to enter a competition held to decide upon appointees to the new grade. Held, not a proper case for mandamus; the office of which writ is not to redress an anticipated wrong but to remedy one which has been suffered. Matter of Brown v. Buane et al. (Sup. Ct.), 691. 2. This court will not take judicial notice of the proceedings of the board of Croton Aqueduct Commissioners. Id. See New York City, 4. CODE CIVIL PROCEDURE. 1. Section 90 of the Code, prohibiting the court from appointing a clerk of the court as referee is unconstitutional. Even if it were not, it wall be inferred, in support of the action of the court, that the parties consented to such appointment as authorized by said section. Standfast v. Grotty (City Ct. N. Y.), 672. 2. Section 724. The court has no power under § 724 of the Code to vacate a report of a referee and direct the taking of new testimony by him. That section has no application to motions for new trial on the ground of newly discovered evidence, but is confined to cases of mistake, inad-
*982 982 CODE CIVIL PROCEDURE—CONSTITUTIONAL LAW. vertence, surprise or neglect. Holmes et al. v. Evans et al. (N. Y. Supr. Ct.), 368. 3. Section 839. Testimony given by a witness upon re-examination as to personal transactions with a decedent, is not objectionable under § 839 of the Code, where he has been questioned by the counsel for the administrator on cross-examination as to the same subjects. Blankman v. McQueen (Sup. Ct.), 601. 4. Section 1033, Code Civ. Pro., provides that a referee in his report “ must direct the judgment to be entered thereupon.” This requirement is satisfied if from the whole or a part of the report the particular form and the terms of the judgment to which the successful party is entitled can be ascertained. Hinds et al. v. Kellogg (N. Y. C. P.), 356. 5. Where the conclusions of law in a referee’s report clearly and unmistakably settle the form and amount of the judgment to be entered, this is a sufficient compliance with § 1033 of the Code, requiring a direction of the judgment to be entered. Devlin v. Mayor et al. (N. Y. C. P.), 508. 6. Section 1843_. A. claim of a physician for professional services rendered to a testatrix is one arising upon contract within the meaning of § 1843 of the Code. Adams v. Hilliard et al. (Sup. Ct.), 314. 7. Section 3353. Where the plaintiff in foreclosure has received his money and assigned the bond and mortgage under an order of the court directing him to do so if required by a subsequent mortgagee, this constitutes a settlement within the meaning of § 3353 of the Code. Olivers v. Damon et al. (Sup. Ct.), 904. See Evidence, 13. COLLATERAL INHERITANCE TAX. See Taxes, 3-7 CONSIGNOR AND CONSIGNEE. 1. The mere fact that a commission merchant, who is under no obligation to insure, takes out a policy on merchandise belonging to himself or held by him in trust or on commission, without the knowledge of his consignor, gives the latter no right, in case of loss, to the moneys received from the insurance company, nor renders the consignee liable as for money had and received. Qutman v, Rogers (N. Y. C. P.), 364. 3. The fact that the consignor’s goods were included in the proofs of loss does not entitle him to any part of the insurance moneys, where it appears that the amount received was insufficient to cover the value of the consignee’s own property. Id. CONSPIRACY. See Criminal Law, 1, 3. CONSTITUTIONAL LAW. 1. Chapter 161, Laws 1889, relates to but one subject and that is expressed in the title of the act, which is sufficiently broad to answer the requirements of the constitution. Van Brunt et al. v. Town of FlaCbush et al. (Sup. Ct.), 175. 3. The act in relation to the depositing of carrion, offal, dredgings, etc., in the North and East rivers and the bay of New York, operates upon a subject in which the whole people are interested and is a general and not a local act. Ferguson v. Boss et al. (Ct. App.), 836. 3. Although the deposit may have been mnde within territorial limits of New Jersey, it is within the prohibition of said act, as the compact between New York and New Jersey vests exclusive jurisdiction over the waters of the Hudson, to low water mark, in the former state. Id. See Municipal Corporations, 35; National Guard, 3, 3, 6, 7; Reference, 7.
*983 CONTEMPT—CONTRACT. 983 CONTEMPT. One T. was directed to pay the costs of this action as being beneficially interested therein, and such direction was affirmed on appeal. Having refused to pay he was adjudged in contempt and fined the amount of such costs. Held, that proof of such refusal was sufficient to show damage to defendant, and the fact that the payment was directed' to be made to her attorney did not alter the question. Tucker v. Oilman (Sup. Ct.), 958. See Executors, etc., 7, 8. CONTRACT. 1. It is a necessary requisite to the making of a contract by correspondence that the parties should understand that they are so contracting, and that, according to their understanding, there is nothing further tobe done to fix the terms of the contract. Orodke Smelling & Bef. Go. v. Towle et al (Sup. Ct.), 45. 2. Where defendants agreed by letter to take a lease on the general terms proposed by plaintiff, but by the subsequent correspondence it appeared that additional provisions were required on both sides which had not been agreed to, Held, that the minds of the parties had not met, and that no contract had been made. Id. 3. Equitable interference cannot be sought on the ground that a contract was procured by duress or that it was illegal and contrary to public policy, as these facts would constitute a perfect defense to an action at law on the contract. Terry v. Hoi'ne et al. (Sup. Ct.), 58. 4. A requirement in a contract of performance “as soon as possible,” means with greater celerity than within a reasonable time. Sentenne v. Kelly (Sup. Ct.), 162. 5. Where the original agreement was plain and the writing which was intended to evidence it failed to do so, the rules as to mistake and mutual mistake have no application, but the agreement actually made prevails. Linton v. Unexcelled Mre Works Go. (Sup. Ct.), 173. 6. Plaintiff was employed by defendant at a specified salary, and in addition thereto the net earnings on thirty shares of stock, which were to be delivered to him when the earnings reached their par value. Thereafter a paper was drawn to evidence the agreement, in which the word “dividends ” was used in place of “ net earnings,” but it was understood that the paper was to change nothing. The dividends were less than the net earnings. Held, that the original agreement must prevail; and that plaintiff was entitled to stock on the basis of the net earnings. Id. 7. Defendant agreed to give plaintiff one-half the commissions actually received by him from custom brought him by plaintiff. Owing to a reduction in commission rates made by the Chicago Board of Trade, a city with which defendant dealt, he notified plaintiff that he could not pay him commissions on business in the future. Held, that defendant had a right to terminate such a contract after the lapse of a reasonable time and for a good motive ; that his action must be in good faith and not simply to avoid payment of commissions. Oilbert v. Quinlan (Sup. Ct.), 290. 8. A building contractor gave to plaintiff an order on defendant for a sum of money due to him on his contract. The order was presented to defendant, who was a German and unable to read or understand English, and he was informed simply that it was an order and he should sign it to secure the moneys therein mentioned to plaintiff. He was not informed as to its amount or the fund it was drawn against. Held, that this was not such notice to defendant of an assignment of moneys due or to grow due on his building contract as bound him to withhold payment from the contractor, or, in default of so doing, to pay so much of his debt a second time. Grouch v. Muller (Sup. Ct.), 325. 9 The defendant agreed in writing with the plaintiff to send every steamer of his “line” to plaintiff’s pier. He owned the steamer “Iberia,” and its captain and crew were under his control, although for the voyage in question the steamer was under a contract of affreightment to another
*984 984 CONTRACT. person. The name of the line did not appear in the contract, but it was not shown that defendant had more than one line. Held, that under the contract defendant was bound to send the steamer to plaintiff's pier, and that for his failure to do so plaintiff could recover. JSlwell v. JPti6re(N.Y. O. P.), 353. 10. At a timewhen defendant sent steamers to the pier repairs were being made upon it which contracted the space, and, as alleged, caused defendant extra expense in piling the freight higher. For this defendant made a counterclaim. In reply to this, plaintiff was allowed to show, in mitigation of damages, that, in this state, of affairs, he had offered defendant the use of another pier. Held,, that this evidence was proper and might be shown under a general denial of the counterclaim. Id. 11. Plaintiffs agreed by parol to manufacture for defendants certain circulars to be delivered as soon as possible. They were designed exclusively for use in defendants’ business. Held, that although their value exceeded fifty dollars, and no part of the price was paid, the contract was not within the statute of frauds. Hinds et al. v. Kellogg (N. Y. O. P.), 356. 13. A contract to deliver “ as soon as possible” requires delivery within a •reasonable time, and this latter means so much time as is necessary, under the circumstances, to do conveniently what the contract requires shall be done. Id. 13. In an action to recover for work done under a building contract the plaintiff testified that the work was completed and that he applied to the architect for a certificate; that he found no fault with the work, but referred to some damage by water, and advised that defendant be seen about it and said that defendant was a crank, and that he did not like to give .a certificate until defendant was satisfied. Held, that on this testimony it was proper to submit to the jury the question whether the certificate was unreasonably withheld. Gibbons et al. v. Russell (City Ct. B’klyn), 403. 14. Where the evidence as to substantial performance of the contract is con- „ flicting, the question is peculiarly one for the jury, and a denial of motions to dismiss and for direction of a verdict is proper. Id. 15. A question put to defendant as to whether he made any work or attempted to have anything done that was not a remedying of the defects, specified by him, is improper, as calling for a conclusion. Id. 16. Where plaintiff, a builder, sought to recover upon a contract to erect a building and the defendant alleged a failure to perform which was slight compared with the amount of the whole contract and the alleged change was attributed by plaintiff to directions from the architect, Held, that it was error to non-suit; that it was for the jury to say whether the omission was. wilful and whether the contract had been substantially performed. Hopper v. Gutting et al. (N. Y. C. P.), 504. 17. Where parties settle disputed claims by striking a balance which defendant promises to pay when able, an action to recover such balance is not an action upon an account stated and settled, but one brought upon the promise, and in order to recover plaintiffs must prove some change for the better in defendant’s circumstances at a period subsequent to the time when the promise was given. Work et al. v. Beach (Sup. Ct.), 547. 18. Proof that defendant was in receipt of a judicial salary is not sufficient to show such ability, where it also appears that he received the same when the contract was made and that he saves nothing out of it. Id. 19. Where one of defendant’s letters claimed to evidence the agreement stated that he would write a loiter stating his obligation to pay when able “in accordance with our agreement on Saturday last,” evidence tending to prove what the entire agreement was is admissible, as the letter evidently did not contain the entire contract. Id. 30. In such an action evidence as to whether defendant could not have saved sufficient from his salary to pay a portion of the claim, and why he did not do so, is inadmissible. Id. 31. One Gr. having contracted for the purchase of lands on which to erect flats, plaintiff and other adjoining owners, in order to prevent sueh
*985 CONTRACT. 985 erection, purchased his contract at an advance and in consideration of such advance G. orally agreed not to erect any flats in their immediate neighborhood. Held, that this was a personal agreement between such owners and G. and did not impose any covenant or equity upon any lands which he should thereafter buy which could be enforced against a subsequent grantee from him, even though such grantee had notice of the agreement. Lewis v. Gollner et al. (City Ot. B’klyn), 613. 22. In an action for breach of a contract to furnish a heater for plaintiff's house the question is as to the fitness and capacity of the one rejected by him as insufficient, and evidence to show that similar heaters had proved amply sufficient to heat buildings as large as his is inadmissible. Matter of J. F. Pease Furnace Co. (Sup. Ot.), 634. 23. Where the contract to furnish such heater was made in New York city, and the heater was to be used in that vicinity, the plaintiff should not be required to take his witnesses to a place 300 miles distant to secure redress for a breach of the contract. Id. 24. On the foreclosure of a purchase money mortgage the defendant counterclaimed damages sustained by a breach of the vendor of an agreement to remove certain railroad tracks which were upon the premises, by reason of which he claimed to have lost a sale of the property to one B. The court refused to find that defendant had entered into a contract with B. for the sale, the contract not having been entered into in good faith but for the purpose of proof of damages. Defendant testified to a deterioration in value, but was contradicted by his affidavits made at other times. Held, that defendant was only entitled to nominal damages for the breach of the • agreement. Horton v. Childs et al. (Sup. Ot.). 637. 25. Defendants endorsed a note of plaintiff given to raise money to pay an assessment on certain stock, which note they were afterward compelled to pay. At the time of such endorsement plaintiff executed an agreement by which she sold said stock to defendants, the agreement reciting the endorsement of the note and providing that if she did not pay the note at maturity, and defendants did so, they should own the stock absolutely. In an action to redeem the stock, there was no proof of deception or mistake except evidence of a previous conversation between plaintiff’s agent and one of the defendants that they would receive the stock as collateral security, and it appeared that the agreement was read to plaintiff before she signed it. Held, that plaintiff was bound by the contract, and that it constituted a sale and not a pledge of the stock. Morganstern v. Davis et al. (Sup. Ot.), 819. 26. Although the endorsers did not agree to pay the note, yet as they did, in fact, do so, a good consideration was furnished for the agreement. Id. 27. A contract between the parties hereto provided that plaintiff should be the general manager of defendant, and assign to it the exclusive right to use all his inventions; that the contract should continue for a period of ten years, subject to termination by either party by one year’s notice in writing after the second year, or by the death or inability of plaintiff. By the 8 th clause it was provided that, on the termination of the agreement, said company (by reason of the expenditures that shall have been made during the continuance of this agreement) shall have a license (not exclusive) to use all the inventions that may have been used by it, on payment of $6,500 a year, payable quarterly. In an action for an instalment of the sum last mentioned, Held, that a discharge of the plaintiff did not terminate the agreement within the meaning of the 8th clause, and that plaintiff was not entitled to recover. Johnson v. Union Switch & ¡signal Co. (N. Y. Supr. Ot.), 876. 28. In such case, if defendant thereafter used the inventions, plaintiff would be entitled to the value of that use. Id. 29. A judgment against the defendant for a quarterly payment recovered by an assignee of the plaintiff is not admissible as a final adjudication as to the liability of defendant under the 8th clause, as the parties are not the same, and plaintiff is not estopped by the former judgment. Id. X". Y. State Rep., Yol. XXXYII. 324
*986 986 CONTRACT—CORPORATIONS. 80. A promise made by the president of the defendant on such discharge that, the royalty would be paid is not binding on the defendant in the absence of proof that he was authorized to make it or to put a construction, on the contract. Id. 31. After negotiations by letter and telegram, plaintiff, by telegram, accepted an offer of sale of ice, and ordered a shipment, saying he would see defendant the following Monday. Defendant ordered a cargo and requested a certified check therefor. Upon'meeting to execute a contract for such sale, plaintiff disputed some of its terms, and defendant after endeavoring to explain them, remarked that as he did not understand it, they would call the trade off, to which plaintiff assented, but two-hours later served a notice demanding delivery of the ice. Held, that the minds of the parties never met as to the terms of the sale, and therefore there was no contract. Fraser v. Small (Sup. Ct.), 900. See Bab, 1; Discovert; Evidence, 4; Infants, 3; Municipal Corporations, 8; Promise, 1-3; Sale, 14; Vendor and Purchaser. CONVERSION. 1. An order was issued by the board of supervisors to pay a claim of plaintiff for injuries to her horse, the name of her husband being erroneously included as a claimant. It was given to defendant as supervisor of such town to deliver to plaintiff. Instead of doing so he turned it over to a constable, who held an execution in his favor against plaintiff’s husband, with directions to levy thereunder on half of the order. Held, that as officer of the town defendant was charged with the performance of the duty of delivering the order to the claimants within a reasonable time, and that when he turned it over to the constable he was guilty of a conversion, irrespective of any previous demand Clark v. Miller (Sup. Ct.), 345. * 2. Adam Axt being indebted for borrowed money and wages to plaintiffs, who were his sons and son-in-law, gave them a bill of sale of his business and machinery, which was filed in the clerk’s office, and they thereafter continued the business, employing Adam Axt at stipulated wages. In an action against the sheriff for conversion in levying upon and selling the machinery as the property of Adam Axt, the foregoing facts were shown, and Adam Axt disclaimed any intent to defraud creditors in making the transfer. Held, that a judgment in favor of plaintiffs was warranted by the evidence. Ant et dl. v. Shankey (Sup. Ct.), 897. Sec Evidence, 2; Pleading, 13. CORPORATIONS. 1. The directors of an insolvent corporation have no right to secure equality of distribution for all its creditors by means other than those-pointed out by the various statutes regulating their duties and powers and which, apart from the object sought to be obtained, would clearly be irregular and a fraud upo%the law. National Broadway Bk. v. Wesselt Metal Co. et at. (Sup. Ct.), 102. 2. Plaintiff having commenced an action against the corporation to which it had no defense, its directors agreed with one of their number to confess judgment to him for a portion of a Iona fide claim which he held against the company. The judgment was entered, the attorney for the company drawing the papers, and said attorney handed the execution to the sheriff with a direction to return it forthwith, which was done and sequestration proceedings commenced which resulted in the appointment of a receiver, who sold the assets to said judgment creditor for an inadequate sum. In an action to set aside the appointment of the receiver, Held, that unlawful means were used to effect a forbidden end; that plaintiff was in a legal sense hindered, delayed and defrauded, and that a dismissal of the complaint was erroneous. Id. ■ 3. Promoters of a company are liable for work done or material furnished for such company on their order, in case such company is never actually incorporated, either on the ground that as agents they were acting with out an existing principal or that they had made themselves personally liable. Hub Publishing Co. v. Bichardson (Sup. Ct.), 541.
*987 CORPORATIONS—CRIMINAL LAW. 987 4. Where the appointment of a receiver of an insolvent corporation is regularly made on due notice, such appointment vests him with all the right and authority of his office, although his appointment as temporary receiver was illegally made. Matter of Stonebridge (Sup. Ct.), 617. 5. Proof that early in the year the president of the corporation had made statements and reports showing that it had more property than was required to pay its debts, and had as late as June made similar statements; that in September executions against it were returned unsatisfied; that the receiver obtained only the books of the concern, from which it appeared that large transfers of property had been made prior to the obtaining of such judgments, and that the president was active in making such transfers, is sufficient to sustain a warrant for the examination of said president. Id. 6. The fact that the receiver availed himself of the assistance of the counsel for the creditor at whose suit he was appointed furnishes no legal reason for denying the warrant, or setting it aside after it has been issued, as it was a mere irregularity. Id. See Contract, 30; Manufacturing Companies; Promise, 4; Railroad, 27; Receiver; Taxes, 13; Will, 5. COSTS. 1. This court has no jurisdiction to review the discretion of the court below in granting an extra allowance where no rule of law is violated or in refusing it, unless such refusal was based on a want of authority. Shiels et al. v. Wortmann et al. (Ct. App.), 134. 2. Where the general term has decided that a party is entitled to an extra allowance, to be settled by the special term, and on the subsequent appeal from the order of the special term the general term concludes that no extra allowance should be made, its decision is not subject to review in this court. Id. 3. An action to recover injuries caused to a servant by the defective condition of the machine on which he was working is not one for an “assault and battery” within the meaning of § 3228, subd. 3 of the Code, and the plaintiff is not entitled to costs on a recovery of less than $50. Rieger v. Fahy’s Watch Case Co. (City Ct. B’klyn), 400. 4. Where an order denying a motion for a new trial is affirmed on appeal, the respondent is entitled, as a matter of course, to the costs of the appeal, and, if the' same are not paid within the time specified in § 779 of the Code, may collect the same by execution. McIntyre v. German Sar’gs Bk. (Sup. Ct.), 545. 5. In an action brought by an executor or administrator under § 1902 of the Code, for causing the death of his testator or intestate by negligence, the plaintiff is not limited as to costs by the amount of his recovery, but upon recovering is entitled to full costs. Gorton v. ET. 8. & Brazil 8. 8. Co. et al. (Sup. Ct.), 556. 6. Where the complaint in an action to oust defendants as usurpers in office demands that each shall pay the fine provided for by § 1956 of the Code, the aggregate amount of such fines furnishes a basis for an extra allowance. People em rel. Winans et al. v. Adams et al. (Sup. Ct.), 603. See Contempt; Ejectment, 4; Foreclosure, 4, 5; Parties, 4; Railroad, 21; Stay, 1; Will, 7, 28. COVENANT See Contract, 21; Injunction, 2. CRIMINAL LAW. 1. If the guilt of one of several defendants, who are jointly indicted for a felony, is sought to be established by evidence showing or tending to show a conspiracy between him and the other defendants for the commission of the felonious act, evidence as to acts or statements of the others must be confined to such as were made or done at times when the proofs in the
*988 988 CRIMINAL LAW—DEED. case permit of a belief that a conspiracy existed and when therefore the acts or statements might have been in furtherance of the common design. People v. Kief (Ot. App.), 477. 2. Whatever may have been said or done by the several persons accused of conspiring to commit the crime before the time when according to the evidence the conspiracy was formed or subseque't to the time when the conspiracy terminated, by the accomplishment of the common purpose or by abandonment, is inadmissible as evidence against the others. Id. 2. It is immaterial upon the trial of a party charged with a felony whether one jointly indicted with him for the offense has been acquitted or not. Id. 4. It is sufficient to constitute one a principal in a felony that he was present while the other principal committed the crime, and that as soon as the latter declared that he had possession of the object of the crime that both fled and hid together in a closet. People v. McElroy et al. (Sup. Ot.), 650. 5. Where no exceptions to the charge were taken by the defendant upon the trial of an indictment for grand larceny, Held, that the court would not reverse the conviction because the trial judge said to the jury that he did not see that the direct evidence of one of the People’s witnesses had been shaken upon cross-examination, and further that unless that witness had committed perjury it seemed to the court that there should be very little hesitation upon the part of the jury in coming to the conclusion that the crime of larceny had been committed. People v. Fleming (Sup. Ct.), 655. See .Abduction; Burglary; Disorderly Persons; Rape. DAMAGES. The defendant sold to the plaintiff’s son forty-seven acres of land for $1,645, the son giving back his own mortgage for $1,000 and a mortgage belonging to plaintiff on other premises for $645; and thereupon the son. gave plaintiff a mortgage upon the premises in question for $645. The defendant represented the premises as free of incumbrances; in fact it was apart of a farm of 207 acres subject to a recorded mortgage of $4,000; but defendant had sold 160 acres of it to another person who thereupon agreed to pay the $4,000 mortgage to the extent of $3,850. Defendant showed that the 160 acres were worth more than $4,000 but it had not since been sold nor the mortgage foreclosed. It did not appear that the purchaser of the 160 acres was not responsible. Held, in an action for the depreciation of the $645 mortgage to her, that plaintiff's recovery should ■ have been limited to $150, the difference between $4,000 and $3,850. Bradley v. Ga/rter (Sup. Ct.), 416. See Ejectment, 3; Lease, 12, 13; Negligence, 7, 15; New York City, 1; Search Warrant, 1. DEBTOR AND CREDITOR. ' See Joint Enterprise. DEED. 1. During the life-time of plaintiff’s mother she conveyed certain real estate to defendant Richardt; and this action was brought to set aside the deed, as without consideration and as procured by fraud, both of which were found as facts by the jury. R. had sold the property to innocent third parties, and received the money. Plaintiff’s complaint also asked “ for such further or different judgment or relief as may be just.” Held, that as defendant had conveyed the property away to a purchaser in good faith, and received the money, a court of equity had the power to compel him to pay this money and its accumulations to plaintiff in place of the land, and that to this end a personal judgment was proper. Valentine v. Richardt et al. (Ct. App.), 12. 2. Plaintiff and her husband by separate deeds conveyed lands owned by them and took back a mortgage to themselves jointly for the purchase money. On foreclosure thereof the property was bid in for plaintiff, but
*989 DEED—DISORDERLY PERSONS. 989 the deed was given to her husband alone, who retained it unrecorded for four years, and represented to plaintiff that the deed was taken in her name. Plaintiff did not discover the omission of her name until after her husband’s death, in 1888. In an action to reform the deed, Held, that the facts would justify a finding of fraud and that the statute of limitations was not a bar to the action. Hunworth v. Dunworth (Sup. Ct.), 905. See Will, 21. DEFAULT. 1. An order setting aside a default taken on failure of plaintiff to appear is discretionary and not appealable. Traitt&wr v. Levingston (N. Y. Supr. Ct.), 868. 2. On motion to open a default it is discretionary with the court to refuse to decide the question as to the effect of a failure to reply to a counterclaim and refer it for determination to the ordinary proceedings in the action. Id. 3. Where it is claimed that the failure of plaintiff’s attorney was due to an arrangement with the other side, which arrangement was denied, but the preponderance of evidence as to its existence is in favor of plaintiff, the court has a right to consider this in settling terms. Id. DEPOSITIONS. 1. The provision of § 872, subd. 5, of the Code, that such subdivision shall not apply to a case where the person to be examined is a party to the action, does not apply to and is not prohibitive of the taking of the deposition of a party at his own instance. McVity v. Stanton (N. Y. C. P.), 752. 2. Proof that a party is employed as a traveling salesman, and that his business requires him to be out of the state for many months at a time, and that he is about to leave the state for that purpose, is sufficient to authorize an order to take his testimony de bene esse, under § 870, at his own instance. Id. 3. The right to use the deposition of a deceased witness, taken under an agreement that it might be so used, arising out of the condition of the case when on the calendar for trial, is not lost by a failure to file it. Schroeder et al. v. Frey et at. (Sup. Ct.), 945. DISCOVERY. Plaintiff entered into a written contract to excavate rock on defendant’s grounds according to a certain profile and survey at a certain price per cubic foot, but the contract was not drawn in defendant’s name, nor did it provide that plaintiff should do all the excavating called for by the profile and survey. In an action for breach of the contract in stopping the work before all the rock shown in such profile and survey was removed, Held, that plaintiff did not show that he had a cause of action against the defendant and was not entitled to an inspection of the profile and survey to enable him to frame his complaint. Mar rone v. New York Jockey Club (Sup. Ct.), 936. DISMISSAL OF COMPLAINT See Trial, 7. DISORDERLY PERSONS. 1. Where a defendant is adjudged a disorderly person and directed to give a bond for his wife’s support or be imprisoned, and he fails to give the bond and appeals, giving an undertaking thereon and is discharged pending the appeal, the first conviction is not a bar to a second proceeding of the same character and to the issuance of a warrant therein, and these proceedings could be repeated until he consents to support his wife, or gives an undertaking for her support or until he is actually in prison under some conviction. People ex ret. Lichtenstein v. Hodgson (Ct. App.), 132. 2. Where a husband is proceeded against under the statute the justice has jurisdiction to try every question involved in the complaint, including
*990 990 DISORDERLY PERSONS—EJECTMENT. that of ascertaining whether the defendant is the husband of the complainant. Id. DISTRICT COURTS. It is too late to ask for an amendment of a district court return after the appellate court has intimated or announced its decision on the questions presented by the return as filed. . Warren v. Campbell et al. (N. Y. 0. P.), 762. DIVORCE. 1. In an action for a divorce a vinculo, evidence of the relations existing between the defendant and the alleged pa/rticeps criminis not in immediate connection with the specific act charged are competent on the question of adulterous inclination. Smith v. Smith (N. Y. C. P.), 267. 2. Evidence sufficient to support a finding of the commission of adultery. Id. See Tenancy by Entirety. . DOWER. 1. Where a wife absents herself from her husband for five successive years without being known by him to be living within that time, and he contracts a second marriage, which is annulled in an action between them, because the first wife is living, such second wife is not entitled to dower in the real estate owned by him at the date of the entry of judgment of nullification. Price v. Price et al. (Ct. App.), 146. 2. Sections 8 of 1 R. S., 740, and §48 of 2 R.S., 146, denying the wife’s right to dower when divorced for her adultery, do not relate to the rights of persons whose marriages are annulled, but only to those of persons divorced for adultery. Id. 3. Where a widow assigned her dower and right of dower and died without taking any proceedings in any form to recover dower, Held, that neither her assignee, nor the personal representatives of such assignee, could maintain an action either to enforce a lien therefor or to admeasure the same or to recover a sum in gross in lieu thereof. Howell v. Newma/n et al. (Sup. Ct.), 296. DURESS. See Contract, 3. EASEMENTS. 1. In an action for trespass by defendants upon easements appurtenant to the premises of plaintiffs, it appeared that the premises were conveyed after the construction of defendants’ railroad to plaintiffs’ grantor, “in the condition in which the same now are,” and the court also found that defendants’ railroad was constructed, maintained and operated under some estate, license or authority derived from plaintiffs’ predecessor in the title. Held,, that such finding amounted to an abandonment by the owner of the easement; and that such abandonment having been acted upon by the defendants, it became as to them an irrevocable license. Hoch et al. v. Manhattan B. Co. et al. (Sup. Ct.), 200. 2. By an instrument under seal plaintiffs’ predecessor in title, for the consideration of one dollar, let. granted and demised to the predecessor _ of defendants, one Johnson, the right to take and use water from his spring-sufficient to run his cheese factory, “ to have the use of said water so long as the same shall be used for the purpose of running a cheese factory,” provided that he should keep the pipes in repair and the surface level. Held, that in view of the purpose for which the grant was given, it was not personal to Johnson, but enured to the benefit of the cheese factory while it continued to be used as such. Whitney et al. v. Richardson et al. (Sup. Ct.), 308. See Railroad, 30. EJECTMENT. 1. Where the plaintiff’s title appears by the record to have been regularly derived from the original owner there attaches to it a right of posses-
*991 EJECTMENT—EMINENT DOMAIN. 991 sion; and this secures to the holder of the title constructive possession and the right to recover against one without title, without showing actual possession. Clason v. 'Baldwin (Sup. Ct.), 213. 2. Where in an action of ejectment the plaintiff failed to make tenants, who were the actual occupants of the premises, parties as required by_ § 1512, Code Civil Procedure, and the complaint did not disclose this omission, the remedy of the defendant is to set up the non-joinder by answer; otherwise the objection is waived. Id. 3. Where in such an action the. plaintiff wishes to recover damages for the withholding of the possession he must lay a foundation for the claim by specifically alleging it in the complaint; if he do not he cannot recover damages. Id. 4. On granting a new trial in ejectment under § 1525 of the Code, the court imposed as a condition the payment of all costs, including an extra allowance granted by the former judgment. Held, that the requirement of the payment of the amount of the extra allowance was proper, although it was not taxed and was directed in the findings of the court “ in addition to the costs.” An extra allowance is an item of costs just as much as the trial or term fee. Wing v. Be La Bionda (City Ct. B'klyn), 404. 5. Where a plaintiff in an ejectment action obtains judgment before the court without a jury upon findings of fact, but on appeal the judgment is reversed by the general term and a new trial ordered, and the plaintiff then appeals from this order to this court, stipulating that in case the order is affirmed judgment absolute should be rendered against him, he waives his right under the statute to have a new.trial, as a matter of course, upon paying all costs and damages awarded ainst him by the judgment. Bobes'is v. Baumgarten (Ct. App.), 482. 6. A grant from the state of lands under water will support an action of ejectment for such lands. The grant is presumptively regular and creates a presumption that the patentee was the owner of the upland. B. G. Blakslee Mfg. Co. v. B. Q. Blakslee’s Sons’ Iron Works (Sup. Ct.), 707. 7. A mere riparian owner, as such, has no estate in the lands under water, but simply a right to apply to the state for and obtain a grant as owner of the upland, and when he sells the upland the right ceases, notwithstanding an attempted reservation thereof in his deed. Id, See Injunction, 1, 3. ELECTION. 1. The writing in the body of the certificate, expressing the result of the count by the inspectors at the close of the polls, and publicly announced by them, and certified under their official certificates to be correct, must prevail over any contrary result that can be obtained from the writing on the ballots attached thereto, and the board of county canvassers is bound by the statement in the body of such certificate. People ex rel. Noyes v. Boa/rd of Canvassers (Ct. App.), 778. 2. The board of canvassers may return a statement to the inspectors for the purpose of attaching the sample ballots and noting thereon the number of each kind voted, so far as that could be done, but not for a recount to vary or contradict the result expressed in the body of the certificate. Id. ELECTION OF REMEDIES. See Sale, 1. EMINENT DOMAIN. 1. Where no erroneous methods of procedure are disclosed by the record and no erroneous principle shown to have been adopted by the commissioners in making their award, the appraisal will be affirmed. Matter of Buffalo & Geneva B. Co. (Sup. Ct.), 343. 2. Under chap. 606, Laws of 1875, and acts amendatory thereof, a railroad corporation was authorized to take lands in the city of New York neces-
*992 992 EMINENT DOMAIN—EVIDENCE. sary to its purposes. By chap. 522, Laws of 1884, the act relative to pub lie parks and parade grounds, the same lands were taken by the city foi these purposes. The railroad company had done nothing in the way oi availing itself of the privileges granted by the act of 1875. Held, that by chap. 522, Laws 1884, the land was devoted to the public use, and that ah' rights of the railroad company were lost. Suburban Rapid Ti'ansit Go. v Mayor et al. (Sup. Ct.), 642. 3. An award for property taken for public parks was made to the estah. of Ann Bolton; as an item therein damages were included for the forcee removal of certain machinery. After'confirmation the same parties whe alleged before the commissioners that the machinery belonged to Ann Bolton, presented claims for a share of the award upon the ground that they were part owners of the machinery, under a lease soon to terminate. Held, that they were guilty of bad faith, and that a court of equity would not assist them. Matter of Dept, of Public Paries (Sup. Ct.), 688. 4. Where a riparian owner has been compensated for land under water taken by a railroad crossing a bay or indentation in front of his property, he is not entitled to have a draw-bridge erected in the road to permit the passage of vessels to his property, unless the bay was capable of and accustomed to be generally navigated. Kerr v. West Shore R. R. Go. (Ct. App.), 913. 5. That a vessel of light draft might at certain stages of the tide get nearer the shore than it could when the crossing was erected does not make it, in a general sense, a navigable part of the river. Id. 6. The restoration of a private road leading to the docks upon a river is not a duty imposed upon a railroad company, and its loss or destruction must be deemed compensated by the award made by the commissioners in the condemnation proceedings. Id. 6. Where the owner of property taken failed for over two months after confirmation of the award to deliver satisfaction pieces of mortgages and a deed of the land, and then received the amount of the award under protest, Held, that she could not thereafter maintain an action for the interest on the award. Derlin v. Mayor (Sup. Ct.), 951. 8. The owner was not entitled to the award until the incumbrances were discharged, and hence the city was not in default, and the owner was not entitled to interest. Id. See Executors, etc., 20; New York City, 1, 2. ESTOPPEL. See Apartment Houses; Banks, 1; Foreclosure, 1; Guardians, Municipal Corporations, 23; Sale, 12. EVIDENCE. 1. Declarations of an attachment debtor or his agent, made after levy, which tend to establish facts authorizing the vendor of the goods in question to rescind the sale, are not admissible against the sherifO in an action to replevin such goods. Wise et al. v. Grant et al. (Sup. Ct.), 39. 2. In an action brought to recover the value of a stock of goods taken from plaintiff by a writ of attachment against the debtor who had previously sold them to plaintiff in payment of his indebtedness to him, defendant was allowed to show by one of the plaintiffs in the attachment suit that the debtor on the evening previous to his sale to plaintiff in this action had made statements to the witness and others that_ he was perfectly solvent, had sufficient on his books to pay all his creditors, was pot short in his accounts as village treasurer, etc. Held, incompetent, as being the mere declarations of an assignor of a chose inaction, forming no part of the res gestee and not competent to prejudice the title of his assignee. Kloennery v. Van Tassell (Ct. App,.), 228. 3. The exception to the rule prohibiting the admission of parol evidence to vary a written contract which allows such evidence where the original contract was verbal and entire and a part only reduced to writing, has reference to an instrument on the face of which there is nothing to show that
*993 EVIDENCE. 993 it was intended to contain the entire contract, and has no reference to one which on its face does indicate such intention and design. Moores v. Glover (City Ct. B’klyn), 396. 4. William and Joseph Duke formed a partnership orally in 1860 and subsequently became possessed of large interests in land, lumber and oil rights in different states. In 1881 they entered into a written agreement to settle the accounts between them. This recited that each held property as an individual which in fact belonged to the firm, and each agreed to deed such property to the other on demand and generally to adjust their affairs. In 1884 they entered into a further agreement, whose object was to vest ■one with all the personal property of the firm and bind him to pay its debts in this state. Joseph Duke died, and in an action for an accounting it was held by a referee that the demands between the parties were settled by these agreements and that parol evidence was inadmissible. Held, error. Neither instrument stated the indebtedness of one partner to the other nor how each would stand after an accounting, and therefore parol evidence was admissible whether an agreement as to this question was made before, at the time of, or after the execution of the written instruments. Applebee et al. v. Duke et al. (Sup. Ct.), 446. 5. A judge of a probate" court of another state appointed by order certain persons commissioners with power to receive, examine and adjust all claims against one J., deceased, and they were therein directed to make a report of their proceedings to the court. Nothing appeared to show that any decree or order was made or any action taken by the court upon their report subsequently filed. Held, that a copy of such a paper, duly attested, was not, within § 952, Code Civ. Pro., “ a copy of a record or other judicial proceeding of a court ” of another state, and was no evidence of J.’s indebtedness in support of an action to set aside a conveyance by him as in fraud of creditors. Johnson v. Johnson et al. (Sup. Ct.). 524. 6. Testimony given by a witness upon re-examination as to personal transactions with a decedent is not objectionable under § 829 of the Code, where he has been questioned by the counsel for the administrator on cross-examination as to the same subjects. Blankman v. McQueen (Sup. Ct.), 601. 7. Testimony of physicians concerning the rendition of services of a claimant as a nurse to their patient is not objectionable under § 834 of the Code. Knowledge of such fact is not information at all entering into ‘ their professional conduct as the physicians of the intestate. Pandjiris v. MeQueen (Sup. Ct.), 602. "8. The joinder of two or more claims against a decedent’s estate in the same reference does not deprive either of its individuality, ór make either of the claimants a party to the proceeding of the other. Id. 9. Testimony of a witness that a person was intoxicated is unobjectionable where his opinion is limited to what he saw. People ex rd. Kelly v. McLean et al. (Sup. Ct.), 628. 10. Where a book or document is produced on notice and the party giving the notice inspects it, it becomes evidence in the case, and it may be used as such, if material. Smith v. Bents (Sup. Ct.)', 695. 11. The fact that accounts relate only to transactions in money do not make books containing such accounts inadmissible where the other proof, customary in such cases, is made. Id 12. An administrator, the son, and also sole creditor of an intestate, brought an action, under chapter 314, Laws of 1858, to set aside a deed made by the intestate to certain of his children, upon the ground that it was without consideration and fraudulent as to creditors. Upon the trial one of the grantees testified in her own behalf as to the transaction with the intestate and his physical condition at the time. Held, that the testimony, although contrary to the letter of § 829, Code Civil Procedure, was within its spirit admissible. That the action, although by an administrator, was in fact for the benefit of creditors and brought to attack the intestate’s acts and the evidence in question supported those acts and hence the wit-K Y. State Rep., Yol. XXXYII. 125
*994 994 EVIDENCE—EXECUTORS AND ADMINISTRATORS. ness could not be. said to have testified “against ” the interest of the intestate’s estate, but did testify against a creditor who derived no title or interest through or under the intestate. Miller v. Davis et al. (Sup. Ct.), 854. See Assignment for Creditors, 5; Bankruptcy, 1, 2; Civil Service, 2; Contract, 10; Justice’s Court, 2; Negligence, 17; Railroad, 1;. State, 1, 2; Tenants in Common, 2; Trial, 1. EXCISE. 1. _ The county clerk of New York is the clerk of the city within the meaning of the excise law of 1857, with whom the bonds taken by the commissioners must be filed, and he is entitled to receive the fee prescribed by § 3804 of the Code upon the filing of each bond.' People ex rel. Meahim. et al. v. Giegerich (Sup. Ct.), 565 . EXECUTION. See Sheriffs, 1, 2. EXECUTORS AND ADMINISTRATORS. 1. The jurisdiction conferred upon a surrogate’s court does not include-power to annul or set aside a release made between parties interested in an estate and the executors on the ground of fraud. In order to obtain such relief resort must be had to a court . possessing general equity powers, and jurisdiction. Sanders v. Soutt'er et al. (Ct. App.), 1. 2. Plaintiff’s complaint alleged the death of defendants’ testator, qualification of the executors, misconduct on their part, that they had allowed a large part of the assets to be used by a firm in which one was a partner, and which failed; that one of the heirs died, leaving his share.to his wife and children; that his executor had been discharged without securing his share in the first mentioned estate, and that he connived at the use of said assets by the firm; that the widow of said heir assigned all her interest in said share to one C., by whom it was conveyed to plaintiff; that the widow was appointed administratrix of her husband, and brought proceedings to compel defendants to account, who produced a general release from-her,, and an approval of -her accounts and the proceeding was dismissed, and', that such settlement and release were collusive and fraudulent. Held,. that "the complaint was sufficient .for the purposes of an action to set. aside the release and settlement between the plaintiff’s assignor and the.executors. Id. 3. A will, in order to admit of double commissions, must clearly and' definitely indicate an intention of the testator to end the executor’s duty at some point of time, and require him thereupon to constitute and set up one or more several trusts to be held and managed as such for the interest of the beneficiary. Matter of McAlpine et al. (Ct. App.), 6. 4. Where the bulk of the estate comes to the executors already invested and in the form of securities which have not been turned into money, no law justifies the allowance of one-half commissions upon their estimated value in advance of their conversion into money or its equivalent. Id. 5. The proper time for such allowance will be when the securities have been turned into money for the purpose of payment, or have been accepted by the legatees as cash without being converted. Id. 6. In a proceeding to compel payment of a legacy, the administrator’s-answer denied the incorporation of petitioner, but did not set forth facts to show the claim to be doubtful, or deny its validity absolutely or upon information and belief. Held, insufficient to oust the surrogate of jurisdiction to order payment. Matter of Congregational Ch. of Cutchogue (Sup. Ct.), 179. 7. Before an executor or administrator can be adjudged guilty of contempt in failing to pay over monev as directed by the surrogate, it must be shown that a demand for payment was made, or his absence or concealment or some other reason why a demand would be impossible or difficult. Matter of Ockershausen (Sup. Ct.), 180.
*995 EXECUTORS AND ADMINISTRATORS. 995 8. Where the debt is not fiduciary in its origin and does not rest in tort, inability to pay the sum demanded is an answer to a motion to punish for contempt in not paying. Id. 9. Where an application was made, under chap. 257, Laws of 1886, amend" ing § 65, part 2, chap. 1, title 2, art. 2, B. S., for leave to mortgage property held in trust, and it appeared that the moneys realized were to be employed for the uses of the general estate of the testator, in payment of taxes to become due,, and an annuity to the widow, alleged to be charged upon the testator’s real estate, Held, that no ground was shown to justify the application. Matter of GlarTce (Sup. Ct.), 428. 10. The “ estate ” to benefit which such an application will be granted, under the above statute, is not the general estate of the testator, but the particular estate which is held by the trustee under the provisions of the trust. Id. 11. Gertrude Burmester renounced her right to administration on the estate of D. O., but was subsequently appointed administratrix after an appointment of the public administrator. Thereafter a will was found and probated, and letters thereunder were granted to plaintiff, who brings this action against defendant’s surety upon Gertrude Burmester’s bond to obtain money in the latter’s hands. Held, that as her petition stated that there was no person prior entitled to be cited, in the absence of any proof of fraud or collusion, her appointment could not be questioned collaterally, and.the order of the surrogate appointing plaintiff was not void, or without jurisdiction, because of the previous appointment of the public administrator, and her sureties were liable so long as her appointment remained unrevoked. Power v. Spademan (Ct. App.), 474. 12. However Gertrude Burmester originally received the money, she held, it as administratrix the moment her letters were issued, and since she became liable to deliver the money to the executor, upon his appointment, and the revocation of her own letters, the decree of the surrogate was within his jurisdiction, and bound her as well as her sureties. Id. 13. The right of creditors or next of kin of a decedent to require the executor or administrator to account is barred by the statute after thé expiration of six years from the time when the accounting might be ordered according to § 2724 of the Code. The surety on the bond of an administrator (at least before being charged) has no greater rights or longer time to compel an accounting than other creditors. Matter of Perry (Sur. Ct.), 576. 14. The plea of the statute of limitations may be interposed at any time befóte the evidence is in, and is not waived by the voluntary filing of an account. Id. 15. Where an executor, pursuant to an order of a surrogate, made under sub. 4, § 2723, Code Civil Procedure, files an intermediate account, which is not contested, the surrogate has no power to appoint, of his own motion, a referee to-examine such account. Matter of DeRussy (Sup. Ct.,, 646. 16. The object of an intermediate account is to show the condition of the estate, and the case is not within § 2546, Code Civil Procedure, providing for a reference to examine an account rendered. Id. 17. Where a trust fund is to be provided by the conversion of one species of property into another, and the time of such conversion is left indefinite, intere t will not be chargeable until the sale has been made and the fund realized, provided, ordinarily, that the delay does not exceed one year from the issue of letters testamentary. Poster v. Wetmore (Sup. Ct.), 667. 18. Where both a specific trust fund and legacies are to be provided for and paid out of the proceeds of land directed to be sold for such purpose, the fact that the sale was postponed beyond one year in order to realize better prices for the benefit of the legatees would not be a legal excuse for delay in setting apart such trust fund. Id. 19. The will directed the deposit of the fund with a certain trust company. The proceeds of the sale were deposited with another trust company pending a suit which was commenced for the construction of the will, partly
*996 996 EXECUTORS AND ADMINISTRÉ—FALSE REPRESENT AIONS. for the benefit of and at the request of the cestui que trust, to procure some disposition of the trust fund by which more interest would be realized from it than would be received if deposited according to the will. After the termination of the suit, which resulted in a refusal of the request, the fund was paid over to the trust company named in the will. Held, that during the pendency of the suit the executor was not chargeable with any greater amount of interest than was actually received upon the fund during its temporary deposit. Id. 20. Where executors, who had no title to real estate but had managed and controlled the same with the consent of the real owners, employed counsel and incurred expenses in establishing, before commissioners, the value of real property of their testatrix about to be taken for public parks, Held, that, as agents of the owners, they were entitled to be repaid such expenditures from the award made to their estate by the commissioners. Matter of Bep’t of Public Parks (Sup. Ct.), 688. 21. Where an executor or administrator pays th assets to the next of kin in advance of the final settlement, and there are costs incurred in an action in which the executor failed to recover, the statute of limitations is no defense to a proceeding to compel him to account, brought by the party in whose favor the costs were awarded. Matter of Mills (Sup. Ct.), 7i6. 22. Where executors continue the business of their testator under an authorization contained in the will, an indebtedness for goods sold in such business is d*gtio them in their representative capacity, and an action may be-maintained therefor by them or their successor. Varnum v. Taulor (Sup. Ct.), 796. 23. Under chap. 406, Laws 1889, where the present value of the real estate set apart for the widow, together with her dower right therein and the $150 of personal property did not amount to $1,000, it was the duty of the executors to set apart for her other personal property sufficient to make up said sum. Baggett v. Baggett (Sup. Ct.), 810. 24. A claim arising upon a judgment recovered against the testator or intestate is not barred by the statute of limitations upon a refusal to refer, so as to deprive the creditor of the right to compel the executor to account. Matter of Lyman (Sup. Ct.), 928. 25. Where a married woman dies, her husband is entitled to preference in administration, and where he dies leaving any of the assets unadministered the same pass to his personal representative, and the latter is entitled to letters of administration on the estate of the wife. Under no construction of the statute can the public administrator become entitled to letters in such a case. Matter of Strutzkober (Sup. Ct.), 939. 26. The mere fact that a decree made upon a prior accounting has been reversed on appeal, the judgment on which had not been entered, is no answer to an application for a final accounting based upon a petition showing that the petitioner is a legatee and that there is a sum of money in the executor’s hands which should be distributed. Matter of Beeves (Sup. Ct.), 959. See Costs, 5; Evidence, 8; Negligence, 21; Panties, 7; Will, 21. FALSE BEPBESENTATIONS. 1. In an action to recover damages sustained by false representations inducing the purchase of stock of a corporation, it is not essential for plaintiff’s recovery that he testify that he relied solely upon the representations. Such reliance may be inferred from all the circumstances of the transaction. Hatch v. Spooner et al. (Sup. Ct.), 151. 2. In such an action fraud must be established by evidence necessarily leading to that conclusion. Id. 3. Where it appears that the defendants did not necessarily know the financial condition of the company; that their familiarity may have been only with the manufacturing branch of the business, and that the representations were necessarily matters of opinion, a verdict in favor of plaintiff cannot be sustained. Id.
*997 FALSE REPRESENTATIONS—FORECLOSURE. 997 4. In an action to rescind a purchase of stock and to recover the sum paid thereon upon the ground that it was induced by false representations, there was evidence that defendant had falsely represented that the company’s business was prosperous, that he had no stock to sell, but would obtain some for plaintiff from another person, and that in fact the stock sold to plaintiff was defendant's stock. Held, that there was evidence from which the jury might find fraud, and that a dismissal of the complaint was error. Miller v. Curtiss (N. Y. Supr. Ct.), 884. See Bill of Particulars, L PERRIES. See Negligence, 2, 3 FIXTURES. Defendants conveyed to their daughter certain premises on which was a portion of a barn, which was not attached to the realty but built upon stones sunk in the ground and which could be removed without injury to the soil. At the time of the conveyance the daughter told defendants that the barn was theirs, and they continued to occupy it, and subsequent grantees of the daughter, including the plaintiff, were notified that the barn belonged to defendants. In an action for removing said barn, Held, that the barn by its nature and mode of construction was capable of being treated as personal property and of being reimpressed with that character by agreement, and that defendants had a right to remove the same. Leonard v. Clough et al. (Sup. Ct.), 814. FL1TBUSH AVENUE. See Municipal Corporations, 6, 25, 26 FORECLOSURE. 1. The plaintiff had a mortgage on certain lo‘s upon which a prior mortgage existed. The latter was foreclosed and plaintiff, although not made a party, was aware of the foreclosure. Thereupon a stipulation was entered into under which all the lots were sold under the first mortgage, although a sale of all was not necessary to satisfy it. Certain of the purchasers objected to the title and nothing has ever been done to compel them to complete their purchases. In an action by plaintiff to foreclose his mortgage, Held, that he was not estopped from so doing by the stipulation, nor bound before foreclosing to attempt to compel said purchasers to take title. Jarvis v. Cha/pin (Sup. Ct.), 198. 2. An order denying motion to open a resale on foreclosure and allow the purchaser on the first sale to complete his purchase is a discretionary one, and when made by the county court is not appealable to the supreme court-. Judson v. O’ Connell et al. (Sup. Ct.), 581. 3. The referee on a sale in foreclosure correctly stated the amount due on an incumbrance upon the premises, but the purchaser ascertaining that the incumbrance apparently was for a greater sum, refused to complete, and the premises were on the same day sold for a less sum, and the purchasers on the resale completed the purchase and received the deed and the report was subsequently confirmed. Held, that it appearing that there were numerous bidders at the resale, and there being no irregularity claimed, a denial of a motion to open the latter sale and allow the first purchaser to complete was properly denied. Id. 4. Where a judgment entered against a mortgagor contains nothing to show that the judgment creditors are partners, extrinsic proof would be necessary to render personal service on one binding upon the others, and hence the plaintiff in an action to foreclose the mortgage has a right, upon a refusal of an appearance for the absent judgment creditors, to serve them by publication, and the expense thereof is properly allowable in his bill of costs. • Chevers v. Damon et al. (Sup. Ct.), 904. 5. Where the plaintiff in foreclosure has received his money and assigned the bond and mortgage under an order of the court directing him to do
*998 998 ' FORECLOSURE—GUARANTY. so if required by a subsequent mortgagee, this constitutes a settlement within the meaning of § 3252 of the Code. Id. See Partnership, 11. FORMER ADJUDICATION. . 1. A judgment founded upon an admission in the pleadings establishes the fact admitted, if necessary to the judgment, as conclusively as though the fact had been found from the evidence. Miller v. Union Switch <B Signal Oo. (Sup. Ct.), 110. 2. Any fact once found and embodied in a judgment must be regarded as final and conclusive between the parties thereto and their privies whenever and wherever the question subsequently arises. Moore et al. v. Mew York El. E. E. Oo. et al. (Ct. App.), 777. ' See Contract, 29. FRAUD. See Bankruptcy; Bills, etc., 13; Damages; Deed- False Representations 2; Sale, 4. FRAUDULENT CONVEYANCE. 1. Where there is a common plan for the commission of a fraud between several persons and in pursuance of such common plan certain of such persons take deeds in severalty, all the parties to the plan are proper parties to an action to set aside such deeds. Watts v. Wilcox et al. (Sup. Ct.), 194. 2. The complaint, in an action tó set aside a conveyance of bills receivable by A. to P. as fraudulent, alleged that A. was insolvent; that he had transferred his property and confessed judgments; that by sales under such judgments all his property had been sold at a sacrifice, and that upon the above transfer by A. to P. the latter had made a profit which he had shared with A. The complaint was dismissed. Meld, error. That assuming that the bills purchased by P. from A. was the purchase of a valid debt, there still remained a question of fraud which should have been submitted to the jury. Cohen et al. v. Plonsky et al. (Sup. Ct.), 738. 3. A merchant in failing circumstances made a bill of sale of all his stock, fixtures and book accounts to his father, taking from him notes running from two months to three years from date, and immediately left the state. Two months thereafter the father made an assignment for the benefit of creditors, including such notes, the property assigned being little more than that covered by the bill of sale. The son testified that his father was to take the goods and pay the debts in the order they came due, and that after the debts were paid, the balance of the notes was to be paid to him. Held, that as the effect of the arrangement was to delay creditors in the collection of their debts it was in fraud of their rights and therefore void. Warner v. lake (Sup. Ct.), 799. See Assignment for Creditors, 1-3; Evidence, 5,12 GUARANTY. 1. One K., son-in-law of defendant’s testator, had been dealing with plaintiffs who did business under the firm name of George E. Beakes. Upon security being demanded, the deceased went with K. to see one of the plaintiffs, and executed a guaranty whereby the became responsible to “George E. Beakes, Esq.,” for all milk sold to K. Meld, that, as there was evidence sufficient, though slight, to show that defendant’s testator at the time he executed the guaranty knew that plaintiffs were doing business under the firm name of George E. Beakes, and intended that the guaranty should be for the benefit of the firm, it became a continuing guaranty, and the supplying of the milk was an abundant consideration to uphold it. Beakes et al. v. DaOanha (Ct. App.), 14. 2. The guaranty required notice to he sent to the guarantor monthly, if ■ payment for the previous month’s goods had not been made. Meld, that notice by mail was such as all the parties contemplated and intended at the time the guaranty was executed. Id.
*999 GUARDIANS—HIGHWAYS. 999 GUARDIANS. 1. Calvin B. Camp was in 1868 appointed general guardian of his four children to receive an award made to them for lands of their deceased mother taken by the city, and received such award, and receipted therefor as guardian, but no inventory was filed. In a proceeding, in 1888, to compel him to account, he claimed a life interest in the fund as tenant by the curtesy. Held, that he was entitled to such interest; that the fact that he signed the receipt given to the city authorities as guardian did not estop him from showing the truth as to his personal interest in the fund. Matter of Camp (Ct. App.), 767. '2. Where land in which one has an estate as tenant by the curtesy is sold, the moneys obtained for the purchase represent the land, and the tenant by the curtesy is in any event entitled to interest thereon for his life. Id. 8. When appellant as guardian received the fund, for the forthcoming of which he gave security, he took it subject to his individual right to the use of the same for his own life. Id. ■4. There is no power in the surrogate to compute the value of the life estate, and deduct the gross sum arrived at from the original fund, and direct the guardian to pay over the balance. Id. •5. Although the guardian may cease to be such upon the ward coming of age, yet so long as the property remains in his possession as guardian, and unaccounted for, he must remain liable to account. Id. 6. The fact that the guardian had lost the fund paid to him, and was insolvent, gave the surrogate no power to decree the payment of the fund to the ward. The surrogate has no general jurisdiction over a guardian as a trustee. Id. HABEAS CORPUS. 1. _ When a traverse is interposed to a return to a writ of habeas corpus the issue is made up and no further pleading is required. Mattes' of Simon (Sup. Ct.), 48. .2. On habeas corpus to inquire into the detention of a child upon conviction as a vagrant, it is error for the court to treat the allegations of the traverse as true and discharge the child without receiving evidence as to the issues raised thereby, although the traverse is not demurred to. Id. HIGHWAYS. 1. The impairment of a highway for public use may be no less such by an obstruction placed in it than by a physical disturbance or injury to the bed of the roadway, and in either case the roadway is “ defective,” within the meaning of chap. 700, Laws 1881. Whitney v. Town of Ticondercqa (Ct. App.), 135. .2. Plaintiff, by his complaint, alleged in substance that the highway commissioner carelessly placed and left a road scraper in the highway, thus causing the injury, which occurred after dark, plaintiff not knowing that it was there, and defendant answered that it belonged to the town in which it was placed, and that defendant’s commissioner used due diligence in placing and leaving it so as to prevent accident, etc. The only evidence to show that the commissioner left it where it was at the time of the injury,_ or caused it to be placed there, or knowing it was at that place permitted it to remain there, was that after it had been removed he pointed out to a witness the place where it was at the time of the injury. Held, that from the_ pleadings and this evidence, the conclusion was warranted that the requisite care was not observed for the safety of public travel in leaving the scraper at that place in the highway. Id. 3. The bringing of an appeal from the order of commissioners laying out a highway does not suspend the running of the statute of limitations contained in § 2125, Code Civ. Pro,, requiring that a writ of cerliora/ri to review_ such determination be brought within four months after it becomes binding on the relator or the person whom he represents. People ex rel. Cook et al. v. Hildreth et al. (Ct. App.), 393.
*1000 1000 HIGHWAYS— INFANTS. i. There is nothing to prevent a relator from taking both an appeal front an order of the commissioners and suing out a certiorari at the same time, and pursuing both remedies concurrently. Id. 5. While plaintiff was driving along a narrow road in the defendant town, which adjoined a ravine,- the horse stumbled on some small rolling stones, and the carriage with its occupan-ts was precipitated over the bank and injured. In an action for such injuries, plaintiff’s evidence tended to show that theroadwas not guarded at that point; that he exercised caution and care in driving, and that the horse was manageable. Defendant’s evidence showed that plaintiff was acquainted with the road, and that the horse was difficult to manage. Held, that the questions of negligence and contributory negligence were properly submitted to the jury. Beid V. Toionof Bipley (Sup. Ut.), 590. 6. Where it appears that a proposed road will run through orchards, house enclosures and a schoolthat it .will benefit very few -persons and very slightly; that the cost will be heavy, and the road it will displace is sufficient for the public use, consent to its opening should not be granted. Matter of Four-Corner Boad (Sup. Ct.), 711. 7. Occupation of a portion of a street by an adjoining owner prior to acceptance of the dedication of such street by the municipal authorities is-not a revocation of the previous dedication, where such owner’s deed recognizes the street itself, and his lands are bounded by it. Bathgaber. v. Village of Tonawanda (Sup. Ct.), 807. See Municipal Corporations, 21-24; Negligence, 1, 23 HUSBAND AND WIFE. See Executors, etc., 25; Insurance (life), 2; Tenancy by Entirety. INDEMNITY. J3ee Attachment, 1 INDIANS. 1. The state of New York had the power and right under the constitution to make treaties with the Indian tribes within the state for the purchase of their lands, to which it held the pre-emption right, and a purchase made of the Seneca tribe August 31, 1826, having been duly made ■ under its authority in pursuance of the compact with Massachusetts of' 1786, in the presence and with the approval of commissioners both of Massachusetts and of the United States, was valid, and the purchasers, on the execution of the deed, followed by the voluntary surrender and abandonment by the Indian occupants of the land granted, acquired a lawful and valid title in fee simple absolute, and-a treaty between the-United States and the Senecas was not necessary to give validity to the transaction. Seneca Nation of Indians v-. Christy (Ct. App.), 64. 2. Such transaction was valid and not in contravention of the provisions-of the Federal constitution or of the Indian intercourse act of 1802, and vested in the purchasers a good title in fee simple absolute to the lands, granted, free from any claim of the Seneca Nation. Id. 3. The right of plaintiff to. sue being given by chap. 150, Laws 1845, the-statute of limitations is a bar to the action. Id.' INFANTS. . 1. The statute authorizing a sale of infants’ real estate cannot be resorted to for the purpose of divesting the infant of the title, or curing a defect therein. Weinstoch v. Lerrison et al. (Sup. Ct.), 561. 2. Where such proceedings are resorted to for the sole purpose of placing' the title in the father of the infant they are absolutely void, although no fraud was intended and the infant has received the fair value of its interest in the property. Id. 3. In an action to avoid a contract made by an infant and to recover payments made thereon, the defendant cannot recover by way of counter-
*1001 INFANTS—INSURANCE (MARINE). 1001 claim damages for breach of the contract on the theory that plaintiff concealed the fact of his infancy or his right to avoid the contract. Radley v. Kenedy (City Ct. B’klyn), 612. See Surrogates. INJUNCTION. 1. In an action to compel the determination of adverse claims to real estate, of which plaintiff is in possession claiming to own the fee, an injunction pendente lite, under §§ 603 and 604 of the Code, will be granted against defendants who have brought ejectment suits against plaintiff affecting such land, restraining all proceedings in any of the suits last named until the final determination of the action. Guthlert v. Ohauvet et al. (Sup. Ct.), 564. 2. Plaintiff applied for an injunction to restrain the erection of a building by defendant on her premises consisting of four stories, with bath rooms and water closets on each floor, on the ground that it was a type of a tenement house and a violation of an agreement that only private houses should be erected on the lots of the parties thereto. Defendant, in oppo- . sition to the motion, showed by the affidavits of herself, the architect and others that the building was intended for a private residence and would be occupied by herself and her family as such. Held, that an injunction was properly denied. Grenell v. Stillwell (Sup. Ct.), 929. 3. In an action^ to determine claims to real estate under §§ 1638, 1639 of the Code, an injunction pendente lite may properly be granted to restrain the prosecution of ejectment suits brought against the plaintiff. OutKbert v. Ohauvet et al. (Sup. Ct.), 941. 4. _ Where several suits have been begun by the same party, there is no inconsistency in staying all of such actions but one and allowing that one to proceed. This is the proper practice where a multiplicity of suits are sought to be prevented. Id. See Partnership, 6, 7; Watercourses. INSOLVENCY. See Banks, 7, 8. INSURANCE (EIRE). See Consignor and Consignee. INSURANCE (LIFE). 1. Where a policy of insurance expressly provides that the premiums shall be paid on a certain day, and in default thereof the policy shall become void, such provision is not affected by statements and representations in a pamphlet issued by the company to the effect that “ 30 days grace would be allowed in payment of premiums,” and such representations will not relieve from a default in payment, although the delay was induced thereby. Fowler v. Metropolitan Life Ins. Co. (Sup. Ct.), 622. 2. Where a wife, who is the beneficiary in a policy on her husband’s life, dies before him, and he does not surrender the policy, it will be presumed that he intended that her personal representatives should take and the policy is payable to them and not to his legal representatives. Waldheim, v. John Hancock Ins. Oo. (City Ct. N. Y.), 685. INSURANCE (MARINE). 1. A clause in a cargo policy providing that freight and advances insured under this policy are subject to the terms and conditions of freight policy attached hereto, does not imply that insurance of advances are not subject to the terms of the cargo policy. Phenix Ins. Go. v. Parsons (N. Y. Supr. Ct.), 874. 2. On payment of a marine policy to defendant’s firm, to cover advances made for the owners of a vessel, said firm assigned to the company its K Y. State Rep., Yol. XXXYIT. 126
*1002 1002 INSURANCE (marine)—JUDGMENT. claim against the owners to the extent of $1,500, the amount of the insurance, which in fact comprised its commissions on charter and expenses of insurance. In an action to recover the sum paid after failure to recover of the owners, Held, that there was an implied warranty that the claims assigned amounted to $1,500, and that defendant could not object to said commissions and expenses being included in the recovery against him. Id. 3. In such action the costs of the action against the owners may be recovered, although defendant was not notified of the action, but counsel fees are not recoverable. Id. See Pleading, 11. INTEREST. See Eminent Domain, 7, 8; Executors, etc., 17-19; Parties, 5; Railroad, 22. INTERPLEADER. Plaintiff was employed by defendant Benedict to obtain some property of an estate in which he was interested, and was successful, the executor, _ on his accounting, being directed to pay a certain sum to Benedict^ who had drawn a draft on the executor in favor of a bank, which draft had been accepted by the executor but not paid when this action was brought by plaintiff, who claimed a lien on the fund for his services. Held, that an order interpleading the bankers in place of the executor was properly granted. Jarvis v. Benedict et al. (Sup. Ct.), JOINT DEBTORS. See Pleading, 14. JOINT ENTERPRISE. If two or more persons own and are dealing in merchandise on joint account, although the name of only ohe of their number openly appears, and all sales and business transactions are conducted solely by him, the claims of his individual creditors will attach only to so much of said merchandise or its proceeds as constitutes his share of the venture or joint enterprise. Drexel et al. v. Pease et al. (Sup. Ct.), 166. JUDGMENT. 1. The court should not, where a complaint is dismissed solely because of failure of proof, give absolute judgment in favor of the defendant. Terry v. Horne et al. (Sup. Ct.), 58. 2. In an action brought upon a Pennsylvania judgment entered upon a judgment note which was signed with a cross, where the defendant denies the execution of the note, the witness to the signature is dead and there is no direct evidence of its execution, a verdict in favor of the defendant will not be disturbed. Hall v. Littleton (Sup. Ct.), 174. 3. Section 1022, Code .Civ. Pro., provides that a referee in his report “must direct the judgment to be entered thereupon.” This requirement is satisfied if, from the whole or a part of the report, the particular form and the terms of the judgment to which the successful party is entitled can be ascertained. Hinds et al. v. Kellogg (N. Y. O. P.), 856. 4. Where the conclusions of law in a referee’s report clearly and unmistakably settle the form and amount of the judgment to be entered, this is a sufficient compliance with § 1022 of the Code, requiring a direction of the judgment to be entered. Devlin v. Mayor et al. (N. Y. C. P.), 508. 5. Where an action is brought in equity to set aside a judgment duly obtained against the plaintiff in a court of law after a trial, in which he had an opportunity to present any defense he might have, such plaintiff must show with reasonable certainty that, without any fault of his own, by fraud, accident or the wrongful act of the other party, he was deprived of such defense; that diligence upon his part would not have made him acquainted with the facts out of which such defense arose, and that for this t
*1003 JUDGMENT—LANDLORD AND TENANT. 1003 reason he did not set up such facts and defense in the action at law. Merrifield v. Bell (Sup. Ct.), 743. See Assignment nor Creditors 2, 8; Deed; Executors, etc., 24; Parties, 1. JURISDICTION. 1. The refusal of the court to entertain jurisdiction of an action between non-residents for a tort committed out of the state does not depend on the motion of the parties necessarily, but the court may refuse to do so upon its own motion. Winchester v. Browne (Sup. Ct.), 542. 2. Where the plaintiff was a resident at the time of the commencement of the action, and it has been litigated on the assumption that the court would entertain jurisdiction, and has reached a point where a speedy trial can be had, a refusal to dismiss is a proper exercise of discretion. Id. JURY. A juror stated that he had formed, from reading the newspapers, an opinion in regard to the guilt or innocence of the prisoner and that it would require strong evidence to remove it. He finally said that he could decide upon the testimony he heard in court uninfluenced by any thing else whatever. A challenge was overruled. Held, proper. People v. Wah Lee Mon (Sup. Ct.), 283. See Railroad, 14; Trust, 1. JUSTICES’ COURT. 1. In an action where a question arose as to the jurisdiction of a justice, because, as alleged, the accounts of both parties exceeded $400, it appeared that defendant had been plaintiffs’ clerk and that upon monies advanced him by plaintiffs he had repaid part in cash and had charged other sums against himself in their books. Held, that it was a question of fact for the justice to find whether these sums were payments upon the defendant’s services; that if he so found and the accounts thus reduced were within the statutory limit, the justice had jurisdiction. Shaw et al. v. Roberts (Sup. Ct.), 862. 2. The defendant alleged in his answer that he was to have a share in the profits of the business. He gave no evidence to show profits. The plaintiffs gave evidence that there were no profits. This evidence was objected to as incompetent. Held, that it was for the defendant to show that there were profits and having failed to do so he was not injured, although the plaintiffs’ evidence was improper. Id. See Sale, 13. LAND GRANTS. See Ejectment, 6, 7. " LANDLORD AND TENANT. 1. Plaintiff’s assignor purchased certain premises at foreclosure sale, but one L., a subsequent lienor, having threatened to take proceedings to set the sale aside,_ it was agreed that in consideration of the abandonment of such proceedings the premises in question should be conveyed to him. He then entered into possession thereof, and leased the same to defendant, but no deed was ever executed. In an action to recover rent of such premises, Held, that said premises were owned by L., and that defendant was indebted to said L., and to no other person, for rent, and that judgment in favor of defendant was properly directed. Richardson v. Fogarty (Sup. Ct.), 582. 2. Where a portion of a building is leased, the landlord retaining control of the roof, and upon the tenant’s threatening to leave on account of its condition the landlord, to induce him to remain, agrees to put the roof in proper condition, Held, that the landlord is liable for damages sustained
*1004 1004 LANDLORD AND TENANT—LEASE. by the tenant by reason of a failure to keep such agreement. Bauth v. Davenport (Sup. Ct.), 664. See Negligence, 9; Nuisance, 4-8. LEASE. 1. Eent due at the time of an eviction is recoverable by the lessor or his assignee. O’Brien v. Smith (Súp. Ct.), 41. 2. Where a lessee enters under the demise he is liable on his covenant for the rent reserved, although he did not receive full possession of the premises demised, and cannot plead the lessor’s wrongful act or neglect as a defense. His remedy in such case is by counterclaim for damage in being deprived of a portion of the premises, or by independent action. Id. 3. A lease, although for five years, does not require a seal, as it is merely a chattel interest and not a freehold estate. Id. 4. Where the assignment of a claim for rent under a lease is in writing and under seal and is valid as against the lessor, the lessee has no legal interest to inquire further. Id. 5. A recovery by lessors in a former action for instalments of rent under a ten-year lease, although appealed from, is conclusive upon the question of the divisibility of the contract, and the pendency of such action is no bar to an action brought by the assignee of the lessors for subsequent instalments. Smith v. Lehigh Zina & Iron Go. (Sup. Ct.), 187. 6. The defendant leased to plaintiff certain wharfage rights upon a pier and one-half of a bulkhead with a privilege of one renewal, Which latter the plaintiff obtained. The lease and the renewal both contained a clause by which the defendants agreed to make such repairs to the property as the board of dock commissioners should consider necessary to put it in condition for service; and further, both parties agreed that no claim that the property was not in a suitable condition when the term began should be made; the plaintiff further agreed to keep the property in repair and that if, on notice from the dock commissioners, he did not do so, defendants might at his expense. It was admitted by stipulation that the premises were not in proper condition when the term begun and that plaintiff had been at large expense to repair them. The court also found that the board of dock commissioners required certain repairs at the beginning of the second term. In an action for the expense of repairs, Held, that the matter of repairs was made dependent upon the action of the dock commissioners and that as it was not shown that they had required repairs at the beginning of the first term, the plaintiff, in view of his covenant to repair and that no claim should be made that the property was not in suitable condition when rented, could not recover; that plaintiff should have refused to enter. Phelps v. Mayor (Sup. Ct.), 203. 7. A contract under seal may be abrogated by an executed parol agreement. Tollman v. Barrie (N. Y. C. P.), 271. 8. In an action for rent accruing under a lease, the answer alleged the making of an agreement by which, if defendant should before a certain day surrender the premises and indemnify plaintiff against commissions for reletting the premises for the remainder of the term, plaintiff agreed to accept the same in full satisfaction and discharge of said letting, and that defendant performed said agreement on his part. Held, that it was error to exclude evidence tendered in support of such plea; that even if such agreement did not abrogate the lease, still upon proof of the facts alleged the jury could have found that defendant was exonerated from liability by a surrender by operation of law. Id. 9. Where leased premises are damaged by fire so as to be unfit for occupancy, the tenant should have a reasonable time to remove. Zimmer v. Black et al. (Sup. Ct.), 312. 10. In an action for rent of leased premises the defense was that on the 25th of July the premises were so damaged by fire as to be unfit for occupation, and that defendants removed therefrom with due diligence on the 2d of August. It appeared that defendants’ goods were insured, and that it was important that they should not move until they did on account of such
*1005 LEASE—MANDAMUS. 1005 insurance. Held, that the case should have been submitted to the jury on the questions as to the condition of the premises and defendants’ diligence in removing, and that a direction of a verdict for plaintiff was error. Id. 11. A lease to defendant of certain rooms provided that she should have the privilege of giving them up on the first of February on payment of a certain amount. Held, that she could not avail herself of the privilege after that date. Reich v. MeOrea (Sup. Ct.), 620. 12. Where a tenant removes from premises rented by her, the landlord is under no obligation to allow another tenant of his to occupy the premises as an extinguishment of the liability to him under the lease. Id. 13. The lease also provided for the board of defendant in the hotel of which the rooms formed a part. Held, that in the absence of proof that a profit would have accrued to plaintiff from continuing to supply such board for the unexpired period of the lease, a recovery could not be had for defendant’s failure to receive and pay for such board. Id. I See Carriers, 4; Contract, 2. LEGACY. See Executors, etc., 6. LEGATEES, ETC. 1. A claim of a physician for professional services rendered to a testatrix is one arising upon contract within the meaning of § 1843 of the Code. Adams v. Hilliard et al (Sup. Ct.), 314. 2. Affidavits showing a claim against a testatrix arising upon contract; that she left no personal property; that her heirs and next of kin reside without the state, giving the actual residences of each, and stating the source of information to be affidavits and the judgment roll on file in the clerk’s office in an action of partition of testatrix’ real estate, and from correspondence with such heirs, and that the sheriff, after due diligence, has not been able to make service within the state, together with the certificate of the sheriff to that effect, are sufficient to sustain an action against such non-resident heirs. Id. LIMITATION. See Executors, etc., 13, 14, 24; Guardians, 5; Indians, 3; Manufacturing Companies, 2; Taxes, 8; Vendor and Purchaser, 3 LUNATICS. After the return of the precept for a jury, issued by a commissioner in a lunacy_ proceeding, an order was served upon, him staying the proceedings until the hearing of a motion to set aside such proceedings. No adjournment was taken. The motion having been denied, the court made an order directing the commissioner to issue a precept requiring the sheriff to notify the same jurors to attend at a time and place to be named therein. Held, that, under the peculiar circumstances of the case, the order was proper. Matter of Dunn, (Sup. Ct.), 802. MANDAMUS. 1. Relator having bought in the property and franchises of another underground railway company at a foreclosure sale, took no proceedings toward actual construction of the road for twenty years after its incorporation, and then asked for an alternative writ of mandamus to compel the commissioner of public works to grant a permit to use the streets for the construction of its road; return was made that an action had been begun in the supreme court by the People to dissolve the relator and vacate its charter; and at the close of the trial of the issues a motion was made for a peremptory writ. In the action to annul the charter, the People asking for an injunction to stay this proceeding, it was refused upon stipulation of relator that it would not apply to open the streets under the permit which might be obtained through the mandamus until the People’s action had been determined. Held, that under the circumstances the granting of
*1006 1006 MANDAMUS—MASTER AND SERVANT. the peremptory writ was discretionary. People ex rel. New Tork Underground B. Co. v. Newton (Gt. App.), 391. 2. A mandamus will not he granted to compel the action of a public officer , in case of the happening of some future event. So held, on application for mandamus to compel the register of deeds to receive satisfactions of mortgages and to discharge the same, where the mortgages had not yet been paid and the petitioner was. not the holder of any satisfaction, piece. People ex rel. Soples v. Fitzgerald (Sup. Ct.), 540. See Civil Service, 1. MANUFACTURING COMPANIES. 1, In an action to enforce the liability of stockholders of a manufacturing company for its debts on the ground of a failure to file a certificate of payment of increased stock issued by the company, where it appears that certificates of payment of the original stock- and an increase thereof to a certain amount had been duly filed, the burden of proof is upon the plaintiff to show that defendants’ stock was increased stock of a subsequent issue. Griffith v. Green et al (Sup. Ct.), 705. 2. A suit against the company on notes given by it is not-a suit for the collection of the debts for which the notes were given, within the meaning of the statute requiring such actions to be brought within one year. Id. MARRIAGE. See Dower. MASTER AND SERVANT. 1. Where a servant employed by the year is discharged before the termination of the term on the ground that the master had nothing further for him to do, with a statement that if his services were required work would be gladly given him, and he is paid to the first of the following month, it is not necessary for him to re-tender his services in the following month, in order to hold the master liable for breach of the contract. Bacon v. Few Rome S. M. Co. (Sup. Ct.), 56. 2. Semble, that the law of Massachusetts in relation to the continuation of a contract of employment by the year does not differ from that of this state. Id. 3. Plaintiff’s intestate was night watchman on defendants’ enclosed pier, and finding one of the doors open undertook to close it, when a guard rail-fell upon him, knocking him into the water, and he subsequently died of pneumonia caused thereby. Defendants’ foreman had been notified of the dangerous condition of the guard rail two days before. Reid, that intestate, in closing the door, was acting within the limits of his duty, and that in the absence of contributory negligence on his part defendants were liable. Upton v. Bartlett et al. (Sup. Ct.), 193. 4. In an action for wrongful discharge, the defendant offered to prove that-by the custom of that trade it was the duty of a traveling salesman “ to-get up his own samples.” This was excluded as immaterial. . Reid, error. Brown v. Baldwin & Gleason Co. (N. Y. C. P.), 363. 5. In such an action, under a general denial, the defendant may prove that the plaintiff was discharged for drunkenness. Id. 6. The agreement of the parties was that plaintiff should receive twenty-five dollars a week, his “ traveling expenses to be borne ” by the defendant, Reid, that a recovery for “ board, car fare and lunches” incurred after he-had left defendants’ service was improper. Id. 7. A corporation had arranged, in order to store lumber, a row of stalls, which abutted upon a platform eight feet high. The bottom of the stalls, was six feet below the platform. The stalls were constructed with uprights two by six resting on the ground, and nailed at the tops, distant from each other three feet. The stalls were three feet wide, twelve feet high, and quite deep. Plaintiff, a workman, was ordered to go down into-the bottom of one stall, which was nearly empty, and hand up some him-
*1007 MASTER AND SERVANT—MECHANICS’ LIEN. 1007 ber. At this moment the stall was crushed in by the weight in the adjoining stalls, which were full of lumber, and plaintiff was injured. The plaintiff claimed that the stalls when empty, and not supported by the latent pressure of the stalls on either side, were insufficient, and were improperly constructed. Held, that the question was for the jury. Higdon v. Allegany Lumber Go. (Sup. Ct.), 514. 8. No active duty was imposed upon the plaintiff to inspect the piles of lumber or their proper construction in reference to safety; and he had a right to assume that they were properly built and safely secured. Id. 9. Plaintiff was an iron chipper, and was employed by defendant. He was ordered to chip an iron casting, which was round and weighed 1250 pounds, and which laid on a truck. In doing so, he moved the casting by means of a stick so as to make one end higher than the other, and then let it roll back, when it struck a wedge which had before held it in position. The wedge was cross grained and broke, letting the casting fall upon plaintiff. It appeared that the wedge would have held from three to five tons if the casting had not been moved. Held, that defendant was not liable, and the complaint should have been dismissed. McGoldrick v. Metcalf {City Ct. B’klyn), 611. 10. In an action for wrongful discharge from employment, where the defendant has testified as to the terms of the contract of employment, it is-proper on cross-examination to call his attention to allegations in his verified answer in conflict therewith, and it is no ground of objection thereto that the answer was verified by advice of counsel. Horre v. Máhony (Sup. Ct.), 653. 11. In such an action, where the defendant attempts to show that plaintiff was incompetent and consequently he was justified in discharging him, the plaintiff has a right to show by people who knew what his qualifications were that he was capable of performing such work satisfactorily.. Id. See Contract, 7; Costs, 3; Negligence, 27, 28; Railroad, 3-5 MECHANICS' LIEN. 1. Where a mechanics’ lien is claimed under chap. 842, Laws of 1885,. against the owner of land it must appear affirmatively that the services, etc., were performed at the request of said owner or his agent, or that the owner, or some person contracting with him for the work, or a person acting under or at the request of the person so contracting with the owner, consented to the perfoi manee of such services or the furnishing of such materials; otherwise the owner cannot be charged. Hossi v. Mackellar et al. (N. Y. C. P.), 503. 2. Plaintiff contracted to do the glazing in eight houses, which work was. performed and a mechanic’s lien filed. Prior to the filing of the lien all the houses had been sold except three, on one of which a mortgage had' been given. On foreclosure of such mortgage plaintiff was made a party defendant, but withdrew his answer on its being stipulated that the foreclosure should not affect his lien. The property sold for less than the mortgage, and the assignee of the mortgage also took the other two houses. In an action to foreclose the lien, plaintiff recovered for the amount of glazing done on these three houses. Held, that the judgment was right. Belfer v. Ludlow et al. (Sup. Ct.), 704. 3. Defendant conveyed certain premises to one S., who was to erect buildings thereon for defendant, and who assumed a mortgage thereon and also gave one for balance of the purchase price. Plaintiff contracted with S. to do work on the buildings, and defendant agreed to see that he was paid. After plaintiff’s work was done S. conveyed the property through one H. to defendant in consideration of the surrender of a note and the giving up of the right to foreclose the mortgage. Held, that the transactions were valid and did not constitute a fraud upon the rights of plaintiff. Altieri v. Lyon (N. Y. Supr. Ct.), 881. 4. The phrase “ judgment for such sum or sums as may appear to be due to him ” in § 15 of the act of 1885, refer to the sum or sums that may appear to be due the plaintiff from the person with whom he made the con-
*1008 1008 mechanics’ lien—MUNICIPAL corporations. tract to perform labor or furnish materials, and does not authorize a money judgment against other persons in these proceedings. Id. See Mortgage. MONEY LOANED. In an action to recover money borrowed of plaintiff’s testatrix, the evidence as to a loan was conflicting, but it appeared that property conveyed to defendant’s husband and brother was paid for with checks of a firm of which testatrix’ husband was a member, given in return for money bor- . rowed of her; that defendant, who was a daughter of testatrix, permitted her husband to act for her in respect to the purchase of the property, and had acknowledged that she made the loan and said she would repay the money. Held, that the evidence was sufficient to establish her liability, although her husband testified that the brother borrowed the money and gave him half. Barnes et al. v. McDonald (Sup. Ct.), 899 MORTGAGE. Plaintiffs made a builder’s loan, secured" by mortgage, and had ad" vanced fourteen instalments, when defendant filed a mechanic’s lien. Whereupon an agreement was made that plaintiffs were to accept orders in défendant’s favor, payable when the mortgagors were entitled to the fifteenth and sixteenth instalments, and the lien was to be postponed until such instalments were paid. Subsequently it was agreed that further advances were to be made by plaintiffs for specified work, and that defendant’s lien should be paid out of the latter advances, and the lien be subordinated to the entire amount of the mortgage. The entire amount was advanced, but the mortgagors never carried the building to the point which entitled them to the fifteenth and sixteenth instalments. Held, that in the foreclosure of plaintiffs’ mortgage defendant could not set up its lien, and had no defense. Lipman et al. v. Jackson Architectural Iron Works -(Ct. App.), 821. See Assignment eor Creditors, 4; Foreclosure; Mandamus, 2, MUNICIPAL CORPORATIONS. 1. The relator, a park policeman, after examination by an expert in mental diseases, was reported as suffering from organic and progressive disease of the brain of an incurable character, liable to be associated at any time with mental disturbance and as likely to indulge in outbursts of insane temper, especially if he should drink strong liquors. Held, a proper case for removal, and in such a case it was not necessary to prefer formal written charges or to institute an inquiry in the nature of a trial thereon. People ex rel Oline v. Robb et al. (Ct. App.), 8. 2. Street railroads are not, as a matter of course, benefited by repavement of the streets through which they are laid, and if they are not so in fact, they cannot be assessed with the expense of such improvements.' People ex rel. Davidson et al. v. Gilon et al. (Ct. App.), 17. '3. Under the provisions of the charter of the city of New York, a street railroad is not liable to be assessed for repaving, even though it was benefited thereby. Id. 4. The question as to whether the street railroad was benefited by such repavement is one of fact to be determined by the assessors, and cannot be reviewed by the general term in the absence of any evidence on the subject. ' Id. 5. Relator was removed for intoxication. The officers who saw him at the time testified that he was intoxicated, and the police surgeon stated that he examined him and that he was under the influence of liquor to the extent of requiring some few hours sleep to work it off. Relator denied that he was intoxicated and said that he drank only a preparation for malaria received from a physician. The physician testified that the preparation, properly taken, would not produce that result, but too much of it would make him a little stupid. Three witnesses testified that they did not consider relator intoxicated. Held, that there was no such preponder-
*1009 MUNICIPAL CORPORATIONS. 1009 anee of evidence in favor of relator as to call for a reversal of the commissioners’ decision. People ex rel. Rafferty v. French et al. (Sup. Ct.), 55. ‘6. Flatbush avenue must be deemed a city street throughout its whole extent, and may be appropriated as such to any use dictated by the necesities of the people, and hence sewers may be laid in said avenue under Laws 1889, chap. 161, without further compensation to owners of land which was taken for the avenue. Van Brunt et al. v. Town of Flatbush et al. (Sup. Ct.), 175. 7. In a proceeding to appraise damages caused by a change of grade of a street, the answer denied that there had been any change of grade, but an establishment of one. The order for appointment of commissioners, however, was made on consent. Held, that this constituted a waiver of the objection, and the question raised by the answer could not be considered by the court on appeal from the order confirming an award of damages. Matter of Myrick (Sup. Ct.), 834. ■8. The section of the Buffalo charter which prohibits the city from entering into a contract for any work or improvement at a price exceeding $500 “ until the assessment therefor has been confirmed,” does not apply to the board of park commissioners, so as to prevent them from contracting for the paving of an approach within the.park system without a previous confirmation of the assessment. This section applies exclusively to the regular municipal government, and to the contracts made by it through its common council. Boric v. City of Buffalo et al. (Ct. App.), 333. '9. The map of the village showing the street in question was made in 1836. . The deeds of the adjoining premises owned by appellants have since Í863, at least, bounded the premises by such street Held, that under these circumstances the land owners were only entitled to nominal damages on the opening of the street. Matter of Trustees of Olean (Sup. Ct.), 350. 10. Redemption from a sale for assessments under chapter 336, Laws 1874, may be made in improvement certificates issued under that act to the amount of the assessment and interest. People ex rel. Oakley v. Bleckwenn (Ct. App.), 386. 11. Under the revised charter of Brooklyn, construed in connection with chap. 348, Laws 1887, a policeman who has served one year is advanced to the second grade, and after two years service to the first grade, by virtue of the act itself, and by accepting the salary of a lower grade he waives no rights, the law being mandatory, and the increase not being dependent on the act of the commissioner. Meehan v. City of Brooklyn (City Ct. B’klyn), 398. 13. A city railroad had laid through a street a track five feet in width and had a right to lay another similar track. The common council of the city directed the street paved to a width of forty-two feet. The city engineer changed the contract as ordered and let it to pave thirty-seven feet, subtracting the width of the track. Held, that he had no such power, and that an assessment based on such a letting must be set aside. Voght et al. v. City of Buffalo (Sup. Ct.), 471. 13. The assessors of the city, in estimating the assessment, determined that the side of the street upon which the track was laid was less valuable than the other side upon which the company had a right to lay it. Held, error. Id. 14. A city may, in making such an improvement, pave the space occupied by the tracto of a railroad company and recover the expense from it. Idm 15. By chap 335, Laws 1886, the city of Brooklyn was authorized to acquire the rights of a water company in New Lots by purchase, “when” a price was agreed upon, and if an agreement could not be made, then such rights could be acquired by the right of eminent domain within two years, to be held subject to certain mortgages. No proceedings were taken within the said two years, but thereafter an agreement for the purchase of such rights was entered into. Plaintiff brought action against the municipal authorities to restrain them from purchasing such property, allegX. Y. State Rep., Yol. XXXYII. 127
*1010 1010 MUNICIPAL CORPORATIONS. ■ ing that it was heyond their authority and wholly illegal and void. Held, that the authority to purchase expired with the limitation of two years,, during which the city had the right to take title by eminent domain. Ziegler v. Chapin et al. (Ct. App.), 490. 16. The charter pf the city of Buffalo, chap. 519, Laws of 1870, vests its legislative power in the common council; it constitutes the assessors a board of valuation and assessment, and also provides that they shall assess the whole amount ordered to be assessed upon the parcels of lands benefited by an improvement, in proportion to the benefit. The common council by resolution directed the assessors to make an assessment for a market-place and did not by such resolution determine the particular property which would be benefited nor in what proportion. Held, that the power thus to determine was in the common council and it could not ' delegate it to the assessors. Savage et al. v. City of Buffalo (Sup. Ct.),. 518. 17. This oourt will not interfere with the decision of the commissioners removing a policeman on .a charge of insubordination, where the defense was insanity, unless such a condition of mind as would render him irresponsible for his acts at the time specified is so conclusively shown that the court would reverse.the verdict of a jury to the contrary. People ex rel. McGowan v. MacLean et al. (Sup. Ct.), 539. 18. ' Section 920 of the consolidation act does not require that there shall be-separate assessments for the improvements mentioned until the whole amount has been laid, but only gives the owner of property twenty years in which to pay such assessment in yearly instalments. People ex rel. Martin v. Gilon et al. (Sup. Ct.). 645. 19. A certiorari to review an assessment brought before the board of revision has acted thereon is premature. Id. 20. An assessment cannot be legally imposed for the grading and regulating of an alleged street, or portion of a street, which has never been laid out, opened or made a public highway, street or road. Copcutt v. City of Yonkers et al. (Sup. Ct.), 709. 21. An iron awning 110 feet long, supported by iron pillars placed along the inside of the curbstone, the roof being ten feet above the sidewalk, is-essentially a permanent structure, and is an unlawful encroachment upon the highway unless justified by competent authority. Hoey v. Gilroy et. al. (N. Y. C. P.), 754. 22. The common council of the city of New York has no power under the-consolidation act to authorize the erection or maintenance of such a. structure. Id. 23. The city is not estopped from claiming the structure to be an unlawful encroachment by the giving of a stipulation in a former action that if it was modified to conform to the city ordinance it might be maintained as. modified, which modification was made at great expense. Id. '24. The fact that the owner of the structure is a common carrier, and that' the awning is used to protect the goods carrried by it, gives such owner-no special privilege to maintain the same. Id. 25. Chapter 161, Laws 1889, entitled “An act in relation to local improvements in the town of Blatbush, and the acquisition of the rights of a plank road company in said town,” clearly embraces the building and improvement of the highways and the construction of sewers. Van Brunt et al. v. Town of Hlatbush et al. (Ct. App.), 824. 26. But a discharging sewer cannot be constructed in Flatbush avenue, in the town of Flatlands, without the consent of the owners of the soil, or in absence of such consent without the acquisition of the title of such owners in the mode provided in the act. Such sewer was in no way for the benefit of the owners or the community in which they lived. Id. 27. The new charter of Albany, chap. 298, Laws 1883, declares that all assessments not in litigation on January 15, 1883, shall be valid. An assessment for paving in said city was made and confirmed and not attacked before said act was passed. Thereafter proceedings under the new charter
*1011 MUNICIPAL CORPORATIONS—NEGLIGENCE. 1011 ' were begun before the county judge to vacate it for irregularities and also because, as alleged, the work was fraudulently let to the highest bidder. Held, assuming that the county judge had jurisdiction, that the legislature had power to legalize the assessment, the only limitation to its power in this direction being that it cannot deprive the individual of his right to be heard by the proper authority upon the apportionment of an .assessment. That inasmuch as the old charter of said city did not require that the work should be let to the lowest bidder, a letting to the highest bidder without proof that the sum levied was thereby unlawfully increased did not justify a finding that there resulted therefrom a fraudulent addition to the cost. Matter of D. & H. O. Co. (Sup. Ct.). 839. ■88. Relator was charged with lying down while on duty. The testimony of the roundsman was positive as to the truth of the charge, while relator testified that he sat down to unlace his shoe, but said that he raised on his hand as the roundsman approached. Held, that the finding against him was not against the weight of evidence and should not be disturbed. People ex rel. Butts v. MacLean et al. (Sup. Ct.), 944. NAMES See Religious Corporations, 4, 5. NATIONAL GUARD. 1. A .writ of certiorari will not lie to review an order of the governor as commander in chief disbanding a company of the national guard. People ex rel. Leo et al. v. Hill et al. (Sup. Ct.), 112. 2. The provision of the military code authorizing the commander in chief to disband a'company is not unconstitutional. Id. 3. The effect of such disbandment is to relieve an officer thereof of his command, and not his removal from office. Id. 4. The provisions of the United States revised statutes in reference to the government of the militia apply to the state militia only when they are called into the service of the general government. Id. 5. An order by the commander in chief, disbanding a company of the National Guard and rendering the commissioned officers supernumerary, is not reviewable by certiorari. The officer whose command is taken away is still an officer and must seek his redress in an appeal to his superior officer. People ex rel. Leo et al. v. Hill et al. (Ct. App.), 792. 6. Section 5 of art 11 of the state constitution, which declares that "no commissioned officer (in the militia) shall be removed from office unless by the senate on the recommendation of the Governor, stating the grounds on which such removal is recommended, or by the decision of a court martial pursuant to law,” is not violated by such disbanding of a company, as an officer so long as he retains his commission retains his office. Id. 7. Section 7, chap. 299, Laws 1883, authorizing such disbanding, etc., is not unconstitutional as being in conflict with the Federal Constitution or statutes, as that power is implied in the power given by § 1630 of the U. S. Statutes. Id. NEGLIGENCE. 1. On the trial of an action for injuries occurring through a defective approach to a bridge, plaintiff was allowed to prove that subsequent to the accident guards were erected, and by the commissioner that he erected them because he deemed that they were needed. Held, error. Getty v. Town of Hamlin, et al. (Ct. App.), 141. 2. In an action for injuries to a passenger on a ferry boat alleged to have been caused by a negligent collision of the boat with the dock, the fact that plaintiff did not keep his seat until the boat was safely moored to the dock cannot be regarded as such evidence of negligence on his part as to take the case from the jury. Snellinq v. Brooklyn & H. T. Ferry Co. (Sup. Ct.), 184. 3. Where it appears that there was no exceptional weather or tide so as to make landing difficult or dangerous, evidence of witnesses who had trav-
*1012 1012 • NEGLIGENCE. eled by the ferry for years that the boat came to the dock with a violence not previously seen by them is sufficient to take the question of defendant’s, negligence to the jury. Id. 4. Plaintiff’s intestate crossed defendant’s track ahd returned to warn back two boys who were following him. He then started to cross again, but. his foot became entangled with the track and he was run over and killed. When he started to recross,the train was approaching rapidly in full view. The court was requested to charge that if he “ attempted to cross with the train approaching in plain sight and at or nearer than the fourth telegraph pole below the crossing, he was guilty of contributory negligence and cannot recover.” And answered : “ I leave that to the jury; it is a. question of fact.” Held, error; that on a conceded or supposed state of' facts the question of contributory negligence is one for the court, and it is-error to submit it to the jury. McPhillips v. N. 7., H. H. & H. R. R. Co. (N. Y. O. P.), 263. 5. The floor of defendant’s store was undergoing repairs, the business continuing during the time of such work. A piece of the flooring about four feet from the door was taken up, and a carpenter stationed there was-instructed to warn persons who entered. Plaintiff entered the store, and said she was snow blind. The carpenter told her in an ordinary tone of voice to be careful, as they were laying a floor. She then went on, and. stepped into the hole, and was injured. In an action for damages she-testified that she did not hear the warning, as she had a veil over her head, and ears. Held, that the questions of negligence were ones for the jury, and that a dismissal of the complaint was error. Jones v. Charles H. Sagar Co. et al. (Sup. Ct.), 346. 6. The plaintiff was an employe of a contractor who was finishing an elevated station for defendant. Trains were constantly running and work had to be done at intervals. An engineer of defendant had brought in a train which was taken back by another engine. A person whom plaintiff was bound to obey ordered him to go under the platform. The engineer in question was about to back down and plaintiff knew this. The engineer could have seen plaintiff by looking out of the cab. He backed down, without warning and plaintiff was caught between the tender and platform. Held, that a recovery was proper. Q-ermann v. Suburban Rapid-Transit Co. (N. Y. C. P.), 360. 7. The plaintiff earned three dollars per day and received an injury from which it was likely that the pleura would always adhere to his lung. He testified, two years after the injury, that he had severe pain in the lung, and that at times he could not work. Held, that a recovery of $5,500-was not excessive. Id. 8. Plaintiff was injured by the fall of a fence erected upon property of an estate of which defendants were trustees, which was blown down by a. storm of unusual severity. Held, that defendants were not. liable. Norling v. Allee et al. (City Ct. B’klyn), 409. 9. Where the premises in question have been in the possession of a leseesfor a number of years, and there is no evidence that defendants were to-make repairs, or that the fence was unsafe or out of repair when the lease was made, the defendants cannot be held liable for the condition of the fence. Id. 10. Plaintiff, a flagman employed by the Long Island Railroad, was temporarily stationed at a street crossing where a gate had broken down. He was obliged to stand in a narrow space between the .railroad track and defendant’s horse car track. While engaged in signalling an approaching train, with his back turned to defendant’s track, a driver of one of defendant’s cars, who could plainly see him for some distance, drove by without slackening speed and knocked him down. Held, that the evidence was sufficient to carry the case to the jury. HOro v. Atlantic Ave. R. R. Co. (City Ct. B’klyn), 411. 11. In such a case a request to charge to the effect that if plaintiff stepped back and thus came in collision with the car, and it would not have done so had he not stepped back, the plaintiff cannot recover, is too general, and-a refusal to so charge is proper. Id.
*1013 NEGLIGENCE. 1018 • 12. The court refused to charge that it was plaintiff’s duty to look and listen for an approaching car, and if he did not, in the opinion of the jury, discharge his duty in that respect he could not recover. Held, no error; that under the circumstances of the case the request was too broad. Id. 13. Certain goods on the upper floors of a building were sold to defendant, who eng ,ged a man to look after them and agreed to pay the rent, but it did not appear that he or his agent were ever on the premises. A faucet appurtenant thereto was left open, and thereby plaintiff’s apartments were flooded. Held, that as there were other occupants of the building, and it was not shown that they did not have access to the faucet, defendant could not be held responsible for the injury. Denton v. Kernoehan (1ST. Y. C. P.), 510. 14. The defendants were coal merchants and had a high trestle upon which . cars ran and from which wagons below were loaded by a chute. At about the height of the track the defendants had constructed a walk in order to pass along from car to car. This walk was laid on stringers, which were met by braces running up from the sill to the stringer at an angle of about forty-five degrees. The walk was properly constructed ana in good condition. A driver of a coal-wagon coming to load, struck one of the braces with his wagon or wheel, knocked it loose and when plaintiff passed along the elevated walk some time later the walk tipped and plaintiff fell. Held, that he was entitled to recover. Sellick v. Lang-don & Oo. (Sup. Ct.), 511. 15. Plaintiff fractured both bones of the lower leg, was confined to his bed six months and the injured leg was shorter than before by two inches; the ankle joint was permanently crippled. Held, that a recovery of $6,500 was not excessive. Id. 16. In an action for negligence it appeared that the defendant, an incorporated social club, contracted with a third person to remove an old building and replace it with a new one. The contractor removed the roof, beams and braces and thus left standing, unsupported, a wall, located wholly on defendant’s land, fourteen feet high and thirty-three feet long. This fell and killed plaintiff’s intestate, who was in the yard of the adjoining premises. The building was old and in a dilapidated condition, and particularly this wall. Held, that it amounted to a private nuisance, and that as the mischief arose not from the manner of removal, but from the building itself, defendant was liable, and the fact that it had contracted for the removal with another person was no defense. Engel v. Eureka Club (Sup. Ct.), 527. 17. Questions put to expert witnesses which require them to determine in their own minds what the evidence was which had been given, and then-to form and express their judgment upon their own conclusions as to the nature and effect of that evidence, are improper, and should not be allowed. Uransky v. D. D., E. B. & B. JR. B. Co. (Sup. Ct.), 543. 18. The court having charged that the jury were not bound to give plaintiffs testimony the same.credence as they would to a disinterested witness, charged at her request that defendant’s employes were not disinterested witnesses and their evidence should be subjected to as severe criticism as the plaintiff’s. Held, error. JJd. 19. In an action against a foreign corporation to recover for injuries causing death, which occurred outside of the state, it is sufficient, if the complaint show that the foreign statute upon which the action is based is of similar import and character to that of this state; it is not necessary that it should be exactly the same. Gurney v. Grand Trunk B. Co. (Sup. Ct.), 557. 20. It is not necessary to allege that such death was caused by such wrongful act, neglect or default as would, under the foreign statute, if death had not ensued, have entitled the decedent to maintain tire action. Id. 21. An administrator appointed in this state may maintain such an action without showing that letters of administration have been taken out in the state where the death occurred. Id. 22. Where the want of jurisdiction does not appear on the face of the complaint the objection cannot be taken by demurrer. Id.
*1014 1014 NEGLIGENCE. 23. While traveling on one of defendant’s streets plaintiff’s horse became frightened by a steam roller which was being operated thereon. A man seventy-six years old who was there for the purpose of protecting travelers from injury by the roller seized the horse, but was thrown down, and plaintiff and his wife were thrown out and the buggy and other property injured. In an action to recover for such injuries, Held, that a motion for nonsuit was properly denied. Paine v. Gity of Rochester (Sup. Ct.;, 587. 24. In an action for injuries caused by negligence, evidence to the effect that plaintiff since the accident had headaches every day is competent as evidence of a physical fact which existed subsequent to the accident and did not exist before. Doyle v. Manhattan R. Go. (Sup. Ct.), 604. 25. A nonexpert witness may testify to the fact that he observed a cast in plaintiff’s eye which was not there before the accident, and the fact that there was no evidence connecting this condition of the eye with the accident is no reason for the exclusion of such testimony. Id. 26. Plaintiff, while walking on the sidewalk of a street, came to a trench which had been opened to connect a building with the gas main and stepped across it, but her foot struck a bar or shovel handle under the dirt and she was thereby thrown into the ditch and injured. It appeared that there was nothing to obstruct her view of the situation; that a flagstone had been left to afford a passage, and that she was not paying attention to the trench. Held, that she was guilty of contributory negligence and was not entitled to recover. Stephenson v. Equitable Gas Light Go. (Sup. Ct.), 658. 27. Where a workman, familiar with the business, was burned oy molten iron escaping from a ladle and there was no proof of negligence beyond the fact of the accident, Held, that he could not recover. It must be shown that the master knew or ought to have known of the defects which caused the accident. Martin v. Cook et al. (Sup. Ct.), 733. 28. Upon the escape of molten iron from a ladle, defendants’ foreman attempted to pour the contents into another ladle. During this operation the band of the leaking ladle broke and plaintiff was burned. Held, that the action of the foreman was not manifestly improper and that he was not guilty of negligence. Id. 29. The owner of premises which are in the possession of a tenant is not liable for injuries to adjoining premises caused by the defective condition of the plumbing, in the absence of proof that the premises were in a defective condition when let or that he omitted to make necessary repairs or failed to perform some duty imposed on him by statute with respect to the premises. Strauss v. Hamersley (N. Y. C. P.), 749. 30. Proof that the tenant had failed or was insolvent does not necessarily show that his estate in the premises has become determined. Id. 31. The defendant was the owner of three adjoining houses. Water appeared in the cellar of one house. The defendant’s agent ordered a firm of plumbers to make an examination and remedy the difficulty. After some digging they found that the sew.er was defective and was stopped up and proposed a new sewer. The firm bailed or pumped the water out of the cellar, and the defendant consented that one of his tenants should assist; but he was paid by the firm. The water thus pumped out leaked upon the sidewalk and formed ice, upon which plaintiff slipped and was injured. The new sewer was by defendant’s order temporarily abandoned. The firm rendered defendant a bill, which he paid. Held, that the negligent act of allowing ice to form upon the sidewalk was the act of independent contractors and that defendant was not liable. Larow v. Glute (Sup. Ct.), 859. 82. It is not careless for a young man in good health to attempt to board an open car while it is slowly moving, but where he is injured in so doing by striking in about a second against a truck at the side of the car, no negligence can be attributed to the railroad company because it did not stop the car for the plaintiff. Moylan v. Second Ave. R. B. Co. (Ct. App.), 871.
*1015 NEGLIGENCE—-NUISANCE. 1015 33. It is the duty of the young, man to see for himself that there is no obstacle in his immediate presence outside of the car and the railway track which made it dangerous for him to attempt to enter the moving car. Id. 34. In an action for injuries alleged to have been caused by defendant’s negligence, evidence of a physician that when he last examined plaintiff’s arm she had persistent pain in it is not objectionable on the ground that it involves an assumption that there was pain at the present time. Bosevelt v. Manhattan B. Go. (1ST. Y. Supr. Ct.), 894. 35. Evidence as to the extent of injury to the car in which plaintiff was riding at the time of the collision has no relevancy to plaintiff’s injuries or the foree of the collision, and is properly excluded. Id. 36. An allegation in the complaint that the injuries are permanent is not necessary to authorize the admission of evidence as to their permanency. Id. See Banks, 1; Carriers, 3, 3; Costs, 3, 5; Highways, 1, 3, 5; Master and Servant, 3, 7-9; Nuisance, 1-3; Railroad, 1, 3-5; State, 1, 3. NEW TRIAL. See Ejectment, 5. NEW YORK CITY. 1. Where the city by the construction of a new bulkhead wall has taken, away the ri&hts of an owner of a bulkhead, the measure of compensation of the latter for such deprivation is not necessarily limited to a capitalization of the amount which might have been received at such bulkhead for wharfage and cranage, but he is entitled to receive what he could have obtained in the market for these rights, viz.: the sum for which it could have been sold, whether its value arose from preferential rights of the large steamship companies, or the right to collect wharfage. Langdon v. Mayor (Sup. Ct.), 99. 3. Reports of the dock department showing that they had bought bulkhead property and wharf rights is admissible as an admission that similar property had been purchase at certain prices; if the property purchased was different from what the admission would imply, the city should show that fact by other evidence. Id. 3. Chap. 633, Law's 1866, directing the banks in which the public funds of the city and county of New York were deposited to pay proportionately the expenses of the chamberlain’s office, although it did not direct him to collect interest on such deposits, did not prevent him from stipulating with such banks for the payment of interest thereon, and if he could make such an arrangement and failed to do so he would have been derelict in the discharge of his duty as a public officer. Mayor v. National Broadway Bank (Ct. App.), 393. 4. A clerk in a department of the city of New York is entitled to no greater rights on a proceeding to remove him because of rule 40 of the civil service rules, rendering persons dismissed for misconduct ineligible for appointment within three years. People ex rel. Higgins v. Grant (Sup. Ct.), 639. See Municipal Corporations, 1, 3, 5, 17-19, 31-33, 38; Taxes, 13. NUISANCE. 1. Defendants were authorized by chap. 658, Laws 1886, to construct a sewer in the outlet of Canandaigua lake, and for the purpose of maintaining the height of water in the lake, to erect and maintain locks or bulkheads, with gates, in said outlet. ■ In doing so they erected a coffer dam during low water, which at the time of the spring freshets retained the water on plaintiff’s distant pasture land for a time, to his damage. Held, that the circumstances of the case were not such that the omission of the defendants to resort to all possible means to overcome the obstruction by the dam to the flow of water into and through the channel during the time reasonably necessary for the work rendered them chargeable with negligence in the performance of their duty, although the consequence
*1016 1016 NUISANCE—PARTIES. was that water remained on plaintiff’s .premises longer that season than usual. Atwater v. Trustees of Canandaigua (Ct. App.), 334. 3. The action of the defendants in the performance of the work was confined within the limits where they had the right to execute it, and the effect upon property beyond those bounds resulting in damages was the consequence of such performance of the work and not the direct act of its execution by them, and they were therefore not liable. Id. 3. In order to have protection against liability the work must not only be done for the purposes of the public and by authority of law, but it must be done in manner and method reasonable with a view to as little injury to others as practicable, and with reasonable care, skill and dispatch. Id. 4. The Standard Oil Co. took a lease of a certain shed in the name of the Acme Co., occupied it and sublet a portion to the other defendants, individuals dealing in oil. The wall of the portion sublet fell, killing plaintiffs’ intestate, who was at work on the railroad track adjoining the premises. The court charged" that the individual lessees were liable unconditionally if the jury came to the conclusion that the wall was in a dangerous condition and a nuisance at the time they took their lease, although they may then have known nothing of the dangerous condition of the waU and may possibly have remained ignorant without being guilty of negligence up to the time when the accident occurred. Reid, error. Timlin v. Standard Oil Co. et al. (Ct. App.), 906. 5. The liability of a grantee or lessee of real estate with a nuisance upon it arising from the premises being out of repair does not arise upon the mere execution of the lease, there must be notice of the existence of the nuisance or time enough must have elapsed in which knowledge of its existence would be obtained by the exercise of reasonable diligence. Id. 6. The Acme Company could not escape liability because of its non-possession, if the premises were a nuisance, where it permitted the Standard Company to take possession in its stead. It was under an obligation to show exactly what the relationship was, or else to bear the result of a possible unfavorable inference by the jury. Id. 7. The owner of premises must use Reasonable care to inform himself of the condition of the property which he proposes to let,"and if at the time of leasing he know, or if in the exercise of reasonable care he would become informed of the fact that the property has upon it a nuisance dangerous to the public or to an adjoining owner, he must abate it before he leases, and if he do not he is liable to respond in damages to any one injured in consequence of and by the nuisance. Id. 8. Where the lessees of property sublet it or a portion of it they must stand at such time as owners thereof for all purposes connected with their ■ leasing. Id. See Negligence, 16. OFFICERS. See Vetebans. PARTIES. 1. In a former action between a banking corporation which had made advances on consigned goods to the consignors who thereafter failed, and this plaintiff, the consignee, it was adjudged that a sum deposited as security belonged to plaintiff. The general term modified the judgment by providing that it should be without prejudice to any superior right of a ■creditor of the consignors or their assignee, if any exist. Reid, that such modification was intended simply to save the right of creditors other than the plaintiff therein to challenge the adjudication that the consignors were indebted to this plaintiff in a sum greater than the sum so deposited, and did not render attaching creditors of the consignors necessary parties to an action to recover said sum from the depositary. Cooper v. Townsend (Sup. Ct.), 133. 2. The judgment in said action having determined that the money on de- ' posit belonged to this plaintiff, an attachment against other persons could not affect his right to draw it. Id.
*1017 PARTIES—PARTNERSHIP. 1017 3. The deposit was in the form of a certified check of the banking company, to whom the fund had been paid, and the bank was directed to pay the same on the endorsement of P. and T. in case of a recovery in favor of this plaintiff. In an action to compel the delivery of the check and its proper endorsement to enable plaintiff to draw the money, Held, that the bank was a proper party, and that its cashier, although not individually a necessary party was not an improper one. Id. 4. Defendant T., having acted throughout in behalf of the banking company, and being the party who openly and defiantly resisted the decrees of the court, was properly charged with the costs. Id. 5. As the agreement provided only for the payment of the money on surrender of the check, properly endorsed, the bank was not liable for interest from the time of the original demand. Id. 6. Where a member of a firm refuses to join with the other members as plaintiffs in an action brought by such firm, and is therefore made a defendant, such refusal fully determines his relation to the controversy, and his right to become a plaintiff is lost by his own conduct, and cannot afterwards be insisted upon. Sehnaier et al. v. Sehmidt et al. (Sup. Ct.), 641. 7. An order of the court of appeals reviving and continuing a cause in the name of the executrix of the plaintiff, who had died pending the appeal, is final between the parties and conclusive upon a new trial as to the capacity of the executrix to maintain the action. Powers v. Manhattan B. Go. (N. Y. Supr. Ct.), 893. See Ejectment, 3; Fraudulent Conveyance, 1; Partition, 2; Pleading, 5, 12; Promise, 2, 8; Railroad, 10, 11, 17; Sale, 5. PARTITION. 1. A complaint in partition which, after averring that the property is of such character and so situated as to make an actual partition impossible, except with grave injury to the interests of the owners, and, therefore, seeks a sale and division of the proceeds, alleges that certain parties, naming them, “claim some right, title or interest in said premises, the exact nature of which is unknown to the plaintiff, and which is a cloud upon the title to said premises,” is not demurrable by said parties defendant, on the ground that it states no cause of action against them. Townshend v. Bogert (Ct. App.), 488. 2. All persons who either are or claim to be interested in the premises are affected by a demand for a sale and a division of the proceeds, and the cause of action pleaded affects or concerns them and so becomes a good cause of action for a partition as against them. Id. PARTNERSHIP. 1. Where two persons doing business at different places form a copartnership, each contributing to the capital of the firm the stock of goods he had on hand on which there were amounts owing for purchase money, the goods having been transferred to the firm, and the firm having assumed and agreed to pay the balance of the purchase price unpaid, the agreement of the firm will be deemed to have been made for the benefit of the creditors holding such claims, and an action may be maintained by such a • creditor against the firm upon such agreement. Hannigan et al. v. Morrissey (Ct. App.), 138. 3. Such an agreement is not dependent upon the testimony of either of the partners, but may be established from such facts and circumstances as would raise an implication that such an agreement was made, and as bearing upon such implication the contemporaneous acts and subsequent conduct of the parties are material. Id. 3. An agreement of a customer of a firm of stock brokers, made with B., one of its members, that the firm would accept the individual puts of B. in liquidation of any stock transaction for which the customer could produce such puts, is not an agreement within the scope of the partnership R. Y. State Rep., Yol. XXXYIT. 123
*1018 1018 PARTNERSHIP—PLEADING. business and is merely the individual contract of the person making it. Wheeler v. limpson (Sup. Ct.), 210. 4. Where an agreement of dissolution of a partnership contains mutual covenants, such covenants are a sufficient consideration for all the reciprocal engagements and transfers of the parties, including an assignment of the exclusive property in the firm name. Rosenheim v. Rosenfield (Sup. Ct.), 551. 5. Plaintiff and defendant were partners doing business in the name of “ The R. & R. Chemical Works.” On dissolution the exclusive right to use said name was assigned to plaintiff. Held, that his use thereof was not a violation of § 363 of the Penal Code, as he preceded the same with his own name as “sole proprietor.” Id. 6. Although plaintiff did not personally manufacture the articles sold by him under that name, the fact that he described himself in his circulars as “manufacturers” will not affect his right to be protected in its use by enjoining its use by defendant. Id. 7. Where the assignment of the use of such name to plaintiff is absolute and not dependent upon an observance of the other parts of the agreement, an invasion by him of territory exclusively reserved to defendant will not give the latter a right to use such name, or affect the plaintiff’s right to an injunction. Id. 8. An ordinary, simple loan by a firm to a partner implies a promise to pay at the time stated, or upon demand, without going into an accounting, and an assignee of such claim can recover upon the indebtedness arising from the loan, after proof of the state of the partnership accounts and that such partner was indebted to it in a greater sum than the amount assigned. Bank of British Worth America v. Delafield (Ct. App.), 864. 9. Defendant in Chicago wired his firm at San Francisco that he desired to draw $25,000 to use for his own interest, and the firm replied that they would not allow him to draw anything above living expenses, but would loan it. Without replying he drew a check upon the firm for the amount named. On the trial of an action upon a draft drawn upon him by the firm for the amount, and assigned to plaintiffs, defendant swore that it was not a loan to him, but drawn by him as a matter of right, whereupon plaintiffs were allowed to introduce a letter from the firm to defendant rehearsing the circumstances and the refusal of the firm to permit the draft except as a loan. Held, error; that the letter was a mere declaration of the writer characterizing the nature of a past transaction, and did not demand an answer, and was not admissible in evidence. Id. 10. One party has the right to agree with another for a loan of money for the prosecution of an enterprise and may agree as compensation to pay a certain proportion of the profits arising therefrom, without the relation of partners arising between themselves. Smith v. Lennon et al. (Sup. Ct.), 937. 11. In an action to foreclose a mortgage the defendant claimed that the mortgaged premises were bought by himself and plaintiff’s assignor as a joint adventure, said assignor furnishing the purchase money, defendant to repair the buildings, the assignor to sell them and receive a portion of the profits, and that the mortgage,was only given as a voucher for the advances so made by the assignor. It appeared that the agreement between defendant and the assignor of the mortgage did not make them partners and that defendant had paid interest to plaintiff. Held, that the defense was not made out. Id. See Bankruptcy, 4; Parties, 6; Sale, 7, 8. PERPETUITIES. See Will, 1, 10, 16. PLEADING. 1, The law of a foreign state is a fact to be alleged and proved like any other fact. It is not necessary to plead the evidence of the fact, whether . such evidence be embodied in the statutes of the foreign state, or in the
*1019 PLEADING. 1019 decisions of its courts. But the fact that a given proposition is the law must he stated, if such fact is essential to a recovery. Bothsehild v. Bio Grande Western B. Co. (Sup. Ct.), 44. 3. Where the defendant intends to claim that the allegations of the complaint do not make out a cause of action his remedy is by demurrer or by motion to dismiss on the trial. Bailing this, he cannot raise the point on appeal. Hinds et al. v. Kellogg (H. Y. C. P.), 856. 3. Plaintiff sued for the price of a sawmill. Defendant answered, set up counterclaims, and as a partnership had existed between the parties, demanded an accounting. Plaintiff replied, and among other things alleged that in regard to the counterclaims for advances, etc., an accounting would show an indebtedness due plaintiff beyond the claim alleged in the complaint and for this he demanded judgment. Upon a trial the plaintiff recovered for the further indebtedness. Held, proper. The defendant by his answer had invited an investigation into the partnership dealings, and upon such an accounting the plaintiff was entitled to prove any claim in his own favor. Bider et al. v. Foggan (Sup. Ct.), 438. 4. Under §§ 733 and 1018, Code Civ. Pro., a referee has power to amend the summons and complaint by adding a party defendant. Magovern et al. v. Bobertson et al. (Sup. Ct.), 441. 5. A plea of non-joinder of a defendant is answered by the fact that his name appears in the judgment as entered. Id. 6. It is within the discretion of the court to allow service of an amended complaint although its effect be to increase the amount demanded originally. Brady et al. v. Gassidy et al. (H. T. C. P.), 501. 7. An appeal in a case was decided by the court of appeals in 1887 in favor of defendants, and in 1888, upon a second trial, the complaint was held defective, and plaintiff was allowed to amend on payment of $300 costs. Held, that as a condition of such amendment, in addition to the above penalty, the plaintiffs must stipulate that in case of a recovery they would waive the costs of all former trials and appeals. Id. 8. A pleading cannot be declared frivolous where argument is necessary in order to demonstrate its weakness. Barney et al. v. King et al. (Sun. Ct.), 533. 9. Ho part of a verified answer can be stricken out as sham. Id. 10. An answer denying that defendant has any knowledge or information as to the allegations contained in the complaint sufficient to form a belief, is sufficient and cannot be slricken out as frivolous. Hagadorn v.- Village of Fdgewater (Sup. Ot.), 543. 11. Where a suit is brought to recover on a policy of insurance or certificates. covered thereby, it is not sufficient to allege in the complaint that a policy was issued and a loss sustained, but it should be averred that the policy or certificates covered the precise loss which occurred and were still binding and in force when the loss occurred. In the absence of such allegations an averment that there was “ a loss on so much of the cargo damaged as aforesaid, which was covered by the certificates aforesaid ” is a mere unsupported conclusion. Weltin v. Union Marine Ins. Go. (Sup. Ct.), 595. 13. An order refusing leave to amend a complaint by striking out the names and all allegations relating exclusively to a defendant who has died and one as against whom the action has been discontinued, does not injuriously affect the plaintiff where such allegations are not connected with the other defendants and do not affect their liability. Sleeman v. Htchlciss et al. (Sup. Ct.), 648. 13. A complaint alleging the loan of certain stocks to defendant, his failure to return them, and an acknowledgment of indebtedness to the amount of the damage sustained by plaintiff, and demanding judgment for such amount, sufficiently sets forth a cause of action. In such a case no demand of the stock is necessary, and the commencement of the action is a sufficient demand for the money. Fuller v. Tusha (City Ct. H. T.), 677.
*1020 '1020 PLEADING—POOR. 14. Where judgment is directed on demurrer of one of two joint debtors, and the action severed and directed to pioceed as to the other/leave should not be granted to amend the answer of the other defendant by pleading such judgment in bar. Uchmohl v. Fusco (City Ct. N. Y.), 687. 15. _ Where such judgment was reversed before appeal from the order refusing leave to amend, such appeal will be dismissed as unnecessarily taken. Id. 16. An objection that the plaintiff is not the real party in interest must be taken by demurrer or answer; a failure to do so precludes the defendant from raising the question at the trial. Varnum v. Taylor (Sup. Ct.), 796. 17. The defendant served an answer in an action, the second defense in which contained scandalous and irrelevant matter, and the whole of this defense was demurrable. The plaintiff made a motion to strike it out as scandalous and irrelevant. A short time before the motion came on, the defendant served an amended answer omitting the matter objected to. This was returned as not served in time. Held, that the motion should have been granted. That it was error for the court to deny the motion upon the ground that demurrer was the proper remedy, and also that the matter complained of had been omitted in the amended answer. That as to the matter confessedly scandalous the plaintiff, in such a situation, is not to be compelled to admit its truth, as he must do when he demurs. Armstrong v. Phillips (Sup. Ct.), 858. 18. A demurrer on the ground that “there is a defect of parties plaintiff,” or that “ two causes of action have been improperly- united in the same complaint, without stating the defects relied upon specifically, is insufficient under § 490 of the Code. Hodge et al. v. Brahe et al (Sup. Ct.), 983. 19. A complaint alleging that plaintiffs with one K. performed work and supplied materials to defendants and sold and delivered goods to them; that K. had assigned his interest in the claims therefor to one of the plaintiffs, and that defendants had received money belonging to the plaintiffs which they failed to pay over, states facts sufficient to constitute a cause of action. . Id. 20. In an action by an administrator for a settlement of a ■ joint adventure under oral agreements in which his intestate had been interested, he was required to make the complaint definite and certain by stating the particulars of the agreements in relation to the sale of the subjects of the adventure. The complaint was then amended by alleging on information and belief that the agreements did not provide for the sale at any particular time, or in any particular manner or by any particular person, and that, defendants refusing to make suggestions as to the sale, intestate sold according. to the regular course of trade. Plaintiff’s affidavit showed that he was unable to discover from the papers or books of intestate that there were any other terms than as set forth. Held, that the complaint as amended was a compliance with the order. Boss ®. Willett et al. (Sup. Ct.), 934. See Ejectment, 3; Executors, etc., 2; Negligence, 19, 20, 22, 36; Partition, 1; Promise, 1. POLICE. See Municipal Corporations, 1, 5, 11, 17, 28. POOR. In an action under chap. 531, Laws of 1881, known as the taxpayers’ act, to recover for a violation of the provision of the poor law that a written order from a justice of the peace shall be necessary before extending more than ten dollars’ relief to any poor person or family, it appeared that ■ all the defendants were ignorant of the existence of the statute; that the overseer of the poor had acted in violation of the statute in giving relief; had presented a claim for expenditures, and that an annual town meeting had, by resolution, levied and assessed the amount of the claim upon the taxable property of the town. It was not found that the expenditures were improper except for the above violation of the law. Held, that an action by taxpayers could not be maintained, no fraud having been shown
*1021 POOR—RAILROAD. 1021 .and no injury having actually resulted to the taxpayers. Cobb et al. v. Ha/msdell et al. (Sup. Ct.), 457. See Attorneys, 1. PRINCIPAL AND AGENT. Evidence to the effect that defendant’s agent had for a long time been accustomed to endorse notes taken upon sales of defendant's goods, and have the same discounted by the plaintiff and other banks; that defendant received the proceeds of such discounts, and of the notes in suit, is sufficient to sustain a finding that the agent had authority to make such endorsements for defendant. Third Hat. Bk. of Buffalo v. Butler Colliery Co. (Sup. Ct.), 798. PRINCIPAL AND SURETY. See Executors, etc., 11-13. PROMISE. 1. Charlotte Albere being indebted to defendant, she and her two children executed a mortgage to him on property jointly owned by them, which mortgage he assigned. Thereafter defendant, becoming indebted to Charlotte, agreed to pay said mortgage. Held, that a complaint stating the above facts and a failure by defendant to pay set forth a good cause of action. Albere et al. v. Kingsland (City Ct. B’klyn), 406. 2. The children were proper parties to such action, as the promise was for the benefit of all the plaintiffs, and the mother was under a moral and equitable obligation to relieve them from the obligation of the bond and their estate from the lien of the mortgage. Id. 3. The defendant could not object that the holder of the mortgage was not made a party as he did not demur on that ground, anc( could relieve himself from the danger of double payment by application for an order of interpleader. Id. 4. The several officers of the plaintiff agreed among themselves to accept a reduced rate of salary for future services, but the agreement was not communicated to or accepted by the board of directors. Held, that such agreement could not be enforced by the corporatio'n; that the facts were not within the doctrine established by Lawrence v. Fox, 20 N. Y., 268. Richard Thompson Co. v. Brook (N. Y. C. P.), 506. ■RAILROAD. 1. While it is proper for a plaintiff claiming to have been injured while stepping from an elevated train to the station platform to show the occurrence of other accidents at the station where the accident happened, for the purpose of making it appear that the defendant had been warned of the dangerous character of the facilities provided by it for the exit of passengers, if dangerous they weré, it is not proper to prove the happening of accidents at other stations in the absence of evidence tending to show that the conditions were similar. Brady v. Manhattan R. Co. (Ct. App.j, 340. .2. In the absence of evidence as to what the rents of the premises in question or those in the neighborhood were prior to the construction of defendant’s road, a finding of depreciation in rental value is not authorized by proof of tlie rental value of houses in other streets of a different size. Cunningham v. Manhattan R. Co. (N. Y. Supr. Ct.), 366. 3. In an action for negligence it appeared that the deceased before daylight was engaged in coupling a caboose to some cars of a freight train which had no engine; that other freight cars stood east of those in question upon the same switch; that an engine backed down to get these cars, drove them back to the cars where deceased was occupied, and the latter was caught between the caboose and the car he was coupling. No signal was displayed to warn the men of the engine that a train was being made up west of them on the same switch, and there was no rule of defendant requiring a signal or warning in such an event. Held, that it was a proper ■question for the jury whether the absence of such a rule did not amount
*1022 1022 RAILROAD. ' to negligence - upon the part of defendant. Berrigan v. N. Y., L. E. & W. B. M. Oo. (Sup. Ct.), 414. 4. A rule of defendant required brakemen to use a coupling stick, and the deceased had none when killed. Held, that the question of contributory negligence was for the jury. Id. 5. But where it appears that the stick would under the circumstances have been useless, the deceased, if the jury so find, would be excused in not having it with him. Id. 6. A railroad is not excused from the duty imposed by the state of fencing by the fact that cattle injured by it did not get on the defendant’s tracks from “adjoining lands,” but across the tracks of other roads lying between the farm lands and defendant’s track. Kelver v. N Y., O. <& St. L. B. B. Go. (Ct. App.), 485. 7. Upon the trial of an action for damages through cattle straying upon the track it would be improper to admit evidence to show that fences on the sides of defendant’s road would, by reason of the narrow space between the tracks and those of the adjacent roads, constitute a dangerous obstruction and imperil the lives of passengers and operatives about the cars and upon the tracks, as this situation had been created by defendant for its own purposes and by its own volition. Id. 8. A consent under authority of the legislature, given by the city of New York to the elevated railroads, to construct their roads through its streets, vests irrevocably in the railroad companies the right to use the property of the city so devoted for such purpose. Herzog v. New York El. B. B. Oo„ et al. (Sup. Ct.), 567. 9. A subsequent purchaser from said city of abutting property takes with knowledge of the grant, and holds subject to the use of the street by the-railroads. Id. 10. The owner of the record title of abutting property may maintain an action in his own name to restrain the operation of an elevated railroad in front of said premises, and what private arrangements he may have with other parties is a matter of no consequence to the defendant proceeded against. Korn v. Metropolitan El. B. Go. et al. (Sup. Ct.), 597. - 11. Plaintiff’s right of action is not affected by the fact that before the trial he had entered into a contract for the sale of a portion of the premises. Id. 12. In an action to restrain the operation of an elevated railroad and for damages, a witness was allowed, under objection, to answer the question, “ What in your opinion is the value of that property including the easement in * * * avenue which would give to the property the use of the whole street above the surface? ” Held, no error. Id. 13. An action against an elevated railroad to recover damages for trespass committed by it to easements may be maintained by an owner of leased premises where, because of such trespass, he can procure from his lessee only a reduced rent from that which he would have received had the trespass not existed. Him v. New York El. B. B. Oo. (Sup. Ct.), 606. 14. Where the complaint in an action against an elevated railroad for an injunction and damages alleges that the enjoyment of the premises is interfered with by the noise of defendant’s trains, and that its locomotives emit foul gases, smoke and cinders, which are a nuisance, whereby the value of the premises is deteriorated, the action is one for a nuisance so far as damages are claimed, and to that extent is triable by jury. This should first, take place, and thereafter the other issues disposed of by the court. Cornell et al. v. New York El. B. B. Go. et al. (¿up. Ct.), 624. 15. Where the rental value of premises are affected by the operation of an elevated railroad, the occupancy of the premises by tenants interposes no legal obstacle in the why of the owner to maintain an action for the recovery of the damages sustained by him. Id. 16. Where the decision contained separate findings by which the loss of rental value was found to be the same sum, but for different periods of time, the first of which exceeded six years, and judgment was entered for
*1023 RAILROAD. 1028 said sum, Held, that as the first finding was erroneous, and it did not appear which one was followed by the judgment, the judgment should be reversed. Id. 17. An action to restrain the operation of an elevated railroad and for damages may be maintained by one who holds the legal title to adjacent property, although others have an equitable.interest therein, and is entitled to recover the entire damages sustained. Horn v. New York El. B. B. Go. et al. (Sup. Ct.), 630. 18. Evidence sufficient to show a diminution of rental value caused by the operation of an elevated railroad. Id. 19. The admission of testimony as to the value of the property in answer to questions improper in form is not reversible error where it appears that the court did not follow such testimony in reaching its determination, but followed other evidence bearing on the same question. Id. 20. It appearing that another person was interested in the property as a partner with plaintiff, although the latter held the legal title, the judgment should provide that such other person should join in the conveyance to be made to defendants on payment of the damages awarded. Id. 21. Where a request to insert such a condition was refused, and on appeal the judgment is modified in that respect, the modification should be without costs. Id. .22. In actions for damages caused by the erection and operation of an elevated railroad, while the jury have the right in their discretion to award interest upon unliquidated damages incapable of liquidation by computation, yet they are not bound to do so, and a direction by the judge that plaintiff is entitled to interest from a certain day in each year is error. Moore et al. v. New York El. B. B. Go. et al. (Ct. App.), 777. 23. In an action for damages to plaintiff’s property through defendant’s railroad having been built through the street, the trial judge refused upon defendants’ request to find that plaintiff’s house was used as a house of prostitution to the knowledge of plaintiff’s agent, and also that for the purpose for which it was used the acts of defendant had caused no diminution in the rental value. Held, no error; the fact that the house had been so used did not enter as an element into the award of damages, nor could that fact be properly considered. Lawrence v. Metropolitan El. B. Go. et al. (Ct. App.), 834. 24. A railroad corporation which constructs its road by virtue of a consent by the city that it may do so on condition that compensation be made to abutting owners must be presumed to have entered into the enjoyment of the privilege in subordination to the rights of such owners, and hence can not obtain a right by prescription to maintain and operate such road. American Bank, Note Go. v. New York El. B. B. Go. et al. (2ST. Y. Supr. Ct.), 885. '25. The right of an abutting owner whose rights have not been acquired by condemnation to equitable relief does not arise solely from the unlawful appropriation of the street to the construction and maintenance of a railroad structure, but an action therefor may be maintained for compensation for damages arising from the operation of the road. Id. 26. It is no defense to an action for equitable relief against an elevated road that the plaintiff purchased the premises and erected a building thereon after the construction and commencement of the operation of the road, if in so doing he took precautions to avoid annoyance from the railroad as far as possible. Id. 27. A corporation in possession of the premises cannot recover as for loss of rental value, as a corporation cannot be subjected to personal inconvenience and discomfort, but can only recover for additional expense incurred. Id. 28. _ In an action against an elevated railroad, the court does not err in refusing to find, as a conclusion of law, that in computing the compensation to be made for the taking of plaintiff’s easements, defendants are entitled to have taken into consideration the benefits resulting to his premises and pe-
*1024 1024 RAILROAD—REFERENCE. cufiar thereto from the operation of defendants’ railway. This is not a. conclusion of law, but a mediate process in applying the rule of damages. Kemney v. Metropolitan SI. B. Go. et al. (N. Y. Supr. Ct.), 892. 29. In estimating the loss of rental value, benefits are not to be deducted from the damages, but to be considered in ascertaining whether there were damages, and a finding of the actual loss is sufficient. Id. 30. The easements of abutting owners are not confined to the portion of the street directly in front of their premises; and hence, evidence is admissible to show that plaintiff's light was cut off by shadows cast by defendants’ station which was twenty-five feet distant therefrom. Id. 31. A refusal to find as conclusion of law that in estimating the damages to the rental and fee value of plaintiff’s premises caused by the interference of defendant’s railroad with plaintiff's easements, benefits peculiar to said • premises, which have arisen by the construction of said road, should be taken into consideration, is proper, especially where there is no finding that there were peculiar benefits. Herold v. Metropolitan SI. B. Go. et al. (N. Y. Supr. Ct.), 896. 32. The existence of peculiar benefit and its value must be proved by witnesses credible to the tribunal, and cannot be presumed. It does not necessarily follow from the fact that there was no diminution in the rental' value, but a steady increase, that the lessening of air and light and convenience had not a hurtful effect on the rental value. Id. See Carriers, 1-3; Easements, 1; Eminent Domain, 2, 4^6; Mandamus, 1; Municipal Corporations, 2-4, 14; Negligence, 10-12, 32, 33. RAPE. 1. The extent of the resistance required of an assaulted female is governed by the circumstances of the case, and the grounds which she has for apprehending the infliction of great bodilv harm. People v. Gonnor (Ct. App.), 23. ' 2. If the evidence warranted the jury in finding that a female subject to-such an assault as was shown in this case, had reason to fear great bodüy injury if she resisted to the extent of her ability, they were justified in finding that the crime of rape had been committed. Id. 3. The fact that the prosecutrix did not in the limited time allowed her employ all the means in her power to resist the assault does not as a matter of law prove that she did not resist to the extent of her existing ability. Id. RECEIVER. A receiver who had among the assets stock of a corporation which was-, in danger of becoming valueless, was authorized by the court to make advances to said corporation on the security of its property, the order also directing him to take possession of such property and operate its business. This was done and the loans repaid. Held, that the order did not in effect appoint a receiver of such corporation; but was merely an authority to make advances and under the circumstances was not improvident. Kalbfleisch et al. v. Kalbfleisch (Sup. Ct.), 183. See Banks, 7, 8; Corporations, 4-6; Tenants in Common, 1.' REFERENCE. 1. Where a long account is involved, and the character of the case as disclosed by the papers shows that no difficult questions of law will arise, a reference may properly be ordered, although the only specific allegation as to such a fact is made by the plaintiff, who is not a lawyer, MiUen et' al. v. Fogg et al. (N. Y. Supr. Ct.), 366. 2.. The court has no power under § 724 of the Code to vacate a report of a referee and direct the taking of new testimony by him. That section has no application to motions for new trial on the ground of newly discovered evidence, but is confined to cases of mistake, inadvertence, surprise or neglect. Holmes et al. v. Scans et al. (N. Y. Supr. Ct.), 368.
*1025 REFERENCE—RELIGIOUS CORPORATIONS. 1025 3. The parties agreed that the referee should first decide the question whether the demands in the complaint were settled by the written instruments. The referee held that they were, and this appeal was taken. Held, that this amounted to a mistrial. The referee had no power to try a portion of the action, and an appeal can be taken only from his decision upon all the issues refrred to him. Applebee et al. v. Duke et al. (Sup. Ct.), 446. 4. All the findings of fact made by the referee, whether at the request of one side or the other, must be incorporated in his report. Sahultheis v. Molnerny (Sup. Ct.), 537. 5. Where one of several referees appointed by consent dies after the testimony has been closed and the case submitted, and thereafter a stimulation is entered into authorizing the surviving referees to render a decision and sign the report, this constitutes a new submission to them, and the time limited by the Code for the filing of the report or the delivery thereof to the attorney runs from the time of such new submission. Berls v. Metropolitan Ml. R. Go. et al (N. Y. C. P.), 608. 6. In an action for a co partnership accounting a referee was appointed to take the account. The referee made his report, which was not confirmed, but he was directed to ascertain and report additional matters. The parties, however, did not appear before him thereafter. Held, that the referee’s duties were performed, and that the plaintiff was liable for his fees. Standfast v. Grotty (City Ct. N. Y.), 673. 7. Section 90 of the Code, prohibiting the court from appointing a clerk of the court as referee is unconstitutional. Even if it were not, it will be inferred, in support of the action of the court, that the parties consented, to such appointment as authorized by said section. Id. See Executors, etc., 15, 16; Judgment, 3; Pleading, 4. REFORMATION. See Contract, 5, 6; Deed, 3. RELEASE. 1. Plaintiff was engaged in selling defendant’s machines and in other business. A dispute having arisen as to certain moneys which plaintiff claimed the right to withhold, defendant caused his arrest, and to procure his release therefrom plaintiff gave a bill of sale of certain property. He thereafter brought suit for moneys claimed to be due him, whereupon defendant seized all the goods in his store, claiming to do so under the bill of sale and instituted unfounded criminal charges against him. Plaintiff, being unable to resist longer, applied for restoration of his goods and -agreed to give a release of his claim for moneys due and also for false imprisonment. The release was general in form. Held, that such release did not cover damages to his property caused by defendant’s neglect thereof, of which plaintiff was ignorant when he executed the release. Kirchner v. New Home S. M. Go. (Sup. Ct.), 189. 3. A dispute as to the validity of a claim is both a good and valuable consideration to support a release thereof. Hiqainson v. Second Nat. Bk. (Sup. Ct.), 713. 3. Shortly after the death of one F., the defendant, in ignorance thereof, paid to one C. a check apparently drawn by deceased C. was the confidential adviser of F.’s administratrix, and claimed to have a demand against her. Four years later the administratrix brought action against defendant for the amount of such check, but on the eve of trial executed a release, and the action was discontinued. Held, that the release was supported by the doubtful character of the claim, and was valid. Id. See Executors, etc., 1, 3. RELIGIOUS CORPORATIONS. 1. Where the full number of trustees of a religious corporation is voted for at an annual election, those declared elected become the successors of the K Y. State Rep., Yol. XXXVII. 129
*1026 1026 RELIGIOUS CORPORATIONS—SALE. old board, and there is no such “omission or neglect to choose any of the trustees ” as will authorize the old board to hold over, although a majority of the new board may be afterwards ousted or removed. People ex Tel. (Jock et al. v. Fleming et al. (Sup. Ct.), 157. . 2. The effect of such judgment of ouster is merely to create vacancies within the meaning of Laws 1813, chap. 60, § 1, providing for an election to fill vacancies. Id. 3. The vestry of a church appointed by resolution at a special meeting a committee, consisting of three of its number, to adopt the requisite legal means for consolidating the parish with another. By legal proceedings these three persons were ousted as members of the vestry. Subsequently they brought this action to compel the treasurer of the church to affix its seal to an agreement for such consolidation. Held, that the import of the resolution and of the proceedings of the vestry showed that the members of such a committee must also be members of the vestry, and that upon being ousted from the latter office their powers as a committee of the vestry to act for the church ceased. People ex rel. St. Stephen’s Oh. v. Blackhurst (Sup. Ct.), 720. 4. The court has power to revoke an order authorizing a change of name where it is made to appear that an objection to such change existed which was not fairly and fully brought to the notice of the court on the application for such order. Matter of Abyssinian Baptist Oh. (N. Y. C. E.), 764. 5. Differences having arisen in the Abyssinian Baptist Church, its pastor resigned, but thereafter, with certain members of the congregation and officers, held services in a different place in the city under the same name. The latter body, in the name of the church, made this application for a change of name, stating that another organization called itself by the same name, which occasioned confusion,which petitioner desired to avoid,and also preserve its identity, and that no loss or injury would result to any individual or corporation if the change was granted. Held, that as the actual facts were not set forth in the petition, the order makingthe change was properly vacated with leave to renew the application on notice to the other congregation. Id. REMOVAL OF CAUSE. The state court has no jurisdiction to entertain a motion to vacate an order removing a cause to the federal courts. If the proceedings to remove are claimed to be irregular for any cause the motion to remand should be made to the federal court. Bushnell v. Pa/rker Bros. <6 Go. (Sup. Ct.), 298. REPLEVIN. See EvTDBisrcB, 1. SALE. 1. Plaintiffs, doing business in New York, attached property of defendant in New Jersey, and filed a bill, in chancery against the latter as an insolvent corporation, alleging its insolvency, and that delivery of plaintiffs’ goods to it was brought about by fraud in false statements made by its president, and plaintiffs offered to surrender defendant’s notes given therefor, but not yet due, and asked for a receiver. Held, that this did not constitute an election of remedies which would prevent an action in this state upon a note taken for a portion of the goods; that the attachment proceeding and the chancery suit in New Jersey were instituted and had in affirmance of the sale of the goods to collect the purchase money. . Oi'ossman et al. v. Universal Rubber Go. (Ct. App.), 230. Ü. The plaintiffs offered to prove that the attachment proceedings had been discontinued; also that nothing had or could be realized by the chancery suit, and that such suit was unproductive through the action of the receiver for such purpose, but were not allowed tn do so. Held, error; as this evidence was admissible to avoid the conclusion that the pendency of such proceedings operated by way of abatement of the present action. Id. 3. Defendants sold to plaintiff a pony which they warranted to be sound and kind. It not being so plaintiff returned it and defendants agreed to keep giving a pony until he was satisfied. After several exchanges, one
*1027 SALE. 102T was offered which plaintiff agreed to accept, but defendants refused to deliver except on payment of an additional sum. In an action to recover the money paid for the first pony, Held, that as the parties never_ agreed on the price for the last horse and defendants refused' to deliver it, _ the title remained in defendants and they could not counterclaim for its keep. Desson v. Antony et al. (E. Y. C. P.), 254. 4. A judgment setting aside a bill of sale for fraud and false representations which is based on false representations found by the court, which representations appear by the testimony to have been made after the bill of sale was delivered, cannot be allowed to stand, although there were other circumstances of fraud which of themselves might require the cancellation of the bill of sale. Sahelling v. Bischoff et al. (E. Y. Supr. Ct.), 365. 5. Where the evidence when the plaintiff rests is such that the jury could properly find a sale and delivery of the goods in suit to defendant, and does not show that one E. was his partner, a refusal to dismiss on the ground of the non-joinder of E. as a partv is proper. Stone v. Devlin (E. Y. Supr. Ct.), 370. 6. In an action to recover for milk sold and delivered, a counterclaim was interposed that the milk was delivered at a place other than that specified by the contract. It was shown that the defendant never objected to this and that for a long period he received the milk at the substituted locality without objection. Held, that defendant must be deemed to have acquiesced in the change and that his counterclaim was untenable. Gibson v. Donnelly (E. Y. C. P.), 500. 7. An action to recover the purchase price of goods sold may be maintained by one firm against another, although one of the parties is a member of both firms. If the action cannot be sustained as one at law, it may be in equity, and the facts being setforth in the complaint and an answer served, the court may grant an appropriate judgment. Bchnaier et al. v. Schmidt et al. (gup. Ct.), 638. 8. The fact that the action was tried before a jury will not change the rights or liabilities of the parties, where no objection was taken to that mode of trial. Id. 9. In an action for gas fixtures placed in defendants’ store, the defendants-alleged that they were put in on approval without charge unless defendants elected to keep them; that they found it impossible to keep them owing to the amount of heat produced, and that they requested plaintiffs to remove them. The evidence was conflicting. Held, that any errors committed by the judge in his charge were corrected in his subsequent charge, and that the verdict in defendants’ favor would not be disturbed. Grane et al. v. Schloss et al. (City Ct. E. Y.), 682. 10. Where one who has manufactured goods upon order is directed by the purchaser to hold the goods until further orders and is subsequently informed by the purchaser that he will not accept them, it is unnecessary for the vendor to make a tender. Howe v. Moore (Sup. Ct.), 736. 11. In an action for a balance claimed to be due on a sale of goods, the question was as to the place of measurement. One of the defendants testified on cross-examination that he bought similar goods of other parties about the same time on the same terms and to be measured at the same place as those in question. One of these other parties was then called and testified that the goods were to be measured at the place claimed by plaintiff to-be the place of measurement. Held, that the evidence .was properly admitted as an admission of a party and relating directly to the main subject of inquiry. Schuyler v. Boss et al. (Sup. Ct.), 805. 12. After the goods had been received, defendants mailed a statement thereof to plaintiff, which showed a balance in his favor, and also a check for. the amount so appearing due to him. Plaintiff retained the same without objection and used the check. Held, that by this affirmative action on his part he estopped himself from afterwards claiming that the payment so made was not in full of the account, or that there was any balance due to-him. Id
*1028 1028 SALE—SHERIFFS. 13. Evidence of such facts is admissible under an answer in justice’s court pleading a payment in full. Id. 14. A contract for the sale of goods provided for payment by draft on defendant’s London bankers, which was not drawn. In an action for the purchase price it was claimed that there was a subsequent oral agreement by which defendant was to pay cash on arrival of the goods, but defendant positively denied the making of such agreement. Held, that a question for the jury was presented and that it was error to direct a verdict for the plaintiff. Phillips v. Arguimbau (N. Y. Supr. Ct.), 890. • See Bankruptcy, 3; Contract, 25, 31; Executors, etc., 22. SEARCH WARRANT. 1. In an action to recover damages for causing plaintiff’s premises to be searched under a void warrant in the absence of proof of malice or ill will exemplary damages cannot be awarded. Wallace v. Williams et al (Sup. Ct.), 812. 2. One who makes an affidavit for a search warrant and delivers the warrant to an officer with directions to execute it, is liable for damages in case it is void; but one who simply makes an affidavit, but does nothing more, is not. Id. SERVICE. 1. To entitle a foreign party or witness to a judicial proceeding to exemption from service of process it must appear that he came from without the jurisdiction upon the occasion of the proceeding which he was attending, and for the purpose of attending it. Pay v. Harris (Sup. Ct.), 322. 2. An affidavit stating that defendant was a resident of New Jersey; that at the time of the service he was attending as a witness in a proceeding being prosecuted against him and it was served upon him while .under arrest; that he came to said town for the sole purpose of appearing as such witness, but which does not state whence he came to said town, is insufficient to bring him within the exemption. Id. 3. To entitle a foreign witness or party to exemption from the service of process, it must appear that he came from without the state voluntarily or the occasion of the proceeding which he was attending and for the purpose of attending it. Sander v. Hariris (Sup. Ct.), 594. SERVICES. 1. Defendant having been engaged to do certain work for one W., sublet it to plaintiff, who presented bills therefor to W. and took his note. In this action to recover for said work the court excluded all evidence tending to ¡-how defendant's approval and assent to the substitution of W. as debtor in his place, and that- such arrangement was intended to discharge defendant from further liability. Held, error; that if such arrangement had the assent of all the parties concerned it constituted an accord and satisfaction by novation and would be a good defe nse to the action. Thorman v. Polya (N. Y. C. P.), 257. 2. In an action for services the second defense of the answer alleged that the defendant had taken the plaintiff as a juvenile delinquent from the managers of the State Industrial School under a written agreement; that he had kept and performed all its covenants; that the services mentioned in the complaint were performed under the agreement and not otherwise; that the plaintiff left defendant’s service without just cause and refused longer to live with, be instructed by or work for him. On demurrer, Held, that this was a defense to the action. Patterson v. Kelly (Sup. Ct.), 468. SEWERS. ’ See Municipal Corporations, 6, 25, 26. SHERIFFS. 1. It is the duty of a sheriff to give preference in the application of proceeds of a sale under junior executions to a prior warrant of attachment, although no levy be made thereunder. Pack, v. Gilbert (Ct. App.), 218.
*1029 SHERIFFS—STATUTES. 1029 2. An attachment in favor of plaintiff was levied on property of one O. The warrant was vacated and the sheriff released the levy. Executions on confessed judgments were then placed in his hands under which he levied and sold the property. Thereafter the order vacating the warrant was set aside. Held, that as the warrant of attachment came first into his hands and the effect of the last order was to give it vitality as of the date when delivered to him, it should have' been treated in the application of the proceeds of the sale as if he had neglected to make a levy under it. but had instead levied and sold under executions subsequently issued, and as defendant did not do this he could not, in an action for failure to return execution, show in mitigation of damages that plaintiff was not injured by his action. Id. SLANDER. The defendant falsely stated, published and declared that it had a claim or mortgage against plaintiff’s place of business, and that if any brewer belonging to an association of brewers sold beer to plaintiff, the defendant, under an agreement of said association, would hold that person and the associates liable for said claim. Thereupon the associates discontinued the sale of beer to plaintiff, by which he was greatly damaged. Held, that the words tended to injure the plaintiff in his business and constituted an actionable slander. Ryan v. Burger & Hower Brewing Bo. (Sup. Ct.), 287. SPECIFIC PERFORMANCE. See.Vendor and Purchaser, 1. STATE. 1. On the trial of a case by the board of claims, grounded on the giving way of a canal bridge over which claimants were attempting to roll two mill stones, weighing 11,250 pounds, united by a short axletree, a witness for the state who had, previous to the accident, reduced the size of the stringers to the bridge, was asked: “ Now, with what you did to these stringers of this bridge, did you leave it, in your judgment, safe for the ordinary uses of a highway bridge; ” and was allowed to answer over plaintiff’s objection that it was incompetent and immaterial. Held, error; as it was in effect testifying that the employes of the state were not negligent. MoBonald v. Stale (Ct. App.), 248. 2. A civil engineer and bridge builder was allowed to testify that stones of the size and weight mentioned united and moving as described were an excessive load for the bridge as originally constructed. Held, error, as the issue was whether the bridge, as reconstructed, was sufficient to bear the traffic which might reasonably be expected to pass over it, and the witness by his answer put himself in the place of the board of claims whose duty it was to determine from all of the evidence whether or not the claimants by their negligence contributed to the accident. Id. STATUTE OF FRAUDS. See Contract, 11. STATUTES. 1. By Laws 1886, chap. 385, the city of Brooklyn was authorized to acquire the rights of a water company in the town of New Lots by purchase, and if an agreement could not be made, then such rights could be acquired by the right of eminent domain within two yews, to be held subject to certain mortgages. No proceedings were taken within the said two years, but thereafter an agreement for the purchase of such rights was entered into. Held, that the power to buy expired with the limitation of two years during which the city had the right to take title by eminent domain. Ziegler v. Bhapin et al. (Sup. Ct.), 185. 2. Where a general act conflicts with a special act the special act is not to be deemed to have been repealed by implication; accordingly Held, that chap. 490, § 40, Laws of 1883, directing the manner in which superintendents and inspectors of the new aqueduct of New York shall be selected,
*1030 1030 STATUTE—TAXES. was not repealed by the general civil service act of this state. Matter of Brown v. Duane et al. (Sup. Ct.), 691. See Constitutional Law, 1; Municipal Corporations, 15. STAY. A dismissal of the complaint on default was opened upon condition of payment of the costs. Plaintiff tendered the costs, but defendant refused to receive them and appealed from the order, which was affirmed, and thereafter an order for an open commission was granted on a motion which was opposed solely upon the merits. Held, that after what had occurred a stay of proceedings until payment of such costs could not be-granted; that if defendant can now collect the money it must be by execution under § 779 of the Code. Kiefer v. Brand Trunk B. Co, (Sup.. Ct.), 306. See Injunction, 3, 4. STOCKS. v See Contract, 25, 26; Partnership, 3. SUBROGATION. See Bills, etc., 6. SUPERVISORS. See Conversion, 1. • SURROGATES. , Under §§ 2846 and 2472, subd. 7, Code Civ. Pro., a surrogate has jurisdiction to hear and decide an application to require the guardian of the property of an infant to pay a demand for its board and clothes, although such guardian contest the matter. The rule prevailing in the court of the surrogate, in certain special accountings, under which, in case the claim is disputed, he is ousted of jurisdiction, has no application. Matter of Kerwin (Sup. Ct.), 436. See Executors, etc., 1; Guardians, 6; Will, 15. TAXES. 1. In assessing for taxation under Laws 1886, chap. 659, that part of a telegraph line lying within a certain town, the property is not to be regarded as a part of a whole nor as a complete telegraph line in operation. The amount is to be ascertained by taking the cost of the production of those articles, such as poles, wires, instruments, arms, etc., which are in their nature personal property and capable of infinite production, and adding thereto such sums as the company may have paid or contracted to pay the owner of land for the privilege of placing its poles thereon. People ex rel. Western Union Tel. Co. v. Dolan et al. (Ct. App.), 28 2. A joint stock association formed solely by private agreement is not a corporation, and hence not taxable under the Revised Statutes on its capital. People ex rel. Winchester v. Coleman et al. (Sup. Ct.), 120. 3. The property of which the person died seized or possessed is subject to the collateral inheritance tax; the increase or interest thereafter obtained by the executors is property of which the testator was not seized or possessed at the time of his death. The property should be appraised, and the tax assessed as soon after death as practicable and becomes immediately due, but the provision for charging interest, in case it is not paid, is. in lieu of any increase or interest that may be derived from the estate by the executors. Matter of Tassar (Ct. App.), 239. 4'. By the act incorporating the Vassar Brother’s Hospital, so much of its real estate as was occupied for a hospital, and all its personal property was exempt from taxation. The bequest to it was entirely of personal property. Held, that it was one of the corporations excepted from the provisions of the collateral inheritance act by the section exempting societies, corporations and institutions exempted by law from taxation. Id.
*1031 TAXES. 1031 5. The provision of the act excepting “ the societies, corporations and institutions now exempted by law from taxation" is not limited to those bodies which enjoy complete immunity from taxation. Id. 6. The fact that a home for aged men charges an entrance fee for its inmates does not operate to deprive the home of the exemption from taxation as an alms house to which it would otherwise be entitled under 1 R. S., 388, § 4. Id. 7. By chap. 39 of the Laws of 1863 the real and personal property of Yassar College to the extent which it was authorized to take by the act of incorporation, viz., §40,000, was exempted from taxation. The personal estate invested produced an income of §35,000. Held, that if it has power to take the whole or any part of the bequest in question, the same would be exempt. Id. 8. The fact that a party may appear by record to be a mortgagee does not of itself entitle him to notice as a “ person ha\ing an estate therein ” under the arrearage act of 1883, chap, 114. He must be a mortgagee in fact, and where the only fact which appeared was that, forty-eight years before the sale pursuant to which plaintiff obtained his deed, the mortgage described was placed on record, it will be presumed to have beun paid, and the mortgagee is not entitled to notice. Martin v. Stoddm'd et al. (Ct. App.), 330. S. This action was brought to recover for timber and bark cut on a certain lot to which both parties claimed title by patent from the state, In 1843 M. took a contract of sale from the land commissioners, paying one-quarter of the purchase money and giving his bond for the balance in six annual installments, and receiving a certificate from the surveyor general, but made default, and the state resold the lot in 1847. M. redeemed in the same year but died in 1883 without obtaining a patent, which was taken out by his daughter J. in 1884, to whose rights the plaintiff succeeded. Defendant’s title rested upon a tax deed given in 1863, by the comptroller, as purchaser at the tax sale of 1859, to the People, recorded in the former’s office and the clerk’s office in 1877, and upon a patent issued to one C., defendant’s grantor, in 1870. In 1884 plaintiff procured from the comptroller the cancellation of the tax sale of 1859, as not having bei-n properly advertised for redemption, which was done without disclosure to the comptroller of the rights of C. and without proper notice to the latter. Held, that 0. was a necessary party in the proceeding to cancel the sale and the attempted cancellation was ineffectual to divest defendant of his title. Ostrander et al. v. Darling (Ct. App.), 835. 10. A witness, S., a clerk in the comptroller’s office, produced in court a book of newspaper clippings of notices to redeem from tax sales by a certain date, with no affidavit as to length of publication or certificate that they were the notices published. The witness had no personal knowledge of the matter and was not a clerk at the time of the sale. Held, that the evidence was not sufficient to overcome the presumption, created by statute, that the deed of the comptroller to the People of the state, and the subsequent patent to C., having been recorded for two years, etc., the notice to redeem was regular and published according to law. Id. 11. In the years 1875 to 1883 the person from whom the plaintiff takes title purchased lands at tax sales. In June, 1887, the court of appeals in a similar case held the sale void. In December, 1889, the purchaser applied for reimbursement, which was refused by the board. In September, 1890, this action was brought to recover the purchase money. Held, that the provision as to reimbursement in chap. 86, Laws of 1850, was an invitation io the purchaser to pay his money upon the terms expressed therein, and that upon such sale a contract was made with him whose terms were defined by the statute. That the amendment of 1889 limiting the time of reimbursement to six years from the time of the sale impaired the obligation of a contract and was therefore void sc far as it was sought to apply it to the sales had before 1889. Reid v. Board of Supervisors of Albany Oo. (Sup. Ct.), 847. 13. The right of action here depended not only upon the irregularity or error but also upon the refusal (in December, 1889) of the board to reimburse ; and assuming under Code Civ. Pro., § 410, a demand by the pur-
*1032 1032 TAXES—TOWN BONDS. chaser to he necessary, “the right to make the demand” was not “ complete ” until the decision of the court of appeals in 1887, and consequently the action was not barred by Code Civ. Pro., § 882, which fixes a six years limit to an action to recover upon a statutory liability. Id. 13. Before the receiver of taxes of New York city can issue his warrant for the collection of taxes against á corporation under § 853 of the Consolidation act, the demand required by § 848 must be made. A warrant issued without such demand is void. Matter of MeLean v. H. Y. & So. B'ldyrt Ferry & 8. T. (7o.*(Sup. Ct.), 944. TAXPAYERS’ ACT. See Poor. TELEGRAPH COMPANIES: See Taxes, 1, TENANCY BY ENTIRETY. 1. The effect of a deed conveying real property to a husband and wife jointly is to vest each of the grantees with the entirety, and the right of absolute ownership in the survivor. Stele v. Selvreek (Sup. Ct.), 662. 2. If, thereafter, the husband procure an absolute divorce, the relation on which the seizure by entirety is based is thereby abrogated, and the parties will become tenants in common of the land. Id. TENANT BY THE CURTESY. See Guardians, 1, 2. TENANTS IN COMMON. 1. Where it appeared in an action by a tenant in common of real estate for the appointment of a receiver that the plaintiff had not been called upon to pay any of the interest which had accrued upon taxes, where payment was alleged to have been improperly deferred, and that complaints made to the board of health of New York in respect to the sanitary condition of the property were not unusual and that the defects had ■ been remedied, Held, that the action could not be maintained. Bollwagen, v. Bollwagen (Sup. Ct.), 293. 2. Complaints to the board of health made subsequent to the commencement of the action, were held to have been properly excluded. Id. TENDER. See Sale, 10. THEATRES. The lessee of a theatre is liable for a violation of the building laws in allowing persons to stand in the passageways, although he has let the privilege of giving performances to others, where it appears that he furnished the usual attaches, though they were subject to the orders of the person giving the performance, and that he was about the place and had promised a week previous to the violation complained of that he would look out thereafter and comply with the law. Fire Dept, of If. Y. v. Hill N. Y. C. P.), 763. TITLE. See Indians, 1, 2; Landlord and Tenant, 1; Taxes, 9, 10. TOWN BONDS. 1. The town of Ira being bonded for the building of a railroad, the town collector turned over the state and county tax collected from the railroad to the county treasurer, who applied the same to the payment of state taxes and for county purposes. The town tax collected from the railroad was used for town purposes. The county treasurer failed to set aside any portion for the sinking fund, as required by the act of 1869. Held, that
*1033 town BONDS—TRUST. 1033 there being no facts to show that the county treasurer could have invested the town moneys, if paid to him, so as to produce a greater income than the legal rate of interest or that the bonds could have been purchased at any sum below par, the use of such moneys for town purposes was not a waiver of the right of the town to have the state and county tax applied to the sinking fund. The court would not assume such for the purpose of reversing the judgment. Growninshield v. Board of Supervisors of Cayuga (Ct. App.), 96. 2. The town has the absolute right to have the sinking fund provided for in the act applied in the payment of the bonds, without regard to the stock held by it. Id. 3. In an action for failure to apply railroad taxes to the creation of a sinking fund under the act of 1869, the town is entitled to recover the moneys paid by the county treasurer for state taxes as well as those paid out for county purposes. Id. TRADES’ UNIONS. See Associations, 1, 2. TRIAL. 1. The exclusion of evidence offered by one party of the same character and on the same point as that admitted on the offer of the other, is reversible error. Sentenne v. Kelly (Sup. Ct.), 162. 2. It is the right of a party to have the jury directed to disregard evidence which is wholly irrelevant and incompetent, and which has been admitted without objection, and a refusal to so direct constitutes error for which a reversal must be ordered. Sperry v. Heilman et al. (N. Y. C. P.), 258. 3. In an action for damages for the alleged wrongful discharge of plaintiff from defendant’s service the appeal was from the judgment only, and the case exhibited no statement that it contained all the evidence. The defendant made no motion for a nonsuit, nor asked the direction of a verdict in its favor. The plaintiff asked such a direction, and it was granted. Thereafter the defendant asked to go the jury upon the question of the amount (of damages). Held, that this was a waiver of the right to go to the jury upon any other question, e. g., the question of wrongful discharge. Brown v. Baldwin & Gleason Co. (N. Y. C. P.), 363. 4. It is to a certain degree discretionary with the trial court as to whether evidence admitted without objection shall be strieken out or not, and hence a refusal to strike out such evidence is not reversible error. Hoyle v. Manhattan B. Co. (Sup. Ct.), 604. 5. It is entirely optional with the court to strike out an irresponsive answer where the answer is pertinent in itself. Hare v. Mahony (Sup. Ct.), 653. 6. The question as to the time to oe allowed for summing up a case rests largely in the discretion of the trial judge, and his decision, except in case of clear abuse, should be approved. Gaylord et al. v. Karst (City Ct. N. Y.), 688. 7. It is error to dismiss the complaint upon the merits where there is only a failure of proof. Martin v. Cook et al. (Sup. Ct.), 733. ■ See Criminal Law, 5; Judgment, 1; Jurisdiction, 1, 2; Nuisance, .4; Railroad, 16, 28, 31; Reference, 3; Variance, 1. TRUST. 1. D. executed to defendant as “trustee” an assignment of all sums payable to him, the contractor, by the city of New York for the “ Riverview Drive.” At the same time defendant executed a declaration that the assignment to him was in trust only to pay out of the moneys all claims growing out of said work and existing agains- the firm of D. & Co. by reason thereof, and defendant agreed to account to D. for all moneys or profits received, or to be received by him after payment of said claims, etc. The Produce Rank having previously loaned D. upon notes which K Y. State Rep., Yol. XXXYII. 130
*1034 1034 TRUST—USURY. it had transferred to the 0. bank, brought this action, alleging that an account had been made by, and a certain sum found in the hands of, the defendant as trustee, and demanded an accounting and payment of said sum. Defendant demanded a trial by jury, which was denied. He also pleaded an individual claim against plaintiff. Meld, that the assignment by D. and declaration of trust by defendant constituted a contract to which the Produce Bank was not a party, that it could only enforce its. rights by virtue of the trust, that the action was equitable in its nature, and that the application for a jury was properly denied. Pendergast v. Greenfield, el al. (Ct. App.), 223. 2. The trust was one simply to receive, apply and account, and the applicacation was expressly limited to claims already in existence. Id. 3. Plaintiff, being the owner of a vegetable compound, voluntarily made an absolute bill of sale of his interest therein, and in the recipe therefor to his mother, the defendant Mary, who afterward transferred it to the other defendant, her son. In this action it was alleged, and plaintiff gave testimony to show that the bill of sale was not delivered to the vendee, but to her brother, in trust during plaintiff's life for his wife and child, and that it was not to be delivered until his death; that it was made to enable plaintiff’s brother, who was insolvent, to carry on the business without danger from his creditors, and that it was so carried on until the brother died in 1887. Defendant gave testimony to show that she gave a power of attorney to plaintiff’s brother to conduct the business; that the bill of sale was not among her brother’s papers at his death, but that it had been in the possession of herself and the other defendant from about the time of its execution. Held, that upon this state of the evidence a judgment in favor of defendants would not be disturbed. Richards v. Moore el al. (Sup. Ct.), 953. See Will, 8, 10, 20. TRUSTEES. See Negligence, 8, 9. UNDERTAKING. 1. An undertaking given pursuant to § 559 of the Code on the arrest of a. defendant is not intended to secure to such defendant the general costs of the action and counsel fees incurred in defense of that action, but only the additional costs and additional expenses and damage to which he may be subjected by reason of his arrest. Hence, in an action on such an undertaking, it is error to refuse to charge that the plaintiff could not recover the costs awarded to him and a co-defendant, not arrested, jointly in the action in which he was arrested. Sperry v. Heilman et al. (N. Y. C. P.), 258. 2. In the action in which plaintiff was arrested a judgment was entered by default, which was opened on the application of defendants as sureties so far as to allow them to litigate the issues raised by the pleadings. Held, that such judgment ended plaintiff’s liability to arrest, and the sureties, were not liable for counsel fees and other expenses subsequently incurred by him. Id. See Bail. USURPATION. See Costs, 6. USURY. The defendant agreed to advance certain moneys to plaintiff for a joint speculation in real estate, and that on the sale of certain property he should receive his loan, with interest, and also one-third of the profits on the sale. It did not appear that the profit was to be paid to the defendant for the loan or forbearance of his advances. Held, that the agreement was not usurious. Niebuhr v. Sehreyer (N. Y. C. P.), 495. See Bills, etc., 5; Wabehotsemen, 1.
*1035 VAGRANTS—VETERANS. 1085 VAGRANTS. See Habeas Corpus, 2. VARIANCE. 4. An immaterial variance between a pleading and the proof will be disreregarded on appeal, when it appears that all the facts were known, and neither party was misled, and that the pleading might have been properly amended at the trial if a motion to that effect had béen made. Drexel et al. v. Pease et al. (Sup. Ct.), 166. 2. Where there is a variance between a pleading and the proof, the objection must be raised on the trial; if this is not done it is not available on appeal. Niebuhr v. Sehreyer (N. Y. O. P.), 495. See Burglary, 2. VENDOR AND PURCHASER. 1. Defendant agreed to convey certain real estate to plaintiff, but his wife, who had not signed the contract, refused to join in the deed. Held, that this was not a proper case for a decree of specific performance, leaving the dower right outstanding, there being nothing to show that one-third of the purchase money should be rendered worthless to defendant during his wife’s life; but that plaintiff should prove his damages. Boos v. Lockwood (Sup. Ct.), 182. 3. Where a person agreed verbally with another to sell her land and subsequently without having terminated or disaffirmed the contracts conveyed the land to a third person, Held, that the vendor was entitled to recover the money paid upon the contract. Nogal v. Page et al. (Sup. Ct.), 280. 3. Where an action is brought within six years from the time of such conveyance, the statute of limitations is not a defense. Id. 4. In an action to recover back moneys paid on a contract for the sale of real estate on the ground of defect of title it appeared that the original record of a deed in the chain of title showed a dash after the grantor’s name instead of a seal, but it was again recorded when it was represented as being sealed. Held, that the title was such as a purchaser would be required to take, and that a judgment in favor of defendant was proper. Todd v. Union Dime Savings Inst. (Sup.' Ct.), 960. VENUE. An affidavit in opposition to a motion to change the place of trial for the convenience of witnesses stated that it would be necessary to examine four witnesses for plaintiffs and also the managers of three mercantile agencies to prove representations made by defendants which were repeated to plaintiffs, but did not disclose what the representations were, in what their falsity consisted nor that any communication had been made to counsel as to what the witnesses would be expected to testify to, and the only reference to counsel followed the statement that the witnesses were material and necessary. Held, that such affidavit was defective and presented no answer to the application to change the place of trial. Sawyer et al. v. Ulark et al. (Sup. Ct.), 932. See Contract, 23. VERDICT. Where the only evidence as to the terms of the contract in suit is that of the parties, each contradicting the other, the verdict of the jury is conclusive on that point and cannot be disturbed on appeal. Hare v. Mahony .(Sup. Ct.), 653. VETERANS. 1. A court messenger, whose duties are confidential in their nature, is not entitled under chap. 119, Laws 1888, to a hearing before dismissal, but comes under the exception specified in the act. People ex rel. Thompson v. Bansom (Sup. Ct.), 50.
*1036 1036 VETERANS—WARRANTY. 2. The officer vested with authority to appoint and remove must necessarily determine whether the relations of the subordinate with him are confidential, and where he determines that they are, this court has no power to reinstate such subordinate. Id. 3. Relator, an honorably discharged veteran, was removed by the defendants from his position as conductor without a hearing. The return to a mandamus directing Ms reinstatement stated that he had waived his privilege and had been discharged for good cause. Held, that the particulars of such cause were not in issue and that a bill .of particulars thereof was unnecessary; that if he did not waive his privilege the best of causes would not justify relator’s removal without a hearing. People ex rel. Mwiphy v. Howell et al. (Sup. Ct.), 181. See Civil Service. VILLAGES. See Municipal Corporations, 9. WAREHOUSEMEN. 1. Plaintiffs were warehousemen and also did a banking business. F. & Co. stored goods with them, and upon its note payable in blank, secured by their receipt for the goods, they made advances of the amount of said note less six per cent and a commission. They then guaranteed the note and procured its discount at a bank. Held, that the mere fact that a warehouseman loans his money temporarily to his principal, to be reimbursed by moneys procured through his own labors does not deprive him of his right to compensation for his services; that the transaction was not necessarily a cover for usury, and that a verdict in favor of plaintiffs would not Le disturbed. Linde et al. v. Grant (Sup. Ct.), 60. 2. In an action against a warehouseman to recover the value of goods which he refuses to return, proof that such goods could have been stolen or lost while being transferred with other goods from one warehouse to another is not sufficient to require proof on the plaintiff’s part that the theft or loss could have been prevented by the exercise of due care. Leoncini v. Post (N. Y. C. P.), 255. 3. A warehouseman is not permitted to defeat the right of the person from whom he received property to its return by interposing the claim of ownersMp in a third person. Id. 4. Plaintiff stored with defendant certain sheet music which her husband had left in her custody. In an action to recover their value after refusal to return, Held, that as bailee of the true owner she had a right to recover, and that evidence was admissible , to show that the music had a special value to her husband because of annotations and transpositions inscribed thereon by him. Id. 5. The plaintiff, a common carrier, issued arrival notices for certain merchandise upon which the consignees endorsed, “ Deliver to S. & Sons for our account, N. Corwith & Co., per G. Corwith,” and delivered the same to S. & Sons. The latter, without having the merchandise in their possession, issued warehouse receipts for the property to G. Corwith, in his own name, who sold said property and delivered said receipts to Russell & Co. S. & Sons subsequently purchased and received the receipts from Russell & Co. In the meantime N. Corwith & Co. sold the merchandise to other parties. In an action brought to determine the conflicting claims, Held, that as no authority by the consignees to S. & Sons to issue the receipts to G. Corwith individually was shown, said receipts were void, and- that as S. & Sons thereafter purchased said receipts for value, knowing that they were invalid, they could not hold the property as against the purchasers from N. Corwith & Co. I)., L. <6 W. It. It. Go. v. Corwith et al. (Sup. Ct.), 728. WARRANTY. See Insurance (marine), 2; Sale, 3-
*1037 WASTE—WILL. 1037 WASTE. See Poor, 1. WATERCOUBSES. Defendant, a corporation formed under Laws 1873, chap. 737, constructed a reservoir on a stream above plaintiff for the purpose of storing the water and of conducting it in pipes to supply the owners and occupants of other lands, discharging a part only into the stream below plaintiff’s lands. By so doing the water.has been lessened in the stream, and the drainage from houses, etc., formerly carried off has accumulated and become offensive. Held, that this constituted a diversion, and that an injunction pendente lite was properly granted. Pa/rry v. Citizens’ Water Works Co. (Sup. Ct.), 715. WIDOW. See Executors, etc., 23. WILL. 1. Testator by his will attempted to give a large amount to the “John Guy Yassar Orphan Asylum,” an institution not incorporated or in existence at the time of his death, by directing that the executors, as soon as practicable, should procure from the legislature an act of incorporation under which the institution should be organized, and thereupon the property devised and bequeathed should be transferred to it. The executors obeyed the direction, such an act being passed four months after his death. Held, that the devise and bequest were void as suspending the power of alienation of real and the ownership of personal property for an indefinite period not measured by lives in being. Booth et al. v. Baptist Ch. of Christ et al. (Ot. App.), 79. 2. Testator gave “to the Baptist church of Poughkeepsie * * * the sum of ten thousand dollars in ten one thousand dollar bonds towards paying the mortgage and other debts of the church, provided said church shall raise a sum sufficient, with this legacy, to pay off such mortgage and other debts of said church within two years of my decease; and in case of failure to do this, then this legacy shall lapse and go into the residuum of my estate.” Held, invalid. Id. 3. The will contained a residuary clause which gave and devised all the rest and residue of his estate to the “John Guy Yassar Orphan Asylum, when incorporated, the Yassar Brothers’ Hospital and Yassar College, equally, share and share alike,” and by the thirty-eighth clause directed that if any of the gifts or devises should be adjudged void or illegal, then the property should go to the executors in trust to carry out the end and objects designed by him in such void and illegal gifts and devises. Held, that the testator’s meaning was to carry over to his executors only such dispositions as utterly failed, and not those which, failing in one direction, were yet within the scope of the residuary clause and saved by it, and that it was not restrictive of the real residuary gift. Id. 4. The legacy to the church and asylum fell into the residue and increased its volume. To one-third the residue thus swollen Yassar college is entitled; to another the Yassar Brothers has a lawful claim, and the remaining third goes to the heirs and next of kin. Id. . 5. Testator gave certain sums to the Home, the Hospital and the Institute, upon condition that each should pay annuities of specified amounts equal to the accruing interest to certain persons for their lives. Held, to be valid bequests, as capacity to take gifts did not require the corporation to apply their own money or property to unauthorized purposes, as the principal only came to them, the interest and income to the annuitants; the testator having made provision for the reduction in the rate of interest by charging any shortage upon his residuary legatees. Id. 6. Testator gave to the institute $10,000 “ in one hundred shares par value $100 a share of the capital stock of some good railroad or coal company guaranteed, to be selected from my securities as its own;” adding “ among
*1038 1038 WILL. my papers will be found a memorandum of various securities I have selected for the payment of the several legacies.” Such a list was found with the will setting apart specified stock to- the Institute. Held, that the memorandum could not be received as a part of the will, so as to change a general into a specific legacy. Id. 7. As the collateral heirs compelled this litigation and put all the other parties on the defensive, and claimed more than belonged to them, and only succeeded in some respects, and as what they wrest from the charities is against the intention of the testator and in spite of his avowed purpose, all the costs should come out of the share which devolves upon the heirs and next of kin. Id. 8. A testator by his will directed his executors and trustees to pay over to certain persons “the sum of two hundred thousand dollars, with interest thereon from the time of my decease,” to be held by them in trust for his daughter, “ and the interest or income thereof to be paid over by them to my said daughter semi-annually, as the same shall be received by them, as long as she shall live.” Some time elapsed before the executors and trustees of the testator made the payment to the persons named, and they then paid to the latter the principal and also the interest which had accrued on the legacy since the decease of the testator. Held, that as to the daughter this interest was principal and that her trustees must hold it as such. Paul v. Williams et al. (Sup. Ct.), 195. 9. A general residuary clause, iñ a will, will carry every interest, unless such interest is manifestly excluded. The intention to include all is presumed and the intention to exclude must appear from other parts of the will. This rule applies equally to real and personal property. Law et • al. v. May et al. (Sup. Ct.), 206. 10. Testator by his will gave a large sum to a hospital to be called by his name, and directed his executors to apply for a charter therefor, and, in case of the death of the longest lived of them before it was granted, gave the fund to the city of New York for such purpose. Pour executors were named, of whom three qualified. By a codicil he revoked the bequest and applied it to founding a musical college, and directed that appropriate legislation be adopted to perfect its incorporation as near the plan with regard to the hospital as possible. Held, that the will was void as suspending the power of alienation beyond two lives in being. People v. Simonson et al. (Ct. App.), 871. 11. It is not the province of the attorney-general to enforce the rights of the next of kin where it is claimed that there has been malversation in office by trustees or executors. Id. .12. The will of the testatrix stated that she was desirous of leaving some of her estate to aid in carrying on the work of the Christian ministry and that to that end she authorized her executor to expend through the agency of the Baptist church and its various societies, missionary and educational, a sum not to exceed $1,000, and in order that the executor might “do so without hindrance,” she gave and bequeathed to him the said sum “ and the same is to him and his assigns forever for the uses and purposes before stated and I (she) rely upon him to carry out the wishes and purposes I (she) have hereinbefore indicated.” Held, that the bequest was not void for uncertainty, but was an absolute bequest of the sum to the executor to be used by him for the purposes indicated. Matter of Ingersoll (Sup. Ct.), 419. 13. A testator, by a codicil to his will, set apart and placed in the hands of his executors, as trustees, a sum of money, the income of which should be paid to his daughter, then an infant, during life. He further provided, by the same codicil, that if any beneficiary contested his will, either in person or by another, the contestant should lose the provision made for him or her; and that if such contestant should be his daughter, then the trust fund created for her should pass to his wife. Upon proof of the will the surrogate, upon his own motion, appointed a guardian ad litem for the daughter, still an infant, and this guardian contested the will. After the daughter became of age she took no steps in the matter, all proceedings and appeals having been ended during her minority. Held, that the contest made must be deemed and taken to have been a contest by the
*1039 WILL. 1039 daughter, which, in the case of an adult, would have forfeited the provision in favor of such adult; but that, as the daughter was an infant and courts are bound, by law in all cases to protect their rights, the provision in the will, attempting to infringe upon such rights and limit the judicial functions of the court in that regard, was a condition against public policy and, therefore, void. Bryant et al. v. Thompson (Sup. Ct.), 431. 14. A testator drafted his own will in ink of a rather light color, also an attestation clause in proper form. He was a man of methodical habits. The ink at the store where the will was executed was very black. At this time the testator inserted the date. The date and the signatures of the testator and of the subscribing witnesses were in this dark ink. Each witness testified that the testator read over the attestation clause to him, and one said the testator requested him to sign it, saying that it was his will. One testified that the paper was not so folded as to obscure the testator’s signature if it had been signed. Neither could testify positively that the will was signed by the testator. Held, that the due execution of the will was sufficiently proved. Matter of Wilcox (Sup. Ct.), 462. 15. The surrogate’s court has jurisdiction to give judicial construction to a will of real estate. Matter of Marcial (Sur. Ct.), 569. 16. The testator died seized of one hundred acres of real estate, and owned no personal property. He left five children and three grandchildren, heirs-at-law, all of full age. He appointed his son Martin Marcial executor, and in terms devised his real estate to him and to his, Martin’s, four sons, aged respectively ten, seven, four and two years at date of will, September 11, 1889. as follows: The use of it to his son, Martin, until Martin’s oldest son should be thirty years old, and then such son to have the title. In case such son should die before being thirty years old, then said Martin to have the use of the land until said Martin’s next oldest son should be thirty years old, but in case such son should die before arriving to that age, then said Martin should have the use until his next oldest son should be thirty years old, but in case of his death before that age, then said Martin should continue to have the use of the land until his next oldest son should arrive at the age of thirty years, and so on, until the oldest live son of said Martin should become vested with the title to said land. Held, that such will was void under the Revised Statutes relating to perpetuities. Id. 17. The will of a testator devised a life estate in real property to his daughter and provided for its further disposition in case she married and had children. She married and had no children. Held, that the testator did • not die intestate as to this property, but that the same fell into the residuary estate of the testator and passed under a general residuary clause of his will; although the word “devise” was not used in said clause, and although the clause apparently related only to the division of certain perenal property. Lamb et al. v. Lamb et al. (Sup. Ct.), 699. 18. The intention of the testator is controlling, and where from a reading of the will it is apparent that he did not intend to die intestate as to any of his property, this consideration will outweigh any arguments based upon strict rules of law or upon the use of or the failure to use particular legal expressions. Id. 19. The will of a testatrix devised to her executor real estate in trust to use the income to support her niece during minority; it then proceeded, “ but in case my said niece should die before the age of twenty-one years, without lawful issue, and should not at the time of her death have lawful issue, then I give the said house and lot to my lawful heirs." The niece has arrived at the age of twenty-one years. Held, that the intention of the testatrix was, that the niece should, during her life, have the use of the property, and that upon her death it should pass to her children if she left any. and if not that it should go to the heirs of the testatrix. Delaney v. McGuire (Sup. Ct.), 717. 20. A testator gave his wife the use, interest, income and profit of all his estate, real and personal, while she remained his widow, and then appointed his wife and her brother “trustees of the said legacy to my wife.” He directed the trustees “ to loan the same on bond and mortgage,” and to pay over to his wife the net income. He gave his trustees power of
*1040 1040 WILL—WITNESS. sale, and directed that the provisions for the wife he in lieu of dower. Held, that, by implication, a trust in favor óf the wife was created in both the real and personal estate. Brooks v. Terry et al. (Sup. Ct.), 740. 31. Where, under the above will and the power of sale therein contained, the real estate of the testator is conveyed, the conveyance should be by the executors in their capacity of trustees, and not otherwise. Id. 33. _ When proof of a law of a foreign state has been given, from a publication made under governmental authority, the rules and principles of evidence entitle it to be considered as the existing law of the land in the absence of some equally good evidence that it has been changed or repealed. Matter of Suss (Ct. App.), 789. 33. Where by the customary or common law of the place of its domicil, confirmed by a public statute, a “ community” of a foreign country is entitled to take, hold and manage property in the right of its citizens as a -whole or as an aggregate body incorporate, it is entitled to take its share of the personalty under a bequest in a will. Id. 34. By the will of testator plaintiff was disinherited and specifically excluded from the benefits of any of its provisions. By § 16 the residuum of the estate was divided into six shares, to be held in trust by the executors,, the first to be applied to the use of testator’s daughter Sarah-for life, then for her sister Catharine for life, and then the share to be paid to the next of kin of his first wife’s blood, with a provision that any invalid gifts, etc., should be added to this “residue.” By § 40 he disposed of any legacy, devise, etc., lapsing or failing for any cause, and § 41 directed that all provisions which should be held illegal should be stricken out and not considered as affecting the valid provisions. Held, that plaintiff had no case as he could take. nothing even though certain provisions imposed upon the beneficiaries by the 39th section were void. Onderdorik v. Onderdonk et al. (Ct. App.), 918. 35. Where the context of a will shows that the testator used the word “heirs,” or the expression “heirs-at-law” or “next of kin” in a sense .other than the primary legal sense, the actual intention must prevail over the use of technical language. Lawton et al, v. Corlies et al. (Ct. App.), 923. 36. Testator by the first clause of his will ordered and directed his estate to "be divided among my heirs at-law in accordance with the laws of the state of New York, applicable to persons who die intestate',” and that no bonds be given by the executors. By a codicil he changed the executors and authorized them to sell any real estate he might be possessed of at his decease, and to execute and deliver the deeds necessary to convey the same, and directed that they should have double commissions and give- no bonds. He had personal estate only, amounting to $230,000, and left no ancestor, descendant or widow him surviving. Held, that the testator meant that his property should be divided according to law, the same as if he had not made a will, and that grand nieces and grand nephews were properly excluded from sharing therein. Id. 27. Defendant was executor of a will probated in New Jersey, and as such held a fund in trust for plaintiff, and had made accumulations of the surplus income. This action was brought for the construction of the will and an accounting. After its commencemer.t defendant paid said accumulations to plaintiff, and a stipulation was entered into by which plaintiff should prosecute the action to obtain a construction, and defendant should make and file his account, which he accordingly has proceeded to do in the surrogate’s court in New Jersey. Held, that in view of the payment to plaintiff, the limitation of the scope of the action, and the fact that all matters in relation to the accounting could be fully settled by the surrogate’s court, the action was properly dismissed. Parker v. Murray et al. (Sup. Ct.), 949. 28. As plaintiff may have had the right to maintain the action at the time it was commenced, and the parties having virtually settled the controversy between themselves, there was no reason for charging the plaintiff with costs. Id. .J WITNESS. See Evidence, 7; Negligence, 18.